# 22-1175

## United States Court of Appeals for the Second Circuit



DONALD J. TRUMP and TRUMP ORGANIZATION LLC,

*Plaintiffs-Appellants,*

v.

LETITIA JAMES in her official capacity as
Attorney General for the State of New York,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK (Syracuse)

## SPECIAL APPENDIX

LETITIA JAMES
ATTORNEY GENERAL,
STATE OF NEW YORK
*Attorneys for Defendant-Appellee*
New York, New York 10005
(212) 416-8020
*eric.delpozo@ag.ny.gov*

HABBA MADAIO & ASSOCIATES LLP
*Attorneys for Plaintiffs-Appellants*
1430 US Highway 206, Suite 240
Bedminister, New Jersey 07921
(908) 869-1188
*ahabba@habbalaw.com*

# <u>TABLE OF CONTENTS</u>

*Page(s)*

Letter, dated March 28, 2022, with Order Regarding
Trump Organization Subpoena Response, dated March 28,
2022 ................................................................................................SPA1-SPA4

Exhibit 1 to Letter, dated May 3, 2022 – Decision and
Order on Motion, dated April 26, 2022 .......................................SPA5-SPA7

Exhibit 2 to Letter, dated May 3, 2022 – Opinion and
Order, dated April 29, 2022 ........................................................SPA8-SPA9

Letter, dated May 11, 2022, with Supplemental Decision
and Order on Motion, dated May 11, 2022...............................SPA10-SPA12

Letter, dated May 26, 2022, with Decision and Order,
dated May 26, 2022....................................................................SPA13-SPA18

Supplemental Decision and Order on Motion, in the Matter
of *People v. Trump*, dated June 29, 2022, with Notice of
Entry ...........................................................................................SPA19-SPA20

Memorandum Decision and Order, dated May 27, 2022........................SPA21-SPA63

Judgment Appealed From, dated May 27, 2022 ...................................SPA64-SPA65

i

**SPA1**



STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL

| | |
|---|---|
| LETITIA JAMES<br>ATTORNEY GENERAL | EXECUTIVE DIVISION |

March 28, 2022

**By ECF**
Honorable Brenda K. Sannes
United States District Judge
United States District Court
Northern District of New York
P.O. Box 7336
Syracuse, NY 13261

      RE:    *Trump v. James*, NDNY No. 21 Civ. 1352 (BKS)(CFH)

Dear Judge Sannes:

      The Office of the Attorney General ("OAG") represents Defendant, Attorney General Letitia James, in the above-captioned case. We write in connection with Defendant's pending motion to dismiss the complaint (Dkt. No. 14) to advise the Court of a relevant factual development in the NY Proceeding.  Today, Justice Engoron continued his exercise of jurisdiction over OAG's investigation that is the subject of this action through the issuance, following a two and a half-hour conference, of an order compelling Plaintiff The Trump Organization to: (i) submit a report by April 20, 2022 identifying its progress in complying with OAG's subpoenas; (ii) "comply in full with OAG's subpoenas" by April 15, 2022, except for providing its certification and privilege, clawback, and downgrade logs, which are due by April 29, 2022; and (iii) appear for a status conference on April 25, 2022.  A copy of Justice Engoron's order is attached as Exhibit A to this letter.  This development bears on the abstention, Rooker-Feldman, and *res judicata* arguments raised in the parties' briefs.

      Respectfully submitted,

      */s/ Andrew S. Amer*
      Andrew S. Amer
      Special Counsel
      (212) 416-6127

INDEX NO. 451685/2020
NYSCEF DOC. NO. 667    Case 1:21-cv-01352-BKS-CFH    Document 28-1    Filed 03/28/22    Page 2 of 4
RECEIVED NYSCEF: 03/28/2022

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

PEOPLE OF THE STATE OF NEW
YORK, by LETITIA JAMES,
Attorney General of the State of New
York,

                        Petitioner,

        -against-

THE TRUMP ORGANIZATION,
INC.; DJT HOLDINGS LLC; DJT
HOLDINGS MANAGING
MEMBER LLC; SEVEN SPRINGS
LLC; ERIC TRUMP; CHARLES
MARTABANO; MORGAN, LEWIS
& BOCKIUS, LLP; SHERI
DILLON; DONALD J. TRUMP;
DONALD TRUMP, JR.; and
IVANKA TRUMP,

                      Respondents.

Index No. 451685/2020

**ORDER REGARDING TRUMP
ORGANIZATION SUBPOENA
RESPONSE**

---

WHEREAS, the Court held a compliance conference with the Office of the Attorney

General ("OAG"), the Trump Organization, and HaystackID, the Trump Organization's selected

third-party eDiscovery vendor, which was approved by OAG;

WHEREAS, there is disagreement as to the level of detail provided in the reports issued

to date by HaystackID;

WHEREAS, the Court has continuing authority to oversee enforcement of the subpoenas

issued to Respondent the Trump Organization by OAG;

Upon the foregoing papers,[1] it is ordered that:

1.      Within one week of the date of this Order, and every week thereafter, HaystackID

shall submit to the Court and parties a detailed report (the "Haystack Report") with a timeline for

---

[1] Including NYSCEF Nos. 314 and 661 – 666 and materials submitted *in camera*.

INDEX NO. 451685/2020
NYSCEF DOC. NO. 667        Case 1:21-cv-01352-BKS-CFH    Document 28-1    Filed 03/28/22    Page 3 of 4
RECEIVED NYSCEF: 03/28/2022

completion of each of the duties it has been assigned under the September 2, 2022 Stipulated

Order, NYSCEF No. 314.; and

    2.    The Haystack Report must specify Haystack's findings to date regarding its duties

under paragraphs 1-4 of the Stipulated Order, including detail regarding:

    a.  every device identified in connection with paragraph 1 of the stipulated order;

    b.  identifying information on every potential custodian identified under
        paragraph 2 of the stipulated order

    c.  any information relevant to the stipulated order from any interview of a
        potential custodian;

    d.  detailed information on every potential custodian identified but not yet
        interviewed, including the expected interview date, and the reason, if any, the
        custodian has not yet been interviewed;

    e.  every likely location of responsive records identified in connection with
        paragraph 3 of the stipulated order;

    f.  a timeline for the completion of each of the duties it has been assigned under
        the Stipulated Order; and

    g.  if the timeline has changed since its previous submission, the reasons therefor.

    3.    By April 20, 2022 the Trump Organization must submit a report (the "Trump

Organization Report") in response to the first detailed Haystack Report, identifying its progress

collecting, reviewing, and producing documents from each device, custodian, and location of

potentially responsive information above.  The Trump Organization Report must specifiy, as

much as reasonably possible, the quantities of documents collected, reviewed, and produced, and

the quantities of documents reviewed from each device or likely location of responsive records;

**SPA4**

INDEX NO. 451685/2020
RECEIVED NYSCEF: 03/28/2022

The Trump Organization shall continue to submit a response one week after the issuance of every detailed Haystack Report going forward; and

4.    The Trump Organization must make best efforts to provide or obtain access to all potential custodians, and, in each Trump Organization Report, must also explain why any potential custodian HaystackID has identified has not yet been interviewed; and

5.    HaystackID shall complete its obligations under the Stipulated Order no later than April 22, 2022; and

6.    The Trump Organization shall comply in full with OAG's subpoenas, with the exception of the certification, privilege log, clawbacks and downgrades, by April 15, 2022; The Trump Organization shall produce its certification, privilege, clawbacks, and downgrade log no later than April 29, 2022.

7.    The Parties are directed to appear for an in-person status conference on April 25, 2022 at 10:00 am.

Dated: New York, New York
      March 28, 2022

**SO ORDERED:**

_____

Hon. Arthur Engoron, J.S.C.

**SPA5**

## SUPREME COURT OF THE STATE OF NEW YORK
## NEW YORK COUNTY

| | | | |
|---|---|---|---|
| **PRESENT:** | **HON. ARTHUR ENGORON** | **PART** | **37** |

*Justice*

-------------------------------------------------------------------X

THE PEOPLE OF THE STATE OF NEW YORK, BY
LETITIA JAMES, ATTORNEY GENERAL OF THE STATE
OF NEW YORK,

**INDEX NO.**        451685/2020

**MOTION DATE**     04/08/2022

**MOTION SEQ. NO.**      009

Petitioner,

- v -

THE TRUMP ORGANIZATION, INC., DJT HOLDINGS LLC,
DJT HOLDINGS MANAGING MEMBER LLC, SEVEN
SPRINGS LLC, ERIC TRUMP, CHARLES MARTABANO,
MORGAN, LEWIS & BOCKIUS LLP, SHERI DILLON,
DONALD J. TRUMP, IVANKA TRUMP, and DONALD
TRUMP, JR.,

**DECISION + ORDER ON
MOTION**

Respondents.

-------------------------------------------------------------------X

The following e-filed documents, listed by NYSCEF document number (Motion 009) 668, 669, 670, 671,
672, 673, 674, 675, 695, 696, 720, 721, 722, 723, 724, 725, 726, 744

were read on this motion for                              CONTEMPT                              .

Upon the foregoing documents, it is hereby ordered that petitioner's motion to hold respondent
Donald J. Trump in contempt of court is granted.

Background
In this special proceeding, familiarity with which the Court will assume, petitioner, the People of
the State of New York, by Letitia James, Attorney General of the State of New York
(hereinafter, "OAG") seeks to hold respondent Donald J. Trump in contempt of court for failing
to comply with this Court's February 17, 2022 Decision and Order compelling him to produce
certain documents.

On December 2, 2021, OAG served a subpoena on Donald J. Trump that sought, inter alia[1],
documents and evidence, to be produced by December 17, 2021. Mr. Trump subsequently
moved to quash such subpoena, which this Court denied on February 17, 2022. Said Decision
and Order directed Mr. Trump to "comply in full, within 14 days of the date of this order, with
that portion of the [OAG's] subpoena seeking documents and information." NYSCEF Doc. No.
654.

---

[1] OAG also served a subpoena for Donald J. Trump's testimony, which this Court compelled on
February 17, 2022, and is currently on appeal before the Appellate Division, First Department.

**451685/2020  PEOPLE OF THE STATE OF vs. TRUMP ORGANIZATION, INC.**
**Motion No.  009**

**Page 1 of 3**

INDEX NO. 451685/2020

NYSCEF DOC. NO. 758    Case 1:21-cv-01352-BKS-CFH    Document 32-1    Filed 05/03/22    Page 3 of 4    RECEIVED NYSCEF: 04/26/2022

OAG and Mr. Trump subsequently entered into a stipulation, which this Court so-ordered, to extend the document production deadline from March 3, 2022 to March 31, 2022. The stipulation states that "Respondent Donald J. Trump shall comply in full with that portion of the OAG subpoena seeking documents and information by March 31, 2022." NYSCEF Doc. No. 660.

Instead of producing the documents called for in the subpoena, on March 31, 2022, Mr. Trump produced 16 pages of boilerplate objections and a four-page affirmation by counsel that states, summarily, that Mr. Trump was unable to locate any responsive documents in his custody. The affirmation fails to identify what search methods were employed, where they were employed, by whom they were employed, and when such searches took place.

OAG has moved to hold Mr. Trump in contempt and asks this Court to impose a sanction of $10,000 per day until Mr. Trump complies in full with OAG's subpoena.

Discussion

Judiciary Law § 753(A)(1) provides, in pertinent part, that: "[a] court of record has power to punish, by fine and imprisonment, or either, a neglect or violation of duty, or other misconduct, by which a right or remedy of a party to a civil action or special proceeding, pending in the court may be defeated, impaired, impeded, or prejudiced, in any of the following cases:… for disobedience to a lawful mandate of the court."

Additionally, CPLR 5104 provides that "[a]ny interlocutory or final judgment or order, or any part thereof, not enforceable under either article fifty-two or section 5102 may be enforced by serving a certified copy of the judgment or upon the party or other person required thereby or by law to obey it and, if he refuses or wilfully neglects to obey it, by punishing him for a contempt of the court."

Mr. Trump waived the right to raise boilerplate objections to the subpoena by not timely bringing such challenges in his motion to quash. "A motion to quash or vacate, of course, is the proper and exclusive vehicle to challenge the validity of a subpoena." Brunswick Hosp. Ctr., Inc. v Hynes, 52 NY2d 333, 339 (1981) (further finding that "[a]ny other rule would open the door to never-ending challenges to the validity of subpoenas, perhaps even years after initial issuance and compliance"). Accordingly, it was wholly improper for Mr. Trump to raise boilerplate objections to the subpoena after failing to raise such objections in his motion to quash. Furthermore, having stipulated to produce all the documents by March 31, 2022, Mr. Trump may no longer challenge the validity of the subpoena.

Furthermore, the "compliance affirmation" submitted by counsel for Mr. Trump is woefully inadequate, both under the terms of the subpoena and under controlling New York case law, which require an affiant conducting a search for records to attest to the "who," "what," "where," "when," and "how" the search was conducted. Jackson v City of New York, 185 AD2d 768, 770 (1st Dep't 1992) (holding that "[h]ere, after years of delay, the affidavit presented by the [defendant] made no showing as to where the subject records were likely to be kept, what efforts, if any, were made to preserve them, whether such records were routinely destroyed, or whether a search had been conducted in every location where the records were likely to be found").

**451685/2020  PEOPLE OF THE STATE OF vs. TRUMP ORGANIZATION, INC.**
**Motion No.  009**                                        Page 2 of 3

INDEX NO. 451685/2020

NYSCEF DOC. NO. 758     Case 1:21-cv-01352-BKS-CFH     Document 32-1     Filed 05/03/22     Page 4 of 4     RECEIVED NYSCEF: 04/26/2022

For example, Mr. Trump has not refuted, with admissible evidence, OAG's detailed assertions that he failed to search numerous file cabinets in various locations. NYSCEF Doc. No. 744.

In short, the affidavit provided the Court with no basis to find that the search had been a thorough one or that it had been conducted in a good faith effort to provide these necessary records to plaintiff. Not only did Mr. Trump fail to submit an affidavit himself, which this Court believes would have been the best practice, as he is the most obvious person to affirm where any responsive documents in his possession, custody, and control would be located, but the attorney affirmation submitted on behalf of Mr. Trump contained only conclusory statements, rather than details of a diligent search.

Accordingly, Mr. Trump has willfully disobeyed a lawful order of this Court.

> In order to find that contempt has occurred in given case, it must be determined that a lawful order of the court, clearly expressing an unequivocal mandate, was in effect. It must appear, with reasonable certainty, that the order has been disobeyed. Moreover, the party to be held in contempt must have had knowledge of the court's order, although it is not necessary that the order actually have been served upon the party. Finally, prejudice to the right of a party to the litigation must be demonstrated.

McCormick v Axelrod, 59 NY2d 574, 583 (1983) (internal citations omitted).

OAG, the people's representative, correctly states that any delay causes prejudice to "the rights or remedies of the State acting in the public interest." State v Stallings, 183 AD2d 574, 575 (1st Dep't 1992) (affirming motion for contempt brought on behalf of State). Moreover, each day that passes without compliance further prejudices OAG, as the statutes of limitations continue to run and may result in OAG being unable to pursue certain causes of action that it otherwise would.

Accordingly, OAG has satisfied its burden of demonstrating that Mr. Trump willfully disobeyed a lawful court order of which he had knowledge, prejudicing OAG. The purpose of civil contempt is not to punish, but, rather, to coerce and/or to compensate. OAG seeks to fine Mr. Trump $10,000 per day until he satisfies his obligations, which this Court, which has wide discretion in such matters, finds to be reasonable.

Thus, Donald J. Trump is in contempt of Court and must pay a fine of $10,000 per day, from the date of this Decision and Order, until he purges such contempt to the satisfaction of this Court.

| 4/26/2022 | | | | | | |
|---|---|---|---|---|---|---|
| **DATE** | | | | ARTHUR ENGORON, J.S.C. | | |

| CHECK ONE: | | CASE DISPOSED | | X | NON-FINAL DISPOSITION | |
|---|---|---|---|---|---|---|
| | X | GRANTED | DENIED | | GRANTED IN PART | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | REFERENCE |

451685/2020  PEOPLE OF THE STATE OF vs. TRUMP ORGANIZATION, INC.
Motion No.  009

Page 3 of 3

FILED: NEW YORK COUNTY CLERK 04/29/2022 03:02 PM
NYSCEF DOC. NO. 768    Case 1:21-cv-01352-BKS-CFH   Document 32-2   Filed 05/03/22   Page 2 of 3

INDEX NO. 451685/2020
RECEIVED NYSCEF: 04/29/2022

## SUPREME COURT OF THE STATE OF NEW YORK
## NEW YORK COUNTY

PRESENT:    **HON. ARTHUR ENGORON**                          PART _____ 37 _____
                                                  *Justice*
-----------------------------------------------------------------------------X

THE PEOPLE OF THE STATE OF NEW YORK, BY LETITIA    **INDEX NO.** _____451685/2020_____
JAMES, ATTORNEY GENERAL OF THE STATE OF NEW
YORK,

                              Petitioner,                    OPINION AND ORDER

                  - v -

THE TRUMP ORGANIZATION, INC., DJT HOLDINGS LLC,
DJT HOLDINGS MANAGING MEMBER LLC, SEVEN
SPRINGS LLC, ERIC TRUMP, CHARLES MARTABANO,
MORGAN, LEWIS & BOCKIUS LLP, SHERI DILLON,
DONALD J. TRUMP, IVANKA TRUMP, DONALD TRUMP
JR., and CUSHMAN AND WAKEFIELD, INC.,

                              Respondents.

-----------------------------------------------------------------------------X

Following a virtual conference held on April 29, 2022, at the request of respondent Donald J.
Trump, this Court hereby denies, without prejudice, Mr. Trump's request to purge his contempt.

On Monday, April 25, 2022, this Court held Mr. Trump in contempt of court for failure to supply
documents, or sufficient affidavits of diligent searches, to petitioner, the Office of the Attorney
General ("OAG"), in response to its subpoena issued to Mr. Trump on December 2, 2021.

On April 27, 2022, Mr. Trump's counsel emailed this Court two affirmations from counsel and
one affidavit from Mr. Trump himself, in an attempt to purge the contempt. NYSCEF Doc. No.
765. On April 29, 2022, OAG submitted a letter response stating that it did not believe Mr.
Trump had sufficiently complied with the subpoena such that his contempt should be purged.
NYSCEF Doc. No. 766. At the request of Mr. Trump, this Court held a virtual conference to
discuss the submissions.

This Court finds that Mr. Trump has not yet purged his contempt. The affirmations submitted by
counsel for Mr. Trump are insufficient in that they fail to specify who searched for each
respective request, at what time, where, and using what search protocols; it is not sufficient
simply to attach a list of people who participated in the searches. Moreover, the affirmations
submitted by counsel also fail to affirm that the subject electronic devices were imaged and
searched and with what search terms.

Furthermore, Mr. Trump's personal affidavit is completely devoid of any useful detail. Notably,
it fails to state where he kept his files, how his files were stored in the regular course of business,
who had access to such files, what, if any, the retention policy was for such files, and,

## OTHER ORDER – NON-MOTION

FILED: NEW YORK COUNTY CLERK 04/29/2022 03:02 PM          INDEX NO. 451685/2020
NYSCEF DOC. NO. 768   Case 1:21-cv-01352-BKS-CFH   Document 32-2   Filed 05/03/22   Page 3 of 3          RECEIVED NYSCEF: 04/29/2022

importantly, where he believes such files are currently located. It similarly fails to state if he turned over his personal electronic devices for imaging and searching. Thus, this Court now hereby orders Mr. Trump to submit a detailed "Jackson affidavit," swearing to the aforesaid details in order to purge his contempt. See Jackson v City of New York, 185 AD2d 768, 770 (1st Dep't 1992).

Moreover, counsel's claim that her conversations with respondent about the locations of the subpoena are covered by attorney-client privilege is without merit, as the mere identification of responsive documents does not involve "render[ing] legal advice or services to the client." Spectrum Sys. Intl. Corp. v Chemical Bank, 78 NY2d 371, 379 (1991).

Finally, the Court rejects Mr. Trump's assertions that OAG is not suffering any prejudice as a result of Mr. Trump's failure to comply. As this Court has previously noted, each day that passes without compliance further prejudices OAG, as the statutes of limitations continue to run and may result in OAG being unable to pursue certain causes of action that it otherwise would. Furthermore, any delay causes prejudice to "the rights or remedies of the State acting in the public interest." State v Stallings, 183 AD2d 574, 575 (1st Dep't 1992) (affirming motion for contempt brought on behalf of State).

Thus, Mr. Trump's request to purge his contempt is denied, without prejudice.

DATE: 4/29/2022                                    ARTHUR ENGORON, JSC

Check One:        [ ] Case Disposed        [X] Non-Final Disposition

Check if Appropriate:   [ ] Other (Specify _____ )



STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL

| | |
|---|---|
| LETITIA JAMES<br>ATTORNEY GENERAL | EXECUTIVE DIVISION<br>OFFICE OF FEDERAL INITIATIVES |

May 11, 2022

**By ECF**
Honorable Brenda K. Sannes
United States District Judge
United States District Court
Northern District of New York
P.O. Box 7336
Syracuse, NY 13261

      RE:    *Trump v. James*, NDNY No. 21 Civ. 1352 (BKS)(CFH)

Dear Judge Sannes,

      The Office of the Attorney General ("OAG") represents Defendant, Attorney General Letitia James, in the above-captioned case.  We write in advance of the oral argument scheduled for this Friday, May 13, 2022 to provide the Court with further, supplemental information concerning the procedural posture of the *People v. The Trump Organization, Inc.*, NY County, NY Supreme NYSCEF No. 451685/2020, (hereafter, the "NY Proceeding"). In particular, please find attached an order issued today by Justice Engoron in the NY Proceeding, conditionally granting Mr. Trump's request to purge the finding of contempt upon his satisfaction of certain enumerated acts by May 20, 2022.

      Respectfully submitted,

      */s/ Colleen K. Faherty*
      Colleen K. Faherty
      Assistant Attorney General
      (212) 416-6046

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:    **HON. ARTHUR ENGORON**                    PART                37

_____ *Justice*

-------------------------------------------------------------------X

THE PEOPLE OF THE STATE OF NEW YORK, BY
LETITIA JAMES, ATTORNEY GENERAL OF THE STATE
OF NEW YORK,

Petitioner,

- v -

THE TRUMP ORGANIZATION, INC., SEVEN SPRINGS
LLC, ALLEN WEISSELBERG, ERIC TRUMP, CHARLES
MARTABANO, MORGAN, LEWIS & BOCKIUS LLP, SHERI
DILLON, DONALD J. TRUMP, IVANKA TRUMP, DONALD
TRUMP, JR., CUSHMAN & WAKEFIELD, INC.,

Respondents.

-------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 451685/2020 |
| MOTION DATE | 04/08/2022 |
| MOTION SEQ. NO. | 009 |

**SUPPLEMENTAL
DECISION + ORDER ON
MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 009) 668, 669, 670, 671,
672, 673, 674, 675, 695, 696, 720, 721, 722, 723, 724, 725, 726, 744, 758, 768, 769, 770

were read on this motion for                        CONTEMPT                        .

Following virtual oral argument held on May 11, 2022, this Court hereby conditionally purges
the contempt of respondent Donald J. Trump ("respondent") that this Court issued in an order
dated April 26, 2022, provided the conditions detailed below are met on or before May 20, 2022:

(1) Respondent submits affidavits from any person upon whom respondent, or his
counsel, relied on in submitting their prior sworn "<u>Jackson</u> affidavits" of May
6, 2022, including, without limitation: Alan Garten, Cynthia Arce, Maria
Enriquez, Owen Reidy, Peter W. Gabra, Randee Ingram, Na'syia Drayton,
Ronald P. Fischetti, Michael T. Van der Veen, Lawrence Rosen, and Amy
Carlin; and

(2) Respondent submits an affidavit(s) from the executive assistant(s) referenced
in respondent's May 6, 2022 affidavit that details the executive assistant(s)
retention and preservation practice for respondent's documents; and

(3) Haystack ID submits its report on respondent's subpoena compliance and
certifies that its review is complete and that all responsive documents have
been accounted for, located, and turned over to petitioner; and

(4) Respondent pays the contempt fine currently due and owing, $110,000 (from
April 26, 2022 through May 6, 2022), to petitioner, to be held in petitioner's

escrow account pending the final disposition of respondent's appeal of this Court's contempt order before the Appellate Division, First Department.

Failure to satisfy any of the above conditions shall result in the contempt order being restored and the fine reinstated retroactively to Saturday, May 7, 2022.

_____
ARTHUR ENGORON, J.S.C.

**5/11/2022**
_____
DATE

| CHECK ONE: | | | | |
|---|---|---|---|---|
| | CASE DISPOSED | | X | NON-FINAL DISPOSITION |
| | GRANTED | DENIED | | GRANTED IN PART | X | OTHER |
| APPLICATION: | SETTLE ORDER | | | SUBMIT ORDER |
| CHECK IF APPROPRIATE: | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | | REFERENCE |

**451685/2020   PEOPLE OF THE STATE OF vs. TRUMP ORGANIZATION, INC.**
**Motion No.  009**

**Page 2 of 2**



STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL

LETITIA JAMES
ATTORNEY GENERAL

EXECUTIVE DIVISION
OFFICE OF FEDERAL INITIATIVES

May 26, 2022

**By ECF**
Honorable Brenda K. Sannes
United States District Judge
United States District Court
Northern District of New York
P.O. Box 7336
Syracuse, NY 13261

      RE:    *Trump v. James*, NDNY No. 21 Civ. 1352 (BKS)(CFH)

Dear Judge Sannes,

      The Office of the Attorney General ("OAG") represents Defendant, Attorney General Letitia James, in the above-captioned case. We write to provide the Court with further, supplemental information concerning the New York State special proceeding, *People v. The Trump Organization, Inc.*, NY County, NY Supreme NYSCEF No. 451685/2020, (hereafter, the "NY Proceeding"), specifically related to the portion of the proceeding that has been under review on appeal with the First Department. In particular, please find attached as Exhibit 1 the Decision and Order ("D&O") issued today by the three Justice panel (Justices Acosta, P.J., Singh, Moulton, and Kennedy, J.J.), denying Donald J. Trump, Ivanka Trump, and Donald Trump Jr.'s appeal of the February 17, 2022 order in the NY Proceeding.

      We respectfully submit that the following language from the D&O may be relevant to the issues currently before this Court:

      "The political campaign and other public statements made by OAG about appellants do not support the claim that OAG initiated, or is using, the subpoenas in this civil investigation to obtain testimony solely for use in a criminal proceeding or in a manner that would otherwise improperly undermine appellants' privilege against self-incrimination" D&O at 2 (citing *United States v Kordel*, 397 US 1, 11-12 [1970]); and

      "The civil investigation was initiated in March 2019 after testimony before Congress by Michael Cohen, former Trump Organization senior executive and special counsel, in which Cohen alleged that respondent The Trump Organization, Inc. had issued fraudulent financial statements. This sequence of events suggests that the investigation was lawfully

**SPA14**

Hon. Brenda K. Sannes
January 24, 2022
Page 2

initiated at its outset and well founded, apart from any parallel criminal investigation undertaken by the District Attorney" D&O at 2-3 (citations omitted).

Respectfully submitted,

*/s/ Colleen K. Faherty*
Colleen K. Faherty
Assistant Attorney General
(212) 416-6046

**SPA15**

FILED: APPELLATE DIVISION - 1ST DEPT 05/26/2022 10:39 AM             2022-00814
NYSCEF DOC. NO. 26                                           RECEIVED NYSCEF: 05/26/2022

# Supreme Court of the State of New York

## Appellate Division, First Judicial Department

Acosta, P.J., Singh, Moulton, Kennedy, JJ.

16056      In the Matter of PEOPLE OF THE STATE OF          Index No. 451685/20
           NEW YORK, BY LETITIA JAMES, ATTORNEY             Case No. 2022-00814
           GENERAL OF THE STATE OF NEW YORK,
                   Petitioner-Respondent,

                          -against-

           THE TRUMP ORGANIZATION, INC., et al.,
                   Respondents,

           DONALD J. TRUMP et al.,
                   Respondents-Appellants.

---

Law Offices of Alan S. Futerfas, New York (Alan S. Futerfas of counsel), for appellants.

Letitia James, Attorney General, New York (Judith N. Vale of counsel), for respondent.

---

Order, Supreme Court, New York County (Arthur Engoron, J.), entered February 28, 2022, which, insofar as appealed from as limited by the briefs, denied appellants' motion to quash subpoenas issued by the Office of the Attorney General (OAG) on December 21, 2021 to the extent they seek appellants' depositions, and granted OAG's supplemental verified petition and cross motion to compel appellants' prompt compliance with the subpoenas' deposition and document demands, unanimously affirmed, without costs.

In this special proceeding commenced by OAG under Executive Law § 63(12) and CPLR article 4 in connection with the civil investigation into whether respondents have committed persistent fraud in their financial practices and disclosures, Supreme Court

properly rejected appellants' arguments that the subpoenas issued by OAG should be quashed.

The existence of a criminal investigation does not preclude civil discovery of related facts, at which a party may exercise the privilege against self-incrimination (*see Stuart v Tomasino*, 148 AD2d 370, 373 [1st Dept 1989]; *Matter of Grandview Dairy v Lefkowitz*, 76 AD2d 776, 777 [1st Dept 1980]; *El-Dehdan v El-Dehdan*, 114 AD3d 4, 19-20 [2d Dept 2013], *affd* 26 NY3d 19 [2015]). Individuals have no constitutional or statutory right to be called to testify before a grand jury under circumstances that would give them immunity from prosecution for any matter about which they testify; although subjects of a grand jury proceeding have a statutory right to appear and testify, this right is conditioned upon the witness waiving the right to immunity and giving up the privilege against self-incrimination (CPL 190.50[5]; *People v Smith*, 87 NY2d 715, 719 [1996]). The political campaign and other public statements made by OAG about appellants do not support the claim that OAG initiated, or is using, the subpoenas in this civil investigation to obtain testimony solely for use in a criminal proceeding or in a manner that would otherwise improperly undermine appellants' privilege against self-incrimination (*see United States v Kordel*, 397 US 1, 11-12 [1970]). Neither does the record suggest that, in the absence of a civil investigation, OAG would be likely to grant immunity to appellants – the primary subjects of the criminal investigation – to secure their grand jury testimony. Thus, the subpoenas did not frustrate any right to testify with immunity.

Furthermore, based on the record evidence, Supreme Court properly declined to require an evidentiary hearing on the scope and degree of OAG's coordination with the New York County District Attorney's office. The civil investigation was initiated in

March 2019 after testimony before Congress by Michael Cohen, former Trump

Organization senior executive and special counsel, in which Cohen alleged that

respondent The Trump Organization, Inc. had issued fraudulent financial statements.

This sequence of events suggests that the investigation was lawfully initiated at its outset

and well founded, apart from any parallel criminal investigation undertaken by the

District Attorney (*see Anheuser-Busch, Inc. v Abrams*, 71 NY2d 327, 332 [1988]; *United

States v Stringer*, 535 F3d 929, 939 [9th Cir 2008], *cert denied* 555 US 1049 [2008]).

To the extent a selective prosecution claim may, in some circumstances, defeat a

subpoena in a civil investigation, the court properly rejected appellants' arguments. A

claim of selective prosecution requires a showing "that the law has been administered

'with an evil eye and an unequal hand'" (*People v Goodman*, 31 NY2d 262, 269 [1972],

quoting *Yick Wo v Hopkins*, 118 US 356, 373-374 [1886]). A party must show that it was

selectively treated, compared with others similarly situated, and that such treatment

was based on impermissible considerations (*see Bower Assoc. v Town of Pleasant Val.*,

2 NY3d 617, 631-632 [2004]). OAG began its investigation after public testimony of a

senior corporate insider and reviewed significant volumes of evidence before issuing the

subpoenas. Appellants have not identified any similarly implicated corporation that was

not investigated or any executives of such a corporation who were not deposed.

Therefore, appellants have failed to demonstrate that they were treated differently from

any similarly situated persons (*see id.* at 632; *compare Matter of 303 W. 42nd St. Corp. v Klein*, 46 NY2d 686, 696 [1979] [the petitioner established selective prosecution by showing at least 21 similarly situated entities that had been treated more favorably]).


THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.

ENTERED: May 26, 2022

Susanna Molina Rojas
Clerk of the Court

FILED: NEW YORK COUNTY CLERK 06/29/2022 04:25 PM

NYSCEF DOC. NO. 808

INDEX NO. 451685/2020

RECEIVED NYSCEF: 06/29/2022

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

PEOPLE OF THE STATE OF NEW YORK, by
LETITIA JAMES, Attorney General of the State
of New York,

              Petitioner,

    v.

THE TRUMP ORGANIZATION, INC., DJT
HOLDINGS LLC, DJT HOLDINGS
MANAGING MEMBER LLC, SEVEN
SPRINGS LLC, ERIC TRUMP, CHARLES
MARTABANO, MORGAN, LEWIS &
BOCKIUS, LLP, SHERI DILLON, DONALD J.
TRUMP, IVANKA TRUMP, DONALD
TRUMP, JR., and CUSHMAN AND
WAKEFIELD, INC.,

              Respondents.

Index No.: 451685/2020

**NOTICE OF ENTRY**

---

**PLEASE TAKE NOTICE** that the within is a true copy of the Order and Decision of

Honorable Arthur F. Engoron, J.S.C. dated June 29, 2022 that was entered in the office of the

Clerk of the Supreme Court, New York County, on June 29, 2022.

Dated: June 29, 2022
      New York, New York

Alina Habba, Esq.
**HABBA MADAIO & ASSOCIATES, LLP**
1430 U.S. Highway 206, Suite 240
Bedminster, New Jersey 07921
      -and-
112 West 34th Street, 17th & 18th Floors
New York, New York 10120
Phone: (908) 869-1188
Fax: (908) 450-1881
Email: ahabba@habbalaw.com
*Attorneys for Respondent, Donald J. Trump*

To:    All counsel of record (via NYSCEF)

1

FILED: NEW YORK COUNTY CLERK 06/29/2022 04:25 PM

NYSCEF DOC. NO. 805

INDEX NO. 451685/2020

RECEIVED NYSCEF: 06/29/2022

# SUPREME COURT OF THE STATE OF NEW YORK
## NEW YORK COUNTY

PRESENT:   **HON. ARTHUR ENGORON**

*Justice*

-----------------------------------------------------------------X

THE PEOPLE OF THE STATE OF NEW YORK, BY
LETITIA JAMES, ATTORNEY GENERAL OF THE STATE
OF NEW YORK,

Petitioner,

- v -

THE TRUMP ORGANIZATION, INC., DJT HOLDINGS, LLC,
DJT HOLDING MANAGING MEMBER, LLC, SEVEN
SPRINGS LLC, CHARLES MARTABANO,
MORGAN, LEWIS & BOCKIUS, LLC, SHERI DILLON,
DONALD J. TRUMP, IVANKA TRUMP, DONALD TRUMP,
Jr., and CUSHMAN & WAKEFIELD, INC.,

Respondents.

-----------------------------------------------------------------X

| | |
|---|---|
| PART | 37 |
| INDEX NO. | 451685/2020 |
| MOTION DATE | 04/08/2022 |
| MOTION SEQ. NO. | 009 |

**SUPPLEMENTAL
DECISION + ORDER ON
MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 009) 668, 669, 670, 671, 672, 673, 674, 675, 695, 696, 720, 721, 722, 723, 724, 725, 726, 744, 758, 768, 778, 780, 781, 785, 788, 789, 794, 798, 802, 803

were read on this motion for                              CONTEMPT                              .

Upon the foregoing documents, and having reviewed the recent additional submissions of

respondent Donald J. Trump, and the petitioner having agreed that respondent's additional

submissions satisfy the Court's prior orders, it is hereby ordered that the contempt of respondent

Donald J. Trump is purged.  The $110,000 that respondent has previously placed in petitioner's

escrow account shall, as per stipulation, remain in escrow pending the final disposition of

respondent's appeal.

_____
6/29/2022
DATE

_____
ARTHUR ENGORON, J.S.C.

| CHECK ONE: | ☐ CASE DISPOSED | ☒ NON-FINAL DISPOSITION | |
|---|---|---|---|
| | ☐ GRANTED   ☐ DENIED | ☐ GRANTED IN PART | ☒ OTHER |
| APPLICATION: | ☐ SETTLE ORDER | ☐ SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | ☐ INCLUDES TRANSFER/REASSIGN | ☐ FIDUCIARY APPOINTMENT | ☐ REFERENCE |

451685/2020  PEOPLE OF THE STATE OF vs. TRUMP ORGANIZATION, INC.
Motion No.  009

Page 1 of 1

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

DONALD J. TRUMP and TRUMP ORGANIZATION
LLC,

                                  Plaintiffs,

v.

LETITIA JAMES, in her official capacity as Attorney
General for the State of New York,

                                  Defendant.

1:21-cv-1352 (BKS/CFH)

---

**Appearances:**

*For Plaintiffs:*
Alina Habba
Michael T. Madaio
Habba Madaio & Associates LLP
1430 U.S. Highway 206, Suite 240
Bedminster, NJ 07921

*For Defendant:*
Letitia James, Attorney General of the State of New York
Andrew S. Amer, Special Counsel
Colleen K. Faherty, Assistant Attorney General
Kevin Wallace, Senior Enforcement Counsel
28 Liberty Street
New York, NY 10005

**Hon. Brenda K. Sannes, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.    INTRODUCTION

Plaintiffs Donald J. Trump and the Trump Organization LLC bring this action under 42

U.S.C. § 1983, alleging that Defendant Letitia James, the Attorney General for the State of New

York, has violated their rights by virtue of the investigation her office is conducting into them.

(Dkt. No. 1). Presently before the Court are Plaintiffs' motion pursuant to Federal Rule of Civil

Procedure 65 for a preliminary injunction staying the active civil investigation of Plaintiffs pending resolution of this action or, alternatively, requiring that Defendant recuse herself from the active civil and criminal investigation of Plaintiffs, (Dkt. No. 6), and Defendant's motion to dismiss the complaint pursuant to Rules 12(b)(1) and 12(b)(6), (Dkt. No. 14). On May 13, 2022, the Court held oral argument on the pending motions. Having carefully considered the parties' submissions, (Dkt. Nos. 6, 15, 16, 17, 21–28, 30, 32, 33, 35), and argument at the hearing, the Court grants Defendant's motion to dismiss under Rule 12(b)(1).

## II.    BACKGROUND

### A.    Plaintiffs' Complaint[1]

#### 1.    Defendant's Candidacy for Attorney General and Comments Regarding Mr. Trump

Defendant is "an outspoken political activist and member of the Democratic Party." (Dkt. No. 1, ¶ 13). Before becoming Attorney General of New York, Defendant served "as a Democratic member of the New York City Council and New York City Public Advocate for over a decade." (*Id.* ¶ 14). After Mr. Trump won the 2016 presidential election, Defendant "began displaying severe animosity" towards him. (*Id.* ¶ 15). For example, Defendant "retweeted calls for sit-ins to protest" the nomination of Jeff Sessions to be United States Attorney General and "joined public protests" against Mr. Trump's administration. (*Id.* ¶¶ 16–17). Approximately six months into Mr. Trump's term as President, Defendant led "die-in" protests, tweeting that "we are all being killed by this administration" and using the hashtag "Resist." (*Id.* ¶ 19; *see id.* ¶ 20 (alleging that "#Resist" was "widely recognized as shorthand for fighting Trump at every

---

[1] The facts are drawn from the complaint. The Court assumes the truth of, and draws reasonable inferences from, the well-pleaded factual allegations. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). The complaint refers to Michael Cohen's testimony before Congress, (Dkt. No. 1, ¶ 69), and the Court has taken judicial notice of that testimony. *See Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 424–25 (2d Cir. 2008).

level")). A few months later, Defendant "accused" the Trump administration of "blatant disregard for human lives." (*Id.* ¶ 22). About ten months into Mr. Trump's term, Defendant tweeted: "I've been leading the resistance against Donald Trump in NYC and will only continue to do so in every way possible." (*Id.* ¶ 23).

In May 2018, Defendant declared her candidacy for Attorney General of New York. (*Id.* ¶ 25). The complaint alleges that Defendant made "'taking on Donald Trump' the focal point of her campaign" and often compared herself to Special Prosecutor Robert Mueller. (*Id.* ¶ 26). Defendant's campaign website "repeated derogatory and inaccurate statements concerning Trump's policies" and also stated, "with no evidentiary basis whatsoever," that Mr. Trump had engaged in "public corruption." (*Id.* ¶ 27). Defendant's website linked to a "detailed outline of Defendant's strategy for rooting out corruption, with a section specifically devoted to Trump, his family, and the Trump Organization" called "*Investigate Trump's New York Business*." (*Id.* ¶ 28). The outline provided that this investigation would include "a review of Trump-related real estate transactions, especially those in which the Trump family suddenly started paying cash for properties after years of operating their businesses exclusively by borrowing money." (*Id.* ¶ 29). Plaintiffs allege that Defendant had no personal knowledge about any "Trump-related real estate transactions" at the time she made this statement. (*Id.* ¶ 30).

On June 26, 2018, Defendant spoke at a protest, stating that the Supreme Court's decision in *Trump v. Hawaii*[2] "was a result of the fact that [Republicans] stole the Supreme Court seat. An illegitimate president and an illegitimate member of the Supreme Court." (*Id.* ¶ 32). In July, Defendant asked supporters to "[j]oin [her] campaign" and "help" in her "fight against Donald Trump." (*Id.* ¶¶ 33 (tweeting "New Yorkers need a fighter who will take on Donald Trump. . . .

---

[2] *See Trump v. Hawaii*, 138 S. Ct. 2392 (2018).

I'll be that fighter. Join my campaign"), 34 ("I need your help in this fight against Donald

Trump.")). On July 19, 2018, during a speech before the Bronx Democratic Party, Defendant

stated that she "look[ed] forward to going into the office of Attorney General every day, suing

[Mr. Trump], defending your rights, and then going home!" (*Id.* ¶ 36).

In August, Defendant stated that Mr. Trump "ha[d] to worry about three things: [Special

Counsel Robert] Mueller, [Michael] Cohen, and Tish James. We're all closing in on him." (*Id.*

¶ 37; *see also id.* ¶ 40 (tweeting that "Trump should be worried about three people: 1. Robert

Mueller 2. Michael Cohen 3. Tish James")). Defendant also tweeted "I've got my eyes on Trump

Tower" and promised to "work with Mueller to make sure justice is served." (*Id.* ¶ 39). On

August 21, Defendant tweeted that Mr. Trump was "running out of time" and stated: "Just wait

until I'm in the Attorney General's office." (*Id.* ¶ 41 & n.23). On September 1, Defendant

tweeted about her commitment to "take on [Mr. Trump] & his business in New York." (*Id.* ¶ 43).

In a September 12, 2018 video, Defendant stated she would "never be afraid to challenge

this illegitimate president." (*Id.* ¶ 46). Defendant "baselessly accused" Mr. Trump of a "slew of

crimes, including obstruction of justice and laundering money from foreign governments," and

"demanded that he be indicted." (*Id.* ¶ 47). She also "promised to 'join with law enforcement and

other attorney generals across this nation in removing this President from office'" and promised

that "the days of Donald Trump are coming to an end." (*Id.*). Defendant won the Democratic

Party's nomination for Attorney General on September 13, 2018. (*Id.* ¶ 49). Defendant stated in

her victory speech that her campaign was about "that man in the White House who can't go a

day without threatening our fundamental rights." (*Id.*). In October, Defendant tweeted that Mr.

Trump's "days of defrauding Americans are coming to an end" and "called upon 'any agency

with jurisdiction—from the IRS to the NY AG—to follow the facts wherever they may lead.'"
(*Id.* ¶ 51).

### 2.  Defendant's Election as Attorney General

Defendant was elected Attorney General on November 6, 2018. (*Id.* ¶ 52). She promised
in her victory speech to "shin[e] a bright light into every dark corner of [Mr. Trump's] real estate
holdings." (*Id.*). After her election, Defendant "laid bare her intent" to "impermissibly target the
President of the United States." (*Id.* ¶ 53). In an interview, when asked if she planned to sue
Plaintiffs, Defendant "laughingly responded '[o]h, we're definitely going to sue him. We're
going to be a real pain in the ass. He's going to know my name personally.'" (*Id.* ¶ 55).

In an NBC News interview on December 12, 2018, Defendant stated she would "use
every area of the law to investigate President Trump and his businesses transactions and that of
his family as well," and she promised to investigate "anyone in [Mr. Trump's] orbit." (*Id.* ¶ 56).
Plaintiffs allege that Defendant's "intent to weaponize her office to target Plaintiffs was readily
apparent to even the most casual observer" and that "even members of her party condemned" her
"threats and promises" as unlawful. (*Id.* ¶¶ 57–58). For example, Daniel Goldman, the
Democratic Party's counsel for the impeachment process against President Trump and a former
Assistant United States Attorney, stated that Defendant's statements "give the appearance of an
individualized political vendetta" and that Defendant "[went] too far in allowing politics to shape
her agenda." (*Id.* ¶ 59). "Numerous" officials from the Office of the Attorney General ("OAG")
also viewed Defendant's statements with "apprehension and uneasiness" and left the office
following Defendant's election. (*Id.* ¶ 60).

Defendant was sworn in as Attorney General on January 1, 2019. (*Id.* ¶ 63). Three days
later, Defendant told CNN that she would "ensure that the man currently occupying the Oval
Office is held accountable [for] any and everything he has done." (*Id.* ¶ 65). Defendant also

stated that investigating Mr. Trump "fuels [her] soul" and that she would "never be afraid to

challenge this illegitimate president." (*Id.* ¶ 66).

### 3. Michael Cohen's Testimony Before Congress

On February 27, 2019, Michael Cohen, former attorney to Mr. Trump, testified at a

hearing before the Committee on Oversight and Reform in the House of Representatives.

*Hearing with Michael Cohen, Former Attorney to President Donald Trump: Hearing Before the*

*H. Comm. on Oversight & Reform*, Serial No. 116-03 (2019), *available at*

https://www.govinfo.gov/app/details/CHRG-116hhrg35230/CHRG-116hhrg35230/summary; *see*

*Staehr*, 547 F.3d at 424–25 (finding no abuse of discretion in taking judicial notice of matters of

public record not for their truth but to show that certain things were said publicly).[3] Mr. Cohen

testified that Mr. Trump's financial statements from the years 2011–2013 variously inflated or

deflated the value of his assets to suit his interests. (*See* Dkt. No. 16-2, at 10). Mr. Cohen

provided copies of these financial statements to the Committee. (*Id.* at 20).

### 4. The Investigation into Plaintiffs

On March 11, 2019, Defendant "formally open[ed] an investigation of the Trump

Organization" and issued subpoenas to Deutsche Bank and Investors Bank "for records relating

to the financing of four major Trump Organization projects." (Dkt. No. 1, ¶ 67); *see* N.Y. Exec.

Law § 63(12) (authorizing the Attorney General to bring a proceeding "[w]henever any person

shall engage in repeated fraudulent or illegal acts or otherwise demonstrate persistent fraud or

illegality in the carrying on, conducting or transaction of business," and, "[i]n connection with

any such application," "to take proof and make a determination of the relevant facts and to issue

---

[3] Excerpts of Mr. Cohen's February 27, 2019 testimony are available on the docket at Dkt. No. 16-2. Plaintiffs do not contest the authenticity of this document or the fact that Mr. Cohen provided that testimony.

subpoenas in accordance with the civil practice law and rules").[4] Defendant's stated basis for

opening the investigation was Mr. Cohen's testimony before Congress. (Dkt. No. 1, ¶ 69).

Plaintiffs allege that Mr. Cohen "is an unreliable source whose sworn testimony lacks any

semblance of credibility." (*Id.* ¶ 70; *see generally id.* (detailing Mr. Cohen's prior conviction for

making false statements to Congress and other felonies involving deception)).

  In April, Defendant declared: "We need to focus on Donald Trump and his abuses . . . we

need to follow his money . . . we need to find out where he's laundered money." (*Id.* ¶ 74).

Plaintiffs allege that after "nearly three years of formal investigation, five years of targeted

public attacks, and millions of dollars and thousands of hours spent, it is clear that neither Trump

nor any of his companies have ever laundered money." (*Id.* ¶ 75). Throughout 2019, Defendant

"continued to disparage" Plaintiffs. (*See id.* ¶¶ 77–78 (promising to "vigorously fight" Mr.

Trump), 79 (accusing Mr. Trump of waging a "cruel crusade against . . . invaluable members of

our society"), 80 (accusing Mr. Trump of "abuse of power")). In December 2019, Defendant

served a subpoena duces tecum on Mr. Trump, the Trump Organization's corporate officers, and

third parties, seeking information and testimony regarding "a wide range of properties owned by

Trump across the country." (*Id.* ¶ 81).

  In August 2020, Defendant filed a motion to compel Eric Trump's deposition. (*Id.* ¶ 85).

Plaintiffs allege that the motion was "conveniently filed on the first day of the Republican

National Convention" and that Defendant "intentionally leaked this information" with the

intention of disrupting the convention and "generating publicity for herself." (*Id.* ¶¶ 85–86).

---

[4] Plaintiffs also allege that Defendant issued subpoenas to the Eric Trump Foundation for its charitable donations to
St. Jude Children's Research Hospital, a "charitable donation tangentially tied to Plaintiffs," and that that investigation
"ultimately led nowhere."  (Dkt. No. 1, ¶¶ 71–73).

On May 18, 2021, Defendant "relentlessly push[ed]" District Attorney for New York County Cyrus Vance "into a criminal investigation of the Trump Organization." (*Id.* ¶ 87). Plaintiffs allege that Defendant is "inappropriately heading parallel civil and criminal probes into Plaintiffs' alleged unlawful business practices as a further attempt to erode their constitutional rights." (*Id.*). Plaintiffs allege that they have produced "over 8 million pages of documents in response to Defendant's subpoenas." (*Id.* ¶ 88).

### 5.     Defendant's Candidacy for New York Governor

On October 29, 2021, Defendant announced that she would run for New York Governor. (*Id.* ¶ 91). In the video announcing her candidacy, Defendant "boasted" that she "sued the Trump Administration 76 times, but who is counting?" (*Id.* ¶ 92). On December 9, Defendant suspended her campaign for Governor and announced that she would instead run for re-election as Attorney General. (*Id.* ¶ 93). Defendant stated: "There are a number of important investigations and cases that are underway, and I intend to finish the job." (*Id.* ¶ 94).

On December 15, 2021, Defendant appeared on *The View* and explained that she suspended her campaign for Governor because she had "unfinished business," including the "investigations into the Trump Organization and into certain individuals." (*Id.* ¶¶ 96–97). Joy Behar, one of *The View*'s hosts, said: "you believe in loyalty, I believe in putting Trump in jail." (*Id.* ¶ 97). Ms. Behar continued: "There are reports that you are trying to depose Trump under oath next month, tell me that's true." (*Id.*). Defendant responded to these comments with "laughter" and subsequently stated: "you know I can't admit or deny. . . . I cannot admit and/or deny those allegations in the preface of your question. I can just say . . . we have conducted a civil investigation into the Trump Organization. We also have a parallel investigation, a criminal investigation." (*Id.* ¶ 98).

6.       **Claims Asserted**

Plaintiffs assert that Defendant has: (1) violated their Fourteenth Amendment due process

rights by commencing "investigations against Plaintiffs in bad faith and without a legally

sufficient basis," (2) violated their First Amendment rights by seeking to stifle Plaintiffs' free

speech and retaliate against Plaintiffs based upon Mr. Trump's political views, (3) violated their

Fourth Amendment rights by issuing subpoenas without any "justifiable legal or factual basis,"

and (4) abused process to advance her own political career and injure Mr. Trump personally and

politically. (*Id.* ¶¶ 102–55). Plaintiffs seek declaratory judgments that Defendant has violated

their constitutional rights and that her investigations constitute an abuse of process, as well as "a

preliminary and permanent injunction" "requiring Defendant to immediately cease or, at a

minimum, appropriately limit all ongoing investigations of Plaintiffs pending resolution of this

action" and "granting Plaintiffs relief from Defendant's ongoing, unbounded investigations and

enjoining her from being involved in any manner in any civil or criminal actions against

Plaintiffs." (*Id.* at 29–30).

B.       **Proceedings in State Court**

On August 24, 2020, Defendant commenced a special proceeding under Article 4 of New

York Civil Practice Law and Rules ("C.P.L.R.") in New York Supreme Court, New York

County (the "New York proceeding"),[5] to compel compliance with subpoenas issued pursuant to

her statutory authority to investigate fraudulent or illegal business activity under N.Y. Executive

Law § 62(12). Defendant's forty-five-page petition stated that the OAG opened its investigation

after Mr. Cohen testified before Congress that Mr. Trump's financial statements, copies of which

---

[5] *People v. The Trump Organization*, New York State Supreme Court, New York County, Index No. 451685/2020
(filed Aug. 24, 2020). A court "may take judicial notice of a document filed in another court not for the truth of the
matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Global
Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006).

Mr. Cohen produced, variously inflated and deflated the value of certain assets. *People v. The Trump Organization*, No. 451685/2020, Doc. No. 181, ¶ 52 (Aug. 24, 2020). The petition stated that the OAG's investigation had "determined that [these] financial statements were, in fact, provided to financial institutions." *Id.* ¶ 53. Defendant's petition relied on C.P.L.R. 2308(b), which provides: "Unless otherwise provided, if a person fails to comply with a subpoena which is not returnable in a court, the issuer . . . may move in the supreme court to compel compliance." C.P.L.R. 2308(b)(1). "If the court finds that the subpoena was authorized, it shall order compliance and may impose costs not exceeding fifty dollars." *Id.* The initial respondents in the New York proceeding were the Trump Organization, Inc., DJT Holdings LLC, DJT Holdings Managing Member LLC, Seven Springs LLC, Eric Trump, Charles Martabano, Morgan, Lewis & Brockius LLP, and Sherri Dillon.

On September 23, 2020, Justice Arthur F. Engoron issued an order granting Defendant's motion to seal and granting in part her motion to compel disclosure in accordance with the subpoenas issued. *See generally People v. The Trump Organization, Inc.*, No. 451685/2020, 2020 WL 5775887, 2020 N.Y. Misc. LEXIS 6417 (N.Y. Sup. Ct. N.Y. Cty. Sept. 23, 2020) ("*Trump I*") (ordering Eric Trump to appear for a deposition and the Trump Organization to produce documents in accordance with certain privilege rulings). Justice Engoron stated that, "to the extent that these depositions will require rulings on privilege, this Court will maintain jurisdiction over this special proceeding, and any of the parties may contact the Court in real time to obtain any necessary rulings as the depositions proceed." *Id.*, 2020 WL 5775887, at *1, 2020 N.Y. Misc. LEXIS 6417, at *3.

In October 2020, the court modified the prior order to allow an outside lawyer to produce responsive documents to the court directly for *in camera* review, rather than to the OAG in the

**SPA31**

first instance. *See People v. The Trump Organization, Inc.*, No. 451685/2020, 2020 WL 5992323 (N.Y. Sup. Ct. N.Y. Cty. Oct. 7, 2020) ("*Trump II*").[6] In December 2020, Justice Engoron further modified his prior orders as it related to certain privilege rulings. *See People v. The Trump Organization, Inc.*, No. 451685/2020, 2020 WL 7360811, 2020 N.Y. Misc. LEXIS 10583 (N.Y. Sup. Ct. N.Y. Cty. Dec. 15, 2020) ("*Trump III*").

In September 2021, Justice Engoron so-ordered a stipulation between the parties by which the Trump Organization agreed to provide a "report . . . of actions taken to preserve, collect, and produce hard-copy and electronic documents responsive to the OAG subpoenas" and to "work diligently to comply with" its outlined responsibilities. (Dkt. No. 16-4, at 3). The parties also stipulated that, if the OAG "reasonably conclude[d]" after October 15 that the Trump Organization "had not met its obligations to comply with any subpoenas outstanding," the Trump Organization would "retain, at its expense, an independent third-party e-discovery firm" to "oversee the identification, collection, and review of" responsive electronically stored information. (*Id.*). The OAG subsequently notified the Trump Organization that the Office had reasonably concluded that the Trump Organization had not met its obligations, (*see* Dkt. No. 16-7), and the Trump Organization retained a third-party e-discovery firm, (Dkt. No. 16, ¶ 5).

The OAG issued subpoenas dated December 1, 2021 to Mr. Trump, Donald Trump, Jr., and Ivanka Trump for both documents and testimony. (*See* Dkt. No. 16-9, ¶ 385). By court-ordered stipulation dated December 30, Mr. Trump and his two children were "added" to the special proceeding as respondents so they could move to quash the subpoenas or seek other related relief. (Dkt. No. 16-1, at 2–6). The three Trump respondents did move to quash the subpoenas or, alternatively, to stay their enforcement pending resolution of the criminal

---

[6] No Lexis cite available.

investigation. (*See* Dkt. No. 16-8). The Trump respondents argued that requiring them to comply with Defendant's subpoenas in light of the OAG's participation in a "joint criminal investigative effort" with the New York District Attorney's Office would circumvent constitutional and statutory protections available to those who are compelled to testify in pending criminal cases. (*Id.*; *see also* Dkt. No. 25-3, at 6–21). They further argued that the court should deny Defendant's motion to compel because she "impermissibly targeted Donald Trump's associates and companies for investigation and prosecution based solely on political animus." (*Id.* at 24). To support this selective prosecution argument, the Trump respondents relied on numerous pages of statements made by Defendant, many of which are also alleged in their federal complaint. (*See id.* at 26–32).

Defendant filed a 113-page supplemental petition on January 24, 2022 detailing the OAG's "preliminary factual findings" which indicate that "the annual financial statements, tax submissions, and other documents under investigation contain material misstatements and omissions." (Dkt. No. 16-9, at 3, 9–86). The petition states that the OAG "intends to make a final determination about who is responsible for those misstatements and omissions," and "requires the testimony and evidence sought [from the Trump respondents] to determine which Trump Organization employees and affiliates . . . may have assisted the Trump Organization and Mr. Trump in making, or may have relevant knowledge about, the misstatements and omissions at issue." (*Id.* at 3).

On February 17, 2022, Justice Engoron denied the motion to quash and ordered the Trump respondents to appear for depositions within 21 days and Mr. Trump to comply with the portion of the subpoena "seeking documents and information" within 14 days. *See People v. The Trump Organization, Inc.*, No. 451685/2020, 2022 WL 489625, 2022 N.Y. Misc. LEXIS 809

(N.Y. Sup. Ct. N.Y. Cty. Feb. 17, 2022) ("*Trump IV*"). Justice Engoron stated that he held "at the outset of this special proceeding" that the OAG's investigation was "lawful." *Id.*, 2022 WL 489625, at *2, 2022 N.Y. Misc. LEXIS 809, at *3–4. The court rejected the Trump respondents' argument that the "expan[sion]" of the investigation from "purely civil to a civil/criminal hybrid" violated their constitutional right to be free from compelled self-incrimination. *Id.*, 2022 WL 489625, at *2–6, 2022 N.Y. Misc. LEXIS 809, at *3–16 (noting that the OAG informed the Trump respondents on January 29, 2021 "that the evidence reviewed to date could lead to criminal liability" and on April 27, 2021 that the OAG was "also engaged in a criminal investigation"). Justice Engoron also rejected the argument that Defendant's investigation constituted selective enforcement, finding that the Trump respondents "failed to submit any evidence that the law was not applied to others similarly situated" or "any evidence of discrimination based on race, religion, or any other impermissible or arbitrary classification." *Id.*, 2022 WL 489625, at *4–5; 2022 N.Y. Misc. LEXIS 809, at *12–13. The court concluded that the OAG was "not violating any rights that . . . the United States and New York State Constitutions afford the New Trump Respondents." *Id.*, 2022 WL 489625, at *5; 2022 N.Y. Misc. LEXIS 809, at *14. The Trump respondents filed an appeal of Justice Engoron's order to the Appellate Division, First Department. (Dkt. No. 26-1). The respondents raised, as one of the issues on appeal, Justice Engoron's denial of their selective prosecution claim. (*Id.* at 6).

On March 28, 2022, Justice Engoron issued an order requiring the Trump Organization and the third-party e-discovery firm to make certain periodic reports regarding "completion of each of the duties" identified in the September 2021 stipulated order. (Dkt. No. 28-1, at 2–3). The court ordered the Trump Organization to "comply in full with OAG's subpoenas, with the

exception of the certification, privilege log, clawbacks and downgrades, by April 15, 2022" and

to provide the additional logs by April 29, 2022. (*Id.* at 4).

On April 26, 2022, Justice Engoron issued an order finding Mr. Trump in contempt of

court for "willfully disobey[ing] a lawful court order [the February 17, 2022 order] of which he

had knowledge, prejudicing OAG." (Dkt. No. 32-1, at 4). The state court found that Mr. Trump

did not produce the documents covered by the December 2021 subpoena, instead submitting

"boilerplate objections" and a "woefully inadequate" affirmation of compliance from his

counsel. (*Id.* at 3). The court ordered Mr. Trump to pay a fine of $10,000 per day "until he

purges such contempt to the satisfaction" of the court. (*Id.* at 4). On May 11, 2022, Justice

Engoron "conditionally purge[d]" Mr. Trump's contempt, provided that Mr. Trump meet certain

conditions on or before May 20, 2022. (Dkt. No. 33-1, at 2). On May 20, Mr. Trump submitted

materials purporting to show compliance with the court's conditions. *People v. The Trump*

*Organization*, No. 451685/2020, Doc. No. 780 (May 20, 2022). The OAG responded, arguing

that Mr. Trump remains noncompliant with one condition and proposing that the deadline for his

compliance be extended to June 1, 2022. *Id.*, Doc. No. 781 (May 23, 2022). Justice Engoron has

not yet ruled on whether Mr. Trump's contempt has been purged.

Mr. Trump has appealed the April 26 contempt ruling to the Appellate Division, First

Department, which remains pending. (Dkt. No. 32-4).

On May 26, 2022, the Appellate Division, First Department affirmed *Trump IV*. (Dkt.

No. 35-1). The First Department noted that the "sequence of events suggests that the

investigation was lawfully initiated at its outset and well founded, apart from any parallel

criminal investigation undertaken by the District Attorney." (*Id.* at 4). In rejecting the Trump

respondents' selective prosecution claim, the court noted that "OAG began its investigation after

public testimony of a senior corporate insider and reviewed significant volumes of evidence

before issuing the subpoenas," and that the respondents failed to identify any similarly situated

persons that were not investigated. (*Id.*).

### III.    STANDARD OF REVIEW

"A court faced with a motion to dismiss pursuant to both Rules 12(b)(1) and 12(b)(6)

must decide the jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a

decision on the merits and, therefore, an exercise of jurisdiction." *Mann v. N.Y. State Ct. of*

*Appeals*, No. 21-cv-49, 2021 WL 5040236, at *3, 2021 U.S. Dist. LEXIS 209018, at *8

(N.D.N.Y. Oct. 29, 2021) (citation omitted). A motion to dismiss based on an abstention doctrine

is considered a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), *City of*

*New York v. Milhelm Attea & Bros., Inc.*, 550 F. Supp. 2d 332, 341 (E.D.N.Y. 2008), as is a

motion to dismiss under the *Rooker-Feldman* doctrine, *Hylton v. J.P. Morgan Chase Bank, N.A.*,

338 F. Supp. 3d 263, 273 (S.D.N.Y. 2018). "In resolving a motion to dismiss under Rule

12(b)(1), the district court must take all uncontroverted facts in the complaint (or petition) as

true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v.*

*Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (citation omitted).

The Court may also "refer to evidence outside the pleadings" and "take judicial notice of

documents in the public record, including state court filings." *Krajisnik Soccer Club, Inc. v.*

*Krajisnik Football Club, Inc.*, No. 20-cv-1140, 2021 WL 2142924, at *2, 2021 U.S. Dist. LEXIS

99456, at *5 (N.D.N.Y. May 26, 2021) (citations omitted).

To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim, including

a motion invoking res judicata, *Mann*, 2021 WL 5040236, at *3, 2021 U.S. Dist. LEXIS 209018,

at *8, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its

face,'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013)

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must provide

factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* (quoting

*Twombly*, 550 U.S. at 555). The Court must accept as true all factual allegations in the complaint

and draw all reasonable inferences in the plaintiff's favor. *See EEOC v. Port Auth.*, 768 F.3d

247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d

Cir. 2007)). However, "the tenet that a court must accept as true all of the allegations contained

in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## IV.   DISCUSSION

Defendant moves to dismiss Plaintiffs' complaint in its entirety based on the *Younger*,

*Colorado River*, and *Wilton* abstention doctrines, the *Rooker-Feldman* doctrine, res judicata, and

for failure to state a claim. (*See generally* Dkt. No. 15).

### A.   *Younger* Abstention

Defendant first argues that this Court should abstain under *Younger*[7] and dismiss

Plaintiffs' complaint, arguing that the New York proceeding implicates two circumstances in

which *Younger* abstention is appropriate and that no exception to the doctrine applies. (Dkt. No.

15, at 18–25). In response, Plaintiffs do not argue that the threshold requirements for *Younger*

abstention are not met, but rather argue that the bad faith exception applies. (Dkt. No. 21, at 13–

20).[8]

#### 1.   *Younger* Requirements

While the "obligation of federal courts to hear cases within their jurisdiction is 'virtually

unflagging,'" there are "narrow" circumstances where abstention is appropriate. *Cavanaugh v.*

---

[7] *See Younger v. Harris*, 401 U.S. 37 (1971).

[8] At oral argument, Plaintiffs asserted for the first time that the threshold requirements for *Younger* abstention have not been met.

*Geballe*, 28 F.4th 428, 430, 432 (2d Cir. 2022) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). The *Younger* abstention doctrine, which is "grounded in interrelated principles of comity and federalism," provides that "federal courts should generally refrain from enjoining or otherwise interfering in ongoing state proceedings." *Spargo v. N.Y. State Comm'n on Judicial Conduct*, 351 F.3d 65, 74 (2d Cir. 2003). The doctrine applies, however, in only three "exceptional circumstances" involving: (1) ongoing state criminal prosecutions, (2) certain "civil enforcement proceedings," and (3) "pending civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 78 (2013) (citations and internal punctuation omitted); *see id.* (holding that these three "exceptional" categories "define *Younger*'s scope").[9] Where one of *Sprint*'s categories is implicated, *Younger* abstention is required. *See Cavanaugh*, 28 F.4th at 433.

Before invoking *Younger*, a federal court may also "appropriately consider three additional factors laid out" in *Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423 (1982), which, when present, "further counsel in favor of abstention." *Id.* at 432 (quoting *Sprint*, 571 U.S. at 81) (brackets omitted). These non-dispositive *Middlesex* factors are whether there is (1) an "ongoing state judicial proceeding" that (2) "implicates important state interests" and (3) "provides an adequate opportunity to raise federal challenges." *Id.* (quoting *Sprint*, 571 U.S. at 81). However, these "additional factors . . . become relevant only after applying 'the straightforward categorical approach required by *Sprint*.'" *Toczek v. Alvord*, 841 F. App'x 263, 266 n.3 (2d Cir. 2021) (summary order) (quoting *Falco v. Justices of the Matrimonial Parts of Sup. Ct. of Suffolk Cty.*, 805 F.3d 425, 427 (2d Cir. 2015)).

---

[9] There is no argument that the New York proceeding is an ongoing state criminal prosecution.

a.       **Civil Enforcement Proceeding**

The Court first concludes that the New York proceeding is not a pending state civil

enforcement proceeding which is "akin to a criminal prosecution in important respects." *Sprint*,

571 U.S. at 79 (quoting *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604 (1975)) (internal quotation

marks omitted). Three factors help identify such enforcement proceedings. First, such

enforcement actions "are characteristically initiated to sanction the federal plaintiff, *i.e.*, the party

challenging the state action, for some wrongful act." *Id.* Second, a state actor "is routinely a party

to the state proceeding and often initiates the action." *Id.* Finally, "[i]nvestigations are commonly

involved, often culminating in the filing of a formal complaint or charges." *Id.* at 79–80.

Although a state actor initiated and is a party to the New York proceeding, and the proceeding

involves an investigation, the New York proceeding was not "initiated to sanction the federal

plaintiff[s]" and is not the result of "the filing of a formal complaint or charges." *Id.*[10]

The Third Circuit's recent decision in *Smith & Wesson Brands, Inc. v. Attorney General

of New Jersey*, 27 F.4th 886 (3d Cir. 2022), is instructive. There, the New Jersey Attorney

General was investigating Smith & Wesson "for possible violations of the New Jersey Consumer

Fraud Act" and issued the company a subpoena. *Id.* at 889. Instead of complying with the

subpoena, Smith & Wesson filed a federal lawsuit alleging that the subpoena violated various

constitutional provisions. *Id.* The New Jersey Attorney General subsequently "sought to enforce

the subpoena in state court" and moved to dismiss the federal lawsuit under *Younger*. *Id.* at 889–

90. The Third Circuit held that the state subpoena enforcement proceeding was not a civil

enforcement proceeding under *Younger*. *Id.* at 891–93. The court noted that "New Jersey brought

---

[10] *But see Schorr v. DoPico*, 686 F. App'x 34, 36–37 (2d Cir. 2017) (summary order) (affirming *Younger* abstention
in favor of ongoing state-initiated attorney disciplinary proceeding even though "the committee ha[d] not yet brought
charges in a formal hearing").

the subpoena enforcement action in its sovereign capacity," thus satisfying the first factor, but

distinguished the case from "those where more robust preliminary investigations led to the filing

of administrative complaints" and where "the investigation and the charges concerned the same

conduct." *Id.* at 891–92. More specifically, the "substantive investigation" into Smith & Wesson

"concerned consumer fraud, yet the complaint alleged only violation of a subpoena." *Id.* at 892.

The court also held that the subpoena enforcement action was not initiated to sanction Smith &

Wesson because it was "not a suit initiated to punish wrongdoing." *Id.* The Attorney General did

not "allege that Smith & Wesson violated any substantive legal duty" but only sought

compliance with a non-self-executing subpoena, and Smith & Wesson would be subject to

penalties only after violating a court order ordering compliance with the subpoena. *Id.* at 892–93;

*see id.* ("A subpoena enforcement action that requires the production of documents 'is not

retributive in nature' or 'imposed to punish . . . some wrongful act.'" (quoting *TitleMax of Del.,*

*Inc. v. Weissmann*, 24 F.4th 230, 237 (3d Cir. 2022))); *cf. Mulholland v. Marion Cty. Election*

*Bd.*, 746 F.3d 811, 817 (7th Cir. 2014) ("The possibility that a state proceeding may lead to a

future prosecution of the federal plaintiff is not enough to trigger *Younger* abstention.").

      While the subpoena enforcement action here, which commenced in August 2020 and has

resulted in numerous orders, is "more robust" than the single-subpoena enforcement action in

*Smith*, as in *Smith*, the New York proceeding does not allege that Plaintiffs violated substantive

legal duties or involve the same substantive conduct underlying Defendant's investigation. No

petition seeking an injunction against or damages from Plaintiffs has been or would be filed in

this proceeding. Defendant clarified at oral argument that the ongoing New York proceeding

cannot result in an enforcement order under Executive Law § 63(12);[11] the OAG would have to

---

[11] *See* N.Y. Exec. Law § 63(12) ("Whenever any person shall engage in repeated fraudulent or illegal acts or otherwise
demonstrate persistent fraud or illegality in the carrying on, conducting or transaction of business, the attorney general

bring a separate enforcement proceeding seeking such an order. Mindful that *Younger*'s scope is "narrow" and that abstention is the "exception, not the rule," *Cavanaugh*, 28 F.4th at 431–32, the Court finds that the New York proceeding is not a civil enforcement proceeding akin to a criminal prosecution.

> **b.      Orders Uniquely in Furtherance of the State Court's Ability to Perform Judicial Functions**

However, the Court concludes that, in light of the April 26 order holding Mr. Trump in contempt, which has been only conditionally purged, the New York proceeding involves "certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions" and therefore satisfies *Sprint*'s third category. *Cavanaugh*, 28 F.4th at 432. As the Second Circuit recently stated, "federal courts should refrain from interfering with core state court civil administrative processes, powers, and functions that allow the state courts to adjudicate the matters before them and enforce their judgments." *Id.* at 434 (discussing cases implicating *Sprint*'s third category which involved "challenges to the *processes* by which the State compels compliance with the judgments of its courts" and to "the *way* that New York courts manage their own" proceedings). "Civil contempt orders . . . fall into this category." *Disability Rights N.Y. v. New York*, 916 F.3d 129, 133 (2d Cir. 2019) (citing *NOPSI v. Council of City of New Orleans*, 491 U.S. 350, 368 (1989)).

In *Juidice v. Vail*, a New York state court entered a default judgment against the federal plaintiff for defaulting on a credit arrangement. 430 U.S. 327, 329 (1977). The plaintiff was later "served with a subpoena requiring him to attend a deposition so as to give information relevant to the satisfaction of the judgment." *Id.* After he failed to appear for the deposition or respond to

---

may apply . . . for an order enjoining the continuance of such business activity or of any fraudulent or illegal acts, directing restitution and damages and, in an appropriate case, cancelling any certificate filed under [N.Y. Gen. Bus. Law § 130].").

the court's order to show cause, the plaintiff was held in contempt, fined, and jailed until he paid

the fine. *Id.* at 329–30. He then sued in federal court seeking to "enjoin" the "use of the statutory

contempt procedures authorized by New York law" on the ground that those procedures violated

the Fourteenth Amendment. *Id.* at 330. The Supreme Court held that the principles underlying

*Younger* abstention "apply to a case in which the State's contempt process is involved" because a

state's "interest in the contempt process, through which it vindicates the regular operation of its

judicial system, so long as that system itself affords the opportunity to pursue federal claims

within it, is surely an important interest." *Id.* at 335; *see id.* at 336 n.12 (noting that contempt

"stands in aid of the authority of the judicial system, so that its orders and judgments are not

rendered nugatory"). After *Sprint*, courts in this Circuit have held that proceedings involving

contempt orders fall within *Sprint*'s third category. *See, e.g.*, *Tomczyk v. N.Y. Unified Court Sys.*,

No. 19-cv-2753, 2019 WL 2437849, at *3 n.1, 2019 U.S. Dist. LEXIS 97326, at *9 n.1

(E.D.N.Y. June 10, 2019) ("[I]nsofar as Plaintiff seeks to challenge the judgment of contempt

entered against him for failing to pay child support, such claims fall squarely within the scope of

abstention." (citing *Juidice*, 430 U.S. at 339)); *Jureli, LLC v. Schaefer*, 53 F. Supp. 3d 552, 560

(E.D.N.Y. 2014) (concluding that the court's consideration of the plaintiff's claims "would

undoubtedly interfere with the pending civil contempt proceedings" in the state court action).

It is true that, prior to April 26, 2022, the New York proceeding did not involve the

state's contempt powers or procedures. Nor have Plaintiffs challenged the New York court's

authority to issue lawful orders and enforce those orders by holding parties in contempt.

However, *Younger* precludes federal courts from enjoining or otherwise interfering with state

court proceedings that fit one of *Sprint*'s three categories, and the Court may consider

developments in the New York proceeding occurring after the filing of this lawsuit and before

any substantive proceedings on the merits have taken place in federal court. *See Middlesex*, 457

U.S. at 429–30, 436 & n.15 (considering "subsequent development[s]" occurring both before and

after the filing of the petition for certiorari and noting that it "would trivialize the principles of

comity and federalism if federal courts failed to take into account" evidence of an adequate state

forum "prior to any proceedings on the merits in federal court"); *see also Am. Charities for*

*Reasonable Fundraising Regulation, Inc. v. Shiffrin*, 46 F. Supp. 2d 143, 156 (D. Conn. 1999)

(rejecting the argument that "the applicability of *Younger* revolves around the status of the case

at the time the federal complaint was filed," because such reasoning "does not promote the

rationale behind" the doctrine "of comity and deference to state courts"); *Helms Realty Corp. v.*

*City of New York*, 320 F. Supp. 3d 526, 537 n.5 (S.D.N.Y. 2018) (noting that the fact that state

actions were filed after the federal action did not "preclude *Younger*" since those actions were

"filed before any proceedings of substance on the merits had taken place in federal court").

   Here, Plaintiffs seek from this Court preliminary and permanent injunctive relief which

would "cease or, at a minimum, appropriately limit all ongoing investigations of Plaintiffs" and

"grant[ ] Plaintiffs relief from Defendant's ongoing unbounded investigations and enjoin[]

[Defendant] from being involved in any manner in any civil or criminal actions against

Plaintiffs." (Dkt. No. 1, at 29). Granting the relief Plaintiffs seek would have the practical effect

of interfering with the contempt ruling in the New York proceeding and runs the risk of

rendering that order "nugatory." *Juidice*, 430 U.S. at 336 n.12; *see Elna Sefcovic, LLC v. TEP*

*Rocky Mountain, LLC*, 953 F.3d 660, 671 (10th Cir. 2020) (noting that "both *Juidice* and

*Pennzoil* [*Co. v. Texaco, Inc.*, 481 U.S. 1 (1987)] involved requests to directly or indirectly

thwart state court compliance processes" and that "*Younger* governs whenever the requested

relief would interfere with the state court's ability to conduct proceedings, regardless of whether

the relief targets the conduct of a proceeding directly" (citation omitted)). Thus, even though Plaintiffs did not commence this federal lawsuit to challenge New York's contempt procedures, the Court concludes that the interests underlying *Younger* require abstention in this instance. Interference with the state's contempt process "unduly interferes with the legitimate activities of the State" and can also "readily be interpreted as reflecting negatively upon the state courts' ability to enforce constitutional principles." *Juidice*, 430 U.S. at 336 (citations, internal quotation marks, and brackets omitted). Accordingly, the April 26 contempt ruling in the New York proceeding implicates *Sprint*'s third category.[12]

### c.   The *Middlesex* Factors

Having applied the "straightforward categorical approach required by *Sprint*," the Court also considers the three *Middlesex* factors and finds that all weigh in favor of abstention. First, there is a pending state proceeding. *See Cuomo v. Dreamland Amusements, Inc.*, No. 08-cv-7100, 2008 WL 4369270, at *9–10, 2008 U.S. Dist. LEXIS 71432, at *29–31 (S.D.N.Y. Sept. 22, 2008) (holding, pre-*Sprint*, that there was an "ongoing proceeding" for *Younger* purposes where the Attorney General filed a motion to compel compliance with subpoenas). Second, the state proceeding implicates an important state interest. This inquiry "turns on whether the state action concerns the central sovereign functions of state government" and focuses on "the importance of the generic proceedings to the State," not the state's interest in the outcome of the particular case at issue. *In re Standard & Poor's Rating Agency Litig.*, 23 F. Supp. 3d 378, 409–10 (S.D.N.Y. 2014) (citations omitted). Here, the state's interest in investigating and enforcing its laws is an

---

[12] The Court does not agree with Defendant that, aside from the contempt ruling, the New York proceeding otherwise involves orders "uniquely in furtherance of the state courts' ability to perform their judicial functions." *See Sprint*, 571 U.S. at 78. None of the other orders issued in the New York proceeding implicates the processes by which New York compels compliance with its judgments or the way its courts manage their own proceedings. *See Cavanaugh*, 28 F.4th at 434–35.

important state interest. *Dreamland Amusements*, 2008 WL 4369270, at *10, 2008 U.S. Dist.

LEXIS 71432, at *31 ("A state's interest in enforcing its own laws and investigating their

violation cannot seriously be disputed."). Finally, the New York proceeding provides Plaintiffs

with "an adequate opportunity for judicial review of [their] federal constitutional claims."

*Spargo*, 351 F.3d at 75. Although Plaintiffs state that they "ha[ve] not, and could not, raise the

affirmative constitutional relief" they seek here "in the state action," (Dkt. No. 21, at 23), they do

not explain why this is the case. *See Spargo*, 351 F.3d at 77 (noting that the "Supreme Court

placed the burden of establishing the inadequacy of state proceedings squarely on the party

seeking to avoid abstention"); *infra* Section IV.B.2.c. (explaining why Plaintiffs' claims could

have been raised in the New York proceeding). New York Supreme Court has jurisdiction to

entertain federal constitutional claims, and Plaintiffs raised a challenge to Defendant's subpoenas

based on the Fourteenth Amendment's Equal Protection Clause. (*See* Dkt. No. 25-3, at 24–37).

Plaintiffs' failure to raise all of their constitutional claims in the state-court forum is not

determinative. *See Juidice*, 430 U.S. at 337 ("Appellees need be accorded only an opportunity to

fairly pursue their constitutional claims in the ongoing state proceedings, and their failure to

avail themselves of such opportunities does not mean that the state procedures were inadequate."

(internal citation omitted)). Thus, the *Middlesex* factors weigh in favor of abstention.

### 2.    Bad Faith Exception

Even where *Younger* would otherwise apply, a federal court may still exercise its

jurisdiction "upon a showing of 'bad faith, harassment or any other unusual circumstance that

would call for equitable relief.'" *Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191, 198

(2d Cir. 2002) (quoting *Younger*, 401 U.S. at 54). A federal plaintiff seeking to "head off

*Younger* abstention" bears the burden of establishing that an exception applies. *Id.* (citing

*Kirschner v. Klemons*, 225 F.3d 227, 235–36 (2d Cir. 2000)). Here, Plaintiffs argue that the bad

faith exception to *Younger* abstention applies because Defendant's "investigation lacked a
legitimate basis at the time it was commenced," has "no reasonable expectation of obtaining a
favorable outcome," and was brought for a retaliatory, harassing, or other improper purpose.
(Dkt. No. 21, at 14–20). Defendant argues that the bad faith exception does not apply because
Defendant had a reasonable expectation of a favorable outcome in the New York proceeding and
because Justice Engoron has already determined that Defendant's investigation was premised on
Mr. Cohen's testimony before Congress and not on personal animus. (Dkt. No. 24, at 6–8).

     To establish the "bad faith" exception, the federal plaintiff must show that "the party
bringing the state action must have no reasonable expectation of obtaining a favorable
outcome"—i.e., brought the proceeding in bad faith—or that the proceeding "has been brought to
retaliate for or to deter constitutionally protected conduct" or otherwise "for the purpose to
harass." *Cullen v. Fliegner*, 18 F.3d 96, 103–04 (2d Cir. 1994); *see also Huffman*, 420 U.S. at
611 (noting that a federal court may intervene where the state proceeding "is motivated by a
desire to harass or is conducted in bad faith"). The "subjective motivation of the state authority
in bringing the proceeding is critical to, if not determinative of, this inquiry." *Diamond "D"*, 282
F.3d at 199. It is "only when the state proceeding is brought with no legitimate purpose that [the]
state interest in correcting its own mistakes dissipates, and along with it, the compelling need for
federal deference." *Id.* at 200. ("[A] state has no interest in continuing actions brought with
malevolent intent."). The bad faith exception has "been deemed a 'narrow' one." *Cullen*, 18 F.3d
at 104 (quoting *Huffman*, 420 U.S. at 611).

     Here, the Court finds that Plaintiffs have not established that the bad faith exception to
*Younger* applies. First, Plaintiffs have not shown that Defendant had "no reasonable expectation
of obtaining a favorable outcome" in this subpoena enforcement proceeding and that the

proceeding was therefore brought in bad faith. *Diamond "D"*, 282 F.3d at 199; *cf. Kugler v. Helfant*, 421 U.S. 117, 126 n.6 (1975) (explaining that "'bad faith' in this context generally means that a prosecution has been brought without a reasonable expectation of obtaining a valid conviction"). Defendant commenced the New York proceeding on August 24, 2020, with a forty-five-page petition seeking subpoena compliance, pursuant to her statutory authority to investigate fraudulent or illegal business activity, N.Y. Exec. Law § 63(12), and Justice Engoron has repeatedly granted Defendant's motions to compel. Justice Engoron has issued multiple orders in favor of Defendant, including (1) a September 23, 2020 order directing Eric Trump to appear for a deposition and the Trump Organization to produce documents in accordance with certain privilege rulings (*Trump I*), which the court later modified as to privilege rulings on October 7, 2020 (*Trump II*) and December 15, 2020 (*Trump III*); (2) an order dated February 17, 2022 granting Defendant's motion to compel the depositions of Mr. Trump, Ivanka Trump, and Donald Trump, Jr., and the production of documents from Mr. Trump (*Trump IV*); and (3) an April 26, 2022 order holding Mr. Trump in contempt for failure to adequately comply with the order directing the production of documents (Dkt. No. 32-1). Indeed, the orders compelling document production include a stipulation between the OAG and the Trump Organization, which Justice Engoron "so ordered," in which the Trump Organization agreed to provide a report of its actions taken "to preserve, collect, and produce" responsive documents and to "work diligently" to comply with its responsibilities. (Dkt. No. 16-4, at 3). The Trump Organization also agreed in this stipulation to retain a third-party e-discovery firm to oversee the "identification, collection, and review of" responsive electronically stored information if the OAG reasonably concluded it was not meetings its obligations. (*Id.*). Plaintiffs have therefore failed to show that Defendant

had "no reasonable expectation of obtaining a favorable outcome" in the New York

proceeding.[13]

Second, while Plaintiffs point to Defendant's many comments, which they argue

illustrate Defendant's personal animus toward Mr. Trump and evince an intent to retaliate for or

stifle Plaintiffs' free speech, on this record the Court finds that Plaintiffs have not established

that the subpoena enforcement proceeding was commenced for the purpose of retaliation. *See*

*Phelps v. Hamilton*, 59 F.3d 1058, 1065 (10th Cir. 1995); *Cullen*, 18 F.3d at 104 (noting that "a

state cannot have a legitimate interest in discouraging the exercise of constitutional rights"). The

Court notes that the subpoena enforcement proceeding has a legitimate factual predicate:

Assistant Attorney General Colleen Kelly Faherty submitted a declaration stating that the OAG

"opened the Investigation in March 2019, following the Congressional testimony of Michael

Cohen (on February 27, 2019)"; that the OAG determined that the financial statements Mr.

Cohen produced to Congress "were provided to financial institutions"; and that the OAG then

issued "subpoenas for documents and testimony to investigate whether such submissions were a

violation of law." (Dkt. No. 16, ¶¶ 1, 3); *see also People v. The Trump Organization*, No.

451685/2020, Doc. No. 181, ¶¶ 52–53 (Aug. 24, 2020) (petition initiating the subpoena

enforcement proceeding) (same). Plaintiffs have not provided any evidence refuting these

assertions. In *Trump IV*, Justice Engoron noted that for the OAG "not to have investigated" the

Trump Organization following Mr. Cohen's "sworn congressional testimony" would have been

"a blatant dereliction of duty." 2022 WL 489625, at *5, 2022 N.Y. Misc. LEXIS 809, at *13.

---

[13] Plaintiffs also have failed to produce any evidence that the state proceeding has been conducted in bad faith. Plaintiffs' assertions that Defendant conducted a "baseless fishing expedition" and "knowingly advanced claims that were unwarranted under existing law," (Dkt. No. 21, at 10), are wholly unsupported. As discussed above, Defendant has repeatedly obtained favorable outcomes in the New York proceeding which belie the notion that the positions she has taken in that proceeding are unwarranted.

Defendant's 113-page supplemental petition, filed on January 24, 2022, details its "preliminary factual findings" evincing that "the annual financial statements, tax submissions, and other documents under investigation contain material misstatements and omissions." (Dkt. No. 16-9, at 3, 9–86). While Defendant's public statements make clear that she disagrees vehemently with Mr. Trump's political views, Plaintiffs do not identify what protected speech or conduct Defendant allegedly retaliated against them for or demonstrate any causal connection between any such protected activity and the decision to commence the subpoena enforcement proceeding. *See Phelps*, 59 F.3d at 1066 (noting that the federal plaintiff ultimately must prove that "the unconstitutional retaliation was the substantial motivating factor behind [the state actor's] decision to commence" the state proceeding).

The fact that Defendant's public statements reflect personal and/or political animus toward Plaintiffs is not, in and of itself, sufficient. "[A]nimus or ill-will between the parties does not, by itself, constitute retaliation." *Id.* at 1067. Without more, Plaintiffs' conclusory allegations of retaliation are insufficient to invoke the bad faith exception to *Younger* abstention. *Cf. Kirschner*, 225 F.3d at 236 ("Mere conclusory allegations of bias are insufficient to overcome *Younger*—a plaintiff seeking to avoid *Younger* must affirmatively demonstrate the justification for application of an exception." (citations omitted)).

Third, Plaintiffs have not established that Defendant commenced the New York proceeding to otherwise harass them. Such harassment is "typically" done "through the unjustified and oppressive use of multiple prosecutions." *Phelps*, 59 F.3d at 1065 & n.15 (citing *Younger* and collecting cases). Here, there is a single investigation and state court proceeding. While the New York proceeding has been ongoing since August 2020, Plaintiffs have submitted no evidence that the subpoena enforcement proceeding has been conducted in such a way as to

**SPA49**

constitute harassment. *Cf. id.* (noting that "the cost, anxiety, and inconvenience of defending against a single prosecution brought in good faith is not enough to establish" a threat of irreparable injury "necessary to justify enjoining pending state proceedings").

The Court has also considered the fact that the court presiding over the New York proceeding rejected the individual Trump respondents' claim of selective enforcement based upon Defendant's public comments.[14] Justice Engoron noted that "this Court's *in camera* review of the thousands of documents responsive to OAG's prior subpoenas demonstrates that OAG has a sufficient basis for continuing its investigation, which undercuts the notion that this ongoing investigation is based on personal animus . . . ." *Trump IV*, 2022 WL 489625, at *4, 2022 N.Y. Misc. LEXIS 809, at *11. Justice Engoron concluded that "the impetus for the investigation was not personal animus . . . but was sworn congressional testimony by" Mr. Cohen. *Id.*, 2022 WL 489625, at *5, 2022 N.Y. Misc. LEXIS 809, at *13; (*see also* Dkt. No. 35-1, at 4–5 (First Department rejecting a selective prosecution argument, noting that the OAG's investigation began after Mr. Cohen's testimony).

After carefully considering the record, including the fact that the subpoena enforcement proceeding has a legitimate factual predicate, concerns an investigation that Justice Engoron has found to be lawful, and has resulted in several orders in Defendant's favor, and the fact that there is no evidence before this Court that it was conducted in a manner that is harassing or in bad faith, the Court finds that Plaintiffs have failed to demonstrate that the narrow bad faith exception applies. *See Diamond "D"*, 282 F.3d at 200 ("A state proceeding that is legitimate in its purposes, but unconstitutional in its execution—even when the violations of constitutional

---

[14] The Court notes that Plaintiffs have not identified any similarly situated comparators whom Defendant has chosen not to investigate or serve with subpoenas.

rights are egregious—will not warrant the application of the bad faith exception."); *Miller v. Sutton*, 697 F. App'x 27, 28 (2d Cir. 2017) (summary order) ("The bad faith exception does not apply because the defendants had legitimate purposes for pursuing the disciplinary proceedings against [the plaintiff]."); *Amazon.com, Inc. v. James*, No. 21-cv-767, 2021 WL 3516382, at *6, 2021 U.S. Dist. LEXIS 150175, at *14–15 (E.D.N.Y. Aug. 10, 2021) ("Amazon does not explain why the Attorney General's action—even if brought in bad faith—entirely lacks a legitimate purpose.").[15]

Finally, Plaintiffs noted, in one sentence without any elaboration, that "to the extent that the Court has any doubt as to whether Defendant's investigation was commenced in bad faith, the Court should direct an evidentiary hearing on this issue." (Dkt. No. 21, at 20). Although an evidentiary hearing is required where there is a disputed issue of fact regarding a *Younger* exception, *see Kern v. Clark*, 331 F.3d 9, 12 (2d Cir. 2003), Plaintiffs have failed to identify a disputed issue of fact here which would require an evidentiary hearing. The Court has accepted as true for the purpose of this decision the allegations in the complaint, and Plaintiffs have not filed any affidavits or evidence in support of their bad faith claim. As discussed above, animus is not itself sufficient to invoke the bad faith exception, and Plaintiffs' conclusory allegations in the complaint that Defendant commenced the New York proceeding to retaliate or harass do not raise an issue of fact. *See, e.g.*, *Levy v. Town of N. Hempstead*, No. 12-cv-1777, 2013 WL 5276559, at *6 n.5, 2013 U.S. Dist. LEXIS 133626, at *21 n.5 (E.D.N.Y. Sept. 18, 2013) (finding that an evidentiary hearing on the issue of bad faith was not required where the plaintiff

---

[15] In this analysis, the Court has only considered Defendant's alleged comments for the purpose of determining whether the bad faith exception applies; the Court does not otherwise address or condone any comment.

made only "conclusory allegations of bad faith" and noting that "[s]everal courts have dismissed claims" under *Younger* "without holding an evidentiary hearing").

Accordingly, the Court concludes that the bad faith exception to *Younger* does not apply and that abstention is warranted.[16]

### B.       Dismissal Based on Res Judicata

In any event, even if *Younger* abstention were not appropriate, the Court concludes that *Rooker-Feldman* does not deprive this Court of subject matter jurisdiction over Plaintiffs' claims and that this action would have to be dismissed based upon res judicata.

### 1.       *Rooker-Feldman*

The *Rooker-Feldman* doctrine bars federal claims "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Green v. Mattingly*, 585 F.3d 97, 101 (2d Cir. 2009) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)); *see Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 84 (2d Cir. 2005). There are four "requirements" that must be satisfied before *Rooker-Feldman* applies: (1) the "federal-court plaintiff must have lost in state court," (2) the plaintiff "must complain of injuries caused by a state-court judgment," (3) the plaintiff "must invite district court review and rejection of that judgment," and (4) the state-court judgment "must have been rendered before the district court proceedings commenced." *Green*, 585 F.3d at 101 (citing *Hoblock*, 422 F.3d at 85) (internal quotation marks and brackets omitted). The underlying

---

[16] In light of this ruling, the Court does not address Defendant's argument that the Court should abstain under the abstention doctrines set forth in *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800 (1976) or *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995).

principle of the *Rooker-Feldman* doctrine is that, "within the federal judicial system, only the

Supreme Court may review state-court decisions." *Hoblock*, 422 F.3d at 85.

Even assuming the orders issued in the New York proceeding prior to the commencement

of the federal lawsuit on December 20, 2021 are final orders to which *Rooker-Feldman* applies,[17]

the Court concludes that Plaintiffs are not complaining of injuries caused by any such order and

therefore are not seeking "review and rejection" of those orders. *See id.* at 87 (noting that the

"key to resolving th[e] uncertainty" in whether a federal plaintiff is inviting review or rejection

of a state-court judgment is the requirement that the federal plaintiff be "*complain[ing] of an

injury* caused by a state judgment," which is the "core requirement from which the others

derive"). Plaintiffs' complaint indicates that they complain of Defendant's investigation into

them, alleging that the investigation violates their constitutional rights and constitutes an abuse

of process. (*See generally* Dkt. No. 1). On its face, the complaint does not appear to allege that

the injuries allegedly suffered by Plaintiffs were caused by any order or judgment in the New

York proceeding. While the Second Circuit has noted that the "full meaning" of the phrase "an

injury caused by a state judgment" is "far from obvious," it has cited to the following principle:

"a federal suit complains of injury from a state-court judgment, even if it appears to complain

only of a third party's actions, when the third party's actions are produced by a state-court

---

[17] Even if the other requirements were satisfied, *Rooker-Feldman* would only bar Plaintiffs' federal claims to the extent they invite review and rejection of final orders issued before commencement of the federal lawsuit on December 20, 2021. *See Hoblock*, 422 F.3d at 85 ("*Rooker-Feldman* has no application to federal-court suits proceeding in parallel with ongoing state-court litigation."). *Rooker-Feldman* cannot be based on orders issued after that point, including the February 17 and March 28, 2022 orders in the New York proceeding ordering Mr. Trump to appear for a deposition and the Trump Organization to comply in full with the outstanding subpoenas, respectively. *See id.* at 88 ("If federal suits cannot be barred by *Rooker-Feldman* unless they complain of injuries produced by state-court judgments, it follows that no federal suit that precedes a state-court judgment will be barred; the injury such a federal suit seeks to remedy cannot have been produced by a state-court judgment that did not exist at the federal suit's inception."); *Levin v. Barone*, No. 14-cv-673, 2018 WL 1626526, at *3, 2018 U.S. Dist. LEXIS 53861, at *7 (S.D.N.Y. Mar. 29, 2018) ("The *Rooker-Feldman* doctrine does not apply here because the state court judgment was not entered before this action commenced.").

**SPA53**

judgment and not simply ratified, acquiesced in, or left unpunished by it." *McKithen v. Brown*, 481 F.3d 89, 97 (2d Cir. 2007) (quoting *Hoblock*, 422 F.3d at 88).

Defendant argues that Plaintiffs' federal lawsuit invites this Court to reject the "September 2021 Order compelling the Trump Organization to comply with ongoing subpoena obligations." (Dkt. No. 15, at 30).[18] The September 2021 order is a stipulation and agreement between the OAG and the Trump Organization, under which the Trump Organization agreed to provide a report of its actions taken to comply with subpoenas and to "work diligently" to comply with its responsibilities. (*See* Dkt. No. 16-4). Justice Engoron "so ordered" the stipulation. (*Id.* at 4).

In *Cho v. City of New York*, the Second Circuit held that *Rooker-Feldman* did not bar the federal plaintiffs' claims in a case where the plaintiffs complained of settlement agreements they had entered into with the defendants which were "so-ordered" by New York state court judges, and complained of the conduct that led to those agreements. 910 F.3d 639, 643, 646 (2d Cir. 2018). The Second Circuit held that the fact that the state-court judges "so-ordered" the agreements meant that the plaintiffs' complained-of injuries were merely ratified by the state-court judgment, not produced by those judgments as required for *Rooker-Feldman. Id.* at 646–49. Similarly, here, to the extent Plaintiffs do complain about any injury flowing from the September 2021 order, it appears that the state court order merely ratified—and did not produce—the conduct at issue. *See id.*

---

[18] The Court assumes for purposes of this discussion that *Rooker-Feldman* may be applied to Mr. Trump, who was not a respondent in the New York proceeding at the time of the September 2021 order nor a party to the stipulation. *See Lance v. Dennis*, 546 U.S. 459, 466 n.2 (2006) ("[W]e need not address whether there are *any* circumstances, however limited, in which *Rooker-Feldman* may be applied against a party not named in an earlier state proceeding."); *Kosachuk v. Selective Advisors Grp., LLC*, 827 F. App'x 58, 61 (2d Cir. 2020) (summary order) (suggesting that a finding that the federal plaintiff was the state-court plaintiff company's "alter ego," i.e. "essentially one and the same," "potentially could have supplied a basis for invoking *Rooker-Feldman*").

Perhaps more importantly, the alleged injury of which Plaintiffs complain—an investigation which violates their constitutional rights and constitutes an abuse of process—predates the September 2021 order. The "applicability of the *Rooker-Feldman* doctrine turns not on the *similarity* between a party's state-court and federal-court claims (which is, generally speaking, the focus of ordinary preclusion law), but rather on the *causal relationship* between the state-court judgment and the injury of which the party complains in federal court." *McKithen*, 481 F.3d at 97–98. It is therefore "evident" that a party "is not complaining of an injury 'caused by' a state-court judgment when the exact injury of which the party complains in federal court existed *prior* in time to the state-court proceedings, and so could not have been 'caused by' those proceedings." *Id.* at 98. The September 2021 did not cause or produce the alleged unconstitutional investigation, which predates the New York proceeding by over one year.[19]

Accordingly, the Court concludes that *Rooker-Feldman* does not deprive this Court of subject matter jurisdiction over Plaintiffs' claims. To the extent the applicability of *Rooker-Feldman* to Plaintiffs' claims is unclear, the Court assumes hypothetical statutory jurisdiction over Plaintiffs' claims for the purpose of this discussion to address Defendant's motion to dismiss on the merits. *See Butcher v. Wendt*, 975 F.3d 236, 242–44 (2d Cir. 2020) (declining to "fully grapple[] with the *Rooker-Feldman* doctrine" and assuming hypothetical statutory jurisdiction to resolve appeal on the merits "because the *Rooker-Feldman* doctrine does not implicate Article III jurisdiction").

---

[19] Although the parties only discuss the September 2021 order, the same reasoning applies to all orders issued in the New York proceeding prior to commencement of the federal lawsuit. The parties have not conducted a *Rooker-Feldman* analysis broken down by claim and party, and the Court declines to undertake that analysis in the first instance. *Cf. King v. N.Y. City Emps.' Ret. Sys.*, 595 F. App'x 10, 11 (2d Cir. 2014) (summary order) (finding that federal action was not barred by *Rooker-Feldman* because the plaintiff did not "solely complain" of injuries caused by a state court judgment but finding that the action was precluded in "one respect").

### 2.       Res Judicata

Defendant argues that Plaintiffs' claims are barred by res judicata. (Dkt. No. 15, at 31–

34). Under New York's doctrine of res judicata,[20] a "disposition on the merits bars litigation

between the same parties, or those in privity with them, of a cause of action arising out of the

same transaction or series of transactions as a cause of action that either was raised or could have

been raised in the prior proceeding." *Blue Sky, LLC v. Jerry's Self Storage, LLC*, 145 A.D.3d

945, 946 (2d Dep't 2016) (citations omitted); *see also Josey v. Goord*, 9 N.Y.3d 386, 389 (2007)

("The doctrine of res judicata precludes a party from litigating a claim where a judgment on the

merits exists from a prior action between the same parties involving the same subject matter."

(citation and internal quotation marks omitted)). Thus, the party invoking res judicata must show

"(1) a final judgment on the merits, (2) identity or privity of parties, and (3) identity of claims in

the two actions." *Divito v. Glennon*, 193 A.D.3d 1326, 1328 (4th Dep't 2021).[21]

### a.       Final Judgment on the Merits

Defendant argues that *Trump I*, *Trump II*, *Trump III*, the September 2021 order, and

*Trump IV* are "final and appealable court judgments that resolved discrete issues in the NY

Proceeding in their entirety and therefore have preclusive effect." (Dkt. No. 15, at 31–32; Dkt.

No. 24, at 12–13). Plaintiffs respond that stipulations cannot be construed as an "adjudication on

the merits," and argue that "none of the orders in the state proceeding have preclusive effect."

(Dkt. No. 21, at 30; Dkt. No. 30, at 8).

---

[20] *See Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 87 (2d Cir. 2000) ("To determine the effect of a state court judgment, federal courts . . . are required to apply the preclusion law of the rendering state.").

[21] "A court may consider a *res judicata* defense on a Rule 12(b)(6) motion to dismiss when the court's inquiry is limited to the plaintiff's complaint, documents attached or incorporated therein, and materials appropriate for judicial notice." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 498–99 (2d Cir. 2014) (citation omitted).

A "final judgment" includes "any judicial decision upon a question of fact or law which is not provisional and subject to change and modification in the future by the same tribunal." *Bannon v. Bannon*, 270 N.Y. 484, 489 (1936). The "final judgment on the merits" requirement may therefore be satisfied by a "final order in a special proceeding [which] conclusively determine[s] every question at issue therein." *Id.* at 489–90 ("The essential element of a conclusive adjudication is finality of the proceedings. A judicial decision can constitute a conclusive adjudication of question of fact or law only when rendered in a proceeding in which a court had jurisdiction to render an irrevocable and final decision upon such question."); *see also Slater v. Am. Mineral Spirits Co.*, 33 N.Y.2d 443, 446 (1974) (finding "no occasion" to "attach significance to any such distinction" between final orders and final judgments); *Sabatino v. Capco Trading, Inc.*, 27 A.D.3d 1019, 1020 (3d Dep't 2006) ("[I]f finality is clear, the source of it should be secondary." (quoting Siegel, N.Y. Prac. § 444, at 751 [4th ed.])); *Aziz v. Butt*, 156 N.Y.S.3d 832 (Sup. Ct. Westchester Cty. 2021) (giving res judicata effect to prior special proceeding).

Here, the Court concludes that the February 22 order (*Trump IV*) which denied the Trump respondents' motion to quash Defendant's subpoena and granted Defendant's cross-motion to compel is a final judgment on the merits which brought the parties' claim regarding compliance with the subpoena "to a final conclusion." *O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 357 (1981). Although Plaintiffs note that the February 22 order is marked as a "non-final disposition," (*see* Dkt. No. 25-2, at 9), the Court agrees with Defendant that this designation is best understood to mean that the subpoena enforcement proceeding remains ongoing and Justice Engoron has retained jurisdiction over the parties' discovery disputes. *Trump IV* "conclusively determine[d]" that the Trump respondents must comply with Defendant's subpoena. *Bannon*,

270 N.Y. at 489; *see also In re 381 Search Warrants Directed to Facebook, Inc.*, 29 N.Y.3d 231,

243 (2017) ("[A]n order resolving a motion to quash such as a subpoena is a final and appealable

order in a special proceeding."). This conclusion is supported by the fact that Mr. Trump

appealed *Trump IV* to the Appellate Division, First Department, who recently affirmed Justice

Engoron's order. (Dkt. No. 35-1); *cf. Exxon Mobil Corp. v. Healey*, 28 F.4th 383, 401–02 (2d

Cir. 2022) (finding "there can be no dispute" that the Massachusetts court "issued a final order

. . . which denied Exxon's petition to set aside the [civil investigative demand] and granted the

Massachusetts Attorney General's petition to compel" where Exxon "appealed that final order,"

which was affirmed).

### b.    Identity or Privity of Parties

The parties do not dispute that both the Trump Organization and Defendant are parties in

the subpoena enforcement proceeding and this federal lawsuit. Defendant further argues that Mr.

Trump and the Trump Organization are in privity with respect to *Trump IV*. (Dkt. No. 15, at 31–

33). Plaintiffs do not respond to Defendant's privity argument.

"Generally, to establish privity the connection between the parties must be such that the

interests of the nonparty can be said to have been represented in the prior proceeding." *Green v.

Santa Fe Indus., Inc.*, 70 N.Y.2d 244, 253 (1987). Although privity "is an 'amorphous concept,'"

persons in privity "include those whose interests are represented by a party to the previous action

and those whose own rights or obligations in the subsequent proceeding are conditioned in one

way or another on, or derivative of, the rights of the party to the prior litigation." *Bayer v. City of

New York*, 115 A.D.3d 897, 898 (2d Dep't 2014) (citations, internal quotation marks, and

brackets omitted). Here, Defendant argues that Mr. Trump and the Trump Organization are in

privity because Mr. Trump "owns and controls" the Trump Organization and because Mr.

Trump's and the Trump Organization's interests "in responding to OAG's subpoena are fully

aligned." (Dkt. No. 15, at 32–33). Defendant further notes that the fact that Mr. Trump and the

Trump Organization are represented by the same counsel in the federal action "indicat[es] that

their interests are aligned with respect to OAG's Investigation." (*Id.* at 33). Moreover, in the

complaint, Plaintiffs complain of Defendant's actions against "Trump and his business, the

Trump Organization." (Dkt. No. 1, ¶¶ 108, 128, 151).[22] At oral argument, counsel for Plaintiffs

stated, in response to questioning from the Court, that the Trump Organization's and Mr.

Trump's interests are aligned. The Court therefore concludes that Mr. Trump and the Trump

Organization are in privity with respect to *Trump IV* and that this requirement of res judicata is

satisfied.

c.      **Identity of Claims**

Finally, Defendant argues that Plaintiffs "had a full and fair opportunity to litigate the

propriety of OAG's Investigation" in the New York proceeding. (Dkt. No. 15, at 33–34).

Plaintiffs respond that their cooperation and compliance with Defendant's investigation does not

"waive or endanger their ability to challenge the legitimacy of the investigation" and that the

state-court forum "lacked the power to grant the full measure of relief sought" in this action.

(Dkt. No. 21, at 30–31; Dkt. No. 30, at 12–15).

As stated, res judicata bars the relitigation of a claim that "either was raised or could have

been raised" in the prior proceeding. *Blue Sky, LLC*, 145 A.D.3d at 946.[23] In determining

whether a claim "could have been raised," New York has adopted the "transactional analysis

---

[22] The complaint also alleges that "Plaintiffs" have produced "over 8 million pages of documents in response to Defendant's subpoenas." (Dkt. No. 1, ¶ 88). The Court notes, but does not rely on, the fact that Mr. Trump has represented before the state court that any responsive documents he has would already have been produced to the OAG by the Trump Organization. (*See* Dkt. No. 32-3).

[23] Plaintiffs' argument that the New York proceeding has never addressed the issues raised in this lawsuit, (Dkt. No. 30, at 12–15), is therefore insufficient: the proper inquiry is not whether the issues *have* been addressed, but rather whether the claims *could have* been raised in the state-court forum.

38

approach." *O'Brien*, 54 N.Y.2d at 357 (citing *Reilly v. Reid*, 45 N.Y.2d 24 (1978)). Under this

approach, "once a claim is brought to a final conclusion, all other claims arising out of the same

transaction or series of transactions are barred, even if based upon different theories or if seeking

a different remedy." *Id.* Determining whether claims arise out of the same transaction or series of

transactions requires courts to analyze "whether the claims turn on facts that are related in time,

space, origin, or motivation, whether they form a convenient trial unit, and whether their

treatment as a unit conforms to the parties' expectations or business understanding or usage."

*Simmons v. Trans Express Inc.*, 37 N.Y.3d 107, 111–12 (2021) (citations and internal quotation

marks omitted). The approach is "pragmatic and flexible." *Id.*

Here, the parties do not seriously dispute that Plaintiffs' federal claims arise out of the

same transaction or series of transactions as those involved in the New York proceeding. Indeed,

all claims arise out of Defendant's investigation into Plaintiffs, and therefore involve the same or

related facts. *Cf. Exxon Mobil*, 28 F.4th at 399–400.[24] Rather, Plaintiffs argue that they have not

"waive[d]" their ability to raise their federal claims. (Dkt. No. 21, at 30–31). However, a "motion

to quash or vacate . . . is the proper and exclusive vehicle to challenge the validity of a subpoena

or the jurisdiction of the issuing authority," and once a party complies with the subpoena, "the

subpoenaed party no longer possesses the option of challenging its validity or the jurisdiction of

its issuer." *Brunswick Hosp. Ctr. v. Hynes*, 52 N.Y.2d 333, 339 (1981). Plaintiffs also note that

"New York does not have a compulsory counterclaim rule." (Dkt. No. 30, at 5); *see* C.P.L.R.

3019(a). Although New York's "permissive counterclaim rule may save from the bar of res

---

[24] Indeed, in moving to quash the subpoena against him, Mr. Trump argued that Defendant "impermissibly targeted Donald Trump's associates and companies for investigation and prosecution based solely on political animus" and his "political views." (*See* Dkt. No. 25-3, at 24–37). While framed in terms of selective enforcement in violation of the Fourteenth Amendment's Equal Protection Clause rather than a First Amendment claim, Mr. Trump's argument rested on many of the same statements made by Defendant as relied on in the federal complaint. (*See id.* at 26–31).

judicata those claims for separate or different relief that could have been but were not interposed in the parties' prior action," it does not allow a party "to remain silent in the first action and then bring a second one on the basis of a preexisting claim for relief that would impair the rights or interests established in the first action." *67-25 Dartmouth St. Corp. v. Syllman*, 29 A.D.3d 888, 889–90 (2d Dep't 2006). Even to the extent Plaintiffs' federal claims are permissive counterclaims, they are not saved from the bar of res judicata because Plaintiffs' claims for relief in this action would "impair the rights or interests established" in the subpoena enforcement proceeding. *Id.* Specifically, that proceeding has determined that Defendant's subpoenas are authorized, that she has the right to conduct the investigation, and that Plaintiffs must comply with the subpoenas. An order from this Court enjoining Defendant's investigation or requiring her recusal would impair those rights.

Plaintiffs primarily argue that the scope of the special proceeding is "narrow" and that they "did not have a full and fair opportunity to litigate [their] constitutional claims" in the state-court forum. (Dkt. No. 30, at 2–6). Indeed, res judicata "will not be applied if the initial forum did not have the power to award the full measure of relief sought in the later litigation." *Davidson v. Capuano*, 792 F.2d 275, 278 (2d Cir. 1986) (citations omitted). "Where 'formal barriers' to asserting a claim existed in the first forum it would be 'unfair to preclude [the plaintiff] from a second action in which he can present those phases of the claim which he was disabled from presenting in the first." *Id.* (citing Restatement (Second) of Judgments § 26(1)(c) cmt. c (1982)); *see also Parker v. Blauvelt Volunteer Fire Co.*, 93 N.Y.2d 343, 349 (1999) (same). However, Plaintiffs have not provided any authority to support their argument that the New York court did not "have the power to award the full measure of relief" they seek or that there were any "formal barriers" to the assertion of their federal claims in the New York

proceeding, and the cases they cite are distinguishable. In *Davidson*, for example, the defendants

argued that the federal plaintiff's prior Article 78 proceeding granting injunctive relief barred the

plaintiff's federal lawsuit, which sought damages relating to the same underlying incident. 792

F.2d at 276. The Second Circuit held that the Article 78 proceeding could not award the plaintiff

the "full measure of relief now sought" because New York law "permits damages to be awarded

in an Article 78 proceeding only if two conditions are met," and those conditions were not met in

the plaintiff's case. *Id.* at 278–79. Because the Article 78 court could not award the plaintiff

damages, the plaintiff's subsequent Section 1983 suit for damages was not precluded. *Id.* at 282;

*see also Barrington v. New York*, 806 F. Supp. 2d 730, 741–42 (S.D.N.Y. 2011) (holding that res

judicata did not bar plaintiff's Section 1983 claims in federal court where plaintiff was obligated

under state law to bring his claims against the state in the Court of Claims, which did not have

jurisdiction to hear the Section 1983 claims against officers in their individual capacity); *Burgos

v. Hopkins*, 14 F.3d 787, 791 (2d Cir. 1994) (holding that prior state habeas corpus proceeding

did not bar subsequent Section 1983 claims for compensatory and punitive damages because "a

New York State court determining a petition for habeas relief does not have the authority to

award damages to the petitioner"). Here, the subpoena enforcement proceeding is an Article 4

special proceeding, not an Article 78 proceeding or habeas proceeding, and Plaintiffs have not

identified any analogous "formal barriers" which would preclude the New York court from

awarding the injunctive relief they seek in this action. *Cf. Exxon Mobil Corp.*, 28 F.4th at 400

(noting that the "specific relief that Exxon now claims was available only in federal court—

namely, an injunction prohibiting pretextual investigations and ending the Massachusetts

Attorney General's investigation—was equally available in state court."); *Temple of Lost Sheep

Inc. v. Abrams*, 930 F.2d 178, 184 (2d Cir. 1991) (noting that the district court judge "properly

found" that the federal plaintiffs "[could] adequately raise their [Section 1983] constitutional challenges to the Attorney General's conduct in pending state proceedings" involving a motion to compel compliance with subpoenas and a cross-motion to quash). Although Plaintiffs note the "severely restricted nature" of an Article 4 special proceeding, including that discovery is not allowed without leave of court (Dkt. No. 30, at 3–4 (C.P.L.R. 408)), Plaintiffs do not explain why they did not seek such leave.

Finally, Plaintiffs argue that the Supreme Court has "expressly held that federal court is the proper forum" for the relief they seek. (*Id.* at 6–8 (citing *Trump v. Vance*, 140 S. Ct. 2412 (2020))). In *Vance*, which involved a state criminal subpoena duces tecum directed at President Trump, the Supreme Court held that the President "is neither absolutely immune from state criminal subpoenas seeking his private papers nor entitled to a heightened standard of need." 140 S. Ct. at 2431. The Court acknowledged the concern that "state prosecutors may have political motivations" and that "harassing subpoenas could, under certain circumstances, threaten the independence or effectiveness of the Executive." *Id.* at 2428. Plaintiffs argue that the Court expressly held that the President was entitled to challenge such subpoenas in a federal forum, pointing to the Court's statement that "a President would be entitled to the protection of federal courts." *Id.* However, this quote in *Vance* simply set forth the bad faith exception to *Younger* abstention; the Court noted that "in the event of such harassment [referring to 'arbitrary fishing expeditions' and investigations initiated 'out of malice or an intent to harass'], a President would be entitled to the protection of federal courts," because "the policy against federal interference in state criminal proceedings" allows intervention in such cases. *Id.* (quoting *Huffman*, 420 U.S. at 611). The fact that a President "can raise subpoena-specific constitutional challenges, in either a state or federal forum," *id.* at 2430, does not help Plaintiffs as Mr. Trump is no longer the sitting

President. While Plaintiffs point out that Mr. Trump was President when both Defendant's

investigation and the New York proceeding were commenced, Mr. Trump has been out of office

for over one year. The concerns discussed in *Vance*, including that compliance with a particular

state criminal subpoena would "impede [the President's] constitutional duties," *id.*, are therefore

not present here.

In sum, the Court concludes that Plaintiffs could have raised the claims and requested the

relief they seek in the federal action in the New York proceeding and that there is an identity of

claims. Because all three requirements of res judicata are satisfied, even if *Younger* abstention

were inappropriate, the Court would grant Defendant's motion to dismiss Plaintiffs' complaint

for failure to state a claim under Rule 12(b)(6).

V.      **CONCLUSION**

For these reasons, it is hereby

**ORDERED** that Defendant's motion to dismiss the complaint under Federal Rule of

Civil Procedure 12(b)(1) based upon the *Younger* abstention doctrine (Dkt. No. 14) is

**GRANTED**, and the complaint is dismissed without prejudice; and it is further

**ORDERED** that Plaintiffs' motion for a preliminary injunction (Dkt. No. 6) is **DENIED**

as moot, and the Clerk of Court is respectfully requested to close this case.

**IT IS SO ORDERED.**

Dated: <u>May 27, 2022</u>
         Syracuse, New York

Brenda K. Sannes
U.S. District Judge

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

### JUDGMENT IN A CIVIL CASE

**DONALD J. TRUMP and**
**TRUMP ORGANIZATION LLC,**

Plaintiffs,

vs.                                    **CASE NUMBER: 1:21-CV-1352 (BKS/CFH)**

**LETITIA JAMES, in her official**
**capacity as Attorney General**
**for the State of New York,**

Defendant.

**Decision by Court.**  This action came to a hearing before the Court.  The issues have been heard and a decision has been rendered.

**IT IS ORDERED AND ADJUDGED** that Defendant's motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(1) based upon the *Younger* abstention doctrine (Dkt. No. 14) is GRANTED, and the complaint is dismissed without prejudice. It is further ORDERED that Plaintiffs' motion for a preliminary injunction (Dkt. No. 6) is DENIED as moot.

All of the above in accordance with the Order of the Honorable Brenda K. Sannes dated May 27, 2022.

Dated: May 27, 2022

Clerk of Court

N. Eallonardo

Deputy Clerk

# Federal Rules of Appellate Procedure
## Rule 4. Appeal as of Right

### (a) Appeal in a Civil Case.

1. (1) *Time for Filing a Notice of Appeal.*

(A) In a civil case, except as provided in Rules 4(a)(1)(B), 4(a)(4), and 4(c), the notice of appeal required by Rule 3 must be filed with the district clerk within 30 days after entry of the judgment or order appealed from.

(B) The notice of appeal may be filed by any party within 60 days after entry of the judgment or order appealed from if one of the parties is:

(i) the United States;
(ii) a United States agency;
(iii) a United States officer or employee sued in an official capacity; or
(iv) a current or former United States officer or employee sued in an individual capacity for an act or omission occurring in connection with duties performed on the United States' behalf — including all instances in which the United States represents that person when the judgment or order is entered or files the appeal for that person.

(C) An appeal from an order granting or denying an application for a writ of error *coram nobis* is an appeal in a civil case for purposes of Rule 4(a).

(2) *Filing Before Entry of Judgment.* A notice of appeal filed after the court announces a decision or order—but before the entry of the judgment or order—is treated as filed on the date of and after the entry.

(3) *Multiple Appeals.* If one party timely files a notice of appeal, any other party may file a notice of appeal within 14 days after the date when the first notice was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period ends later.

(4) *Effect of a Motion on a Notice of Appeal.*

(A) If a party timely files in the district court any of the following motions under the Federal Rules of Civil Procedure, the time to file an appeal runs for all parties from the entry of the order disposing of the last such remaining motion:

(i) for judgment under Rule 50(b);

(ii) to amend or make additional factual findings under Rule 52(b), whether or not granting the motion would alter the judgment;

(iii) for attorney's fees under Rule 54 if the district court extends the time to appeal under Rule 58;

(iv) to alter or amend the judgment under Rule 59;

(v) for a new trial under Rule 59; or

(vi) for relief under Rule 60 if the motion is filed no later than 28 days after the judgment is entered.

(B)(i) If a party files a notice of appeal after the court announces or enters a judgment—but before it disposes of any motion listed in Rule 4(a)(4)(A)—the notice becomes effective to appeal a judgment or order, in whole or in part, when the order disposing of the last such remaining motion is entered.

(ii) A party intending to challenge an order disposing of any motion listed in Rule 4(a)(4)(A), or a judgment's alteration or amendment upon such a motion, must file a notice of appeal, or an amended notice of appeal—in compliance with Rule 3(c)—within the time prescribed by this Rule measured from the entry of the order disposing of the last such remaining motion.

(5) *Motion for Extension of Time.*

(A) The district court may extend the time to file a notice of appeal if:

(i) a party so moves no later than 30 days after the time prescribed by this Rule 4(a) expires; and

(ii) regardless of whether its motion is filed before or during the 30 days after the time prescribed by this Rule 4(a) expires, that party shows excusable neglect or good cause.

(B) A motion filed before the expiration of the time prescribed in Rule 4(a)(1) or (3) may be ex parte unless the court requires otherwise. If the motion is filed after the expiration of the prescribed time, notice must be given to the other parties in accordance with local rules.

(C) No extension under this Rule 4(a)(5) may exceed 30 days after the prescribed time or 14 days after the date when the order granting the motion is entered, whichever is later.

(6) *Reopening the Time to File an Appeal.* The district court may reopen the time to file an appeal for a period of 14 days after the date when its order to reopen is entered, but only if all the following conditions are satisfied:

(A) the court finds that the moving party did not receive notice under Federal Rule of Civil Procedure 77 (d) of the entry of the judgment or order sought to be appealed within 21 days after entry;

(B) the motion is filed within 180 days after the judgment or order is entered or within 14 days after the moving party receives notice under Federal Rule of Civil Procedure 77 (d) of the entry, whichever is earlier; and

(C) the court finds that no party would be prejudiced.

(7) *Entry Defined.*

(A) A judgment or order is entered for purposes of this Rule 4(a):

(i) if Federal Rule of Civil Procedure 58 (a) does not require a separate document, when the judgment or order is entered in the civil docket under Federal Rule of Civil Procedure 79 (a); or

(ii) if Federal Rule of Civil Procedure 58 (a) requires a separate document, when the judgment or order is entered in the civil docket under Federal Rule of Civil Procedure 79(a) and when the earlier of these events occurs:

• the judgment or order is set forth on a separate document, or

• 150 days have run from entry of the judgment or order in the civil docket under Federal Rule of Civil Procedure 79 (a).

(B) A failure to set forth a judgment or order on a separate document when required by Federal Rule of Civil Procedure 58 (a) does not affect the validity of an appeal from that judgment or order.