# 22-1175

## United States Court of Appeals
## for the Second Circuit



DONALD J. TRUMP and TRUMP ORGANIZATION LLC,

*Plaintiffs-Appellants,*

v.

LETITIA JAMES in her official capacity as
Attorney General for the State of New York,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK (Syracuse)

## BRIEF FOR PLAINTIFFS-APPELLANTS

HABBA MADAIO & ASSOCIATES LLP
*Attorneys for Plaintiffs-Appellants*
1430 US Highway 206, Suite 240
Bedminister, New Jersey 07921
(908) 869-1188
*ahabba@habbalaw.com*

**<u>TABLE OF CONTENTS</u>**

<u>Page</u>

TABLE OF AUTHORITIES ................................................................. *iii*

DISCLOSURE STATEMENT ............................................................*vii*

PRELIMINARY STATEMENT ..............................................................1

JURISDICTIONAL STATEMENT ........................................................2

ISSUES PRESENTED FOR REVIEW ...................................................3

STATEMENT OF THE CASE..............................................................4

SUMMARY OF ARGUMENT ...........................................................10

ARGUMENT ....................................................................................11

I.   THE DISTRICT COURT ERRED BY ABSTAINING UNDER YOUNGER 11

    A. There Was No Ongoing State Court Proceeding to Trigger Younger Abstention ...........................................................................12

    B. There Was Sufficient Evidence Of Bad Faith In The State Court Action To Mandate An Evidentiary Hearing ..............................15

II.  THE STATE COURT ORDERS DO NOT PRECLUDE THIS ACTION ......20

    A. The State Court Orders Do Not Constitute Final Orders............................21

    B. The Issues Raised In This Action Are Outside The Scope Of The State Court Action................................................................23

III. ABSTENTION WAS INAPPROPRIATE BECAUSE A PRESIDENT OF THE UNITED STATES IS ENTITLED TO FEDERAL REVIEW OF STATE ACTIONS AS A MATTER OF LAW ............................................30

CONCLUSION ..................................................................................34

i

CERTIFICATE OF COMPLIANCE .........................................................................35

CERTIFICATE OF SERVICE ................................................................................36

# TABLE OF AUTHORITIES

**Cases**                                                                              **Page(s)**

*Ashley v. Curtis*,
    96 Misc.2d 45, 48 (Sup Ct 1978) ........................................................25

*Barrington v. New York*,
    806 F. Supp.2d at 741-42 (S.D.N.Y. 2011) .......................................25

*Begelman v. Begelman*,
    170 A.D.2d 562, 563 (2d Dep't 1991) ...............................................22

*Blue Sky, LLC v. Jerry's Self Storage, LLC*,
    145 A.D.3d 945, 946 (2d Dep't 2016) ...............................................20

*Cavanaugh v. Geballe*,
    28 F.4th 428, 430 (2d Cir. 2022) ..................................................11, 14

*Clinton v. Jones*,
    520 U.S. 681, 682 (1997) ......................................................19, 31, 32

*Colorado River Water Conserv. Dist. v. United States*,
    424 U.S. 800, 817 (1976) ...................................................................11

*Committee on Ways and Means v. U.S. Department of Treasury*,
    No. 21-5289 at *14 (D.C. Cir. Aug. 9, 2022) ...................................32

*Comput. Assocs. v. Altai*,
    126 F.3d 365, 369 (2d Cir. 1997) ......................................................24

*Conopco, Inc. v. Roll Int'l*,
    231 F.3d 82, 87 (2d Cir. 2000) ..........................................................20

*Cornelius v. NAACP*,
    473 U.S. 788, 812 (1985) ...................................................................29

*Cullen v. Fliegner*,
    18 F.3d 96, 103–04 (2d Cir. 1994) ....................................................16

*Diamond "D" Construction Corp. v. McGowan*,
    282 F.3d 191 (2d Cir. 2002)........................................................15, 16, 18

*Divito v. Glennon*,
    193 A.D.3d 1326, 1328 (4th Dep't 2021)..........................................21

*EDP Med. Computer Sys., Inc. v. U.S.*,
    480 F.3d 621, 624 (2d Cir. 2007)........................................................20

*Ex Parte Young*,
    209 U.S. 123, 155-156 (1908)..............................................................31

*Hartford Courant Co. v. Pellegrino*,
    380 F.3d 83, 90 (2d Cir. 2004)............................................................11

*Hudson-Spring Partnership, L.P. v P+M Design Consultants, Inc.*,
    112 A.D.3d 419 (1st Dep't 2013) .......................................................21

*Huffman v. Pursue, Ltd.*,
    420 U.S. 592, 604 (1975)..............................................................12, 16

*Jacobson v. Fireman's Fund Ins. Co.*,
    111 F.3d 261, 265 (2d Cir.1997)...................................................25, 26

*Josey v. Goord*,
    9 N.Y.3d 386, 389 (2007) ...................................................................20

*Juidice v. Vail*,
    430 U.S. 327 (1977).....................................................................13, 14

*Jureli, LLC v. Schaefer*,
    53 F. Supp. 3d 552, 560 (E.D.N.Y. 2014) ....................................13, 14

*Kern v. Clark*, 331 F.3d 9, 10 (2d Cir. 2003).....................................16, 18

*Lamb's Chapel v. Ctr. Moriches Union*,
    508 U.S. 384, 396–97 (1993)..............................................................28

*Mandracchia v. Russo*,
    53 Misc.2d 1018, 1019 (App. Term 1967) .........................................22

*McCullough v. Maryland*,
   17 U.S. 316, 427 (1819) ............................................................. 33

*New Beckley Mining Corp. v. Int'l Union, United Mine Workers of Am.*,
   946 F.2d 1072, 1074 (4th Cir. 1991) .................................... 23

*Nixon v. Fitzgerald*,
   457 U.S. 731, 753 (1982) ...................................................... 30, 33

*Ott v. Barash*,
   109 A.D.2d 254, 262 (2d Dep't 1985) ................................... 23

*Pace v. Hazel Towers.*,
   183 A.D.2d 588, 589 (1st Dep't 1992) ................................. 22

*Pack v. Artuz*,
   348 F.Supp.2d 63, 69 (S.D.N.Y.2004) ................................. 23

*Peck v. Baldwinsville*,
   426 F.3d 617, 633 (2d Cir. 2005) .......................................... 29

*People by James v. N. Leasing Sys., Inc.*,
   193 A.D.3d 67, 73-74 (1st Dep't 2021) ................................. 24

*People v. Trump Organization*,
   Index No. 451685/2020 (N.Y. Sup. Ct., Sept. 23, 2020) ............... 7, 8, 22, 25, 28

*Pinkus v. Pinkus*,
   230 App.Div. 791, 244 N.Y.S. 652 (2d Dep't) ................................... 22

*Sprint Commc'ns, Inc. v. Jacobs*,
   571 U.S. 69, 77 (2013) ........................................................ 11

*Tomczyk v. N.Y. Unified Court Sys.*,
   No. 19-cv-2753, 2019 WL 2437849, N. 1, (E.D.N.Y. June 10, 2019) .......... 13, 14

*Trump v. James*,
   No. 1:21-cv-1352 (N.D.N.Y. May 27, 2022), (ECF Doc. No. 15) ............. 28

*Trump v. Mazars USA, LLP*,
   --- F.4th ---, No. 21-5176, 2022 WL 2586480 (D.C. Cir. July 8, 2022) ........ 32

*v*

*Trump v. Vance*,
    140 S. Ct. 2412, 2416 (2020) ...................................................................30, 31, 33

*Trump Organization*,
    2020 WL 5992323 at *2 (NYSCEF Doc. No. 277)............................................21

*Trump Organization*,
    2020 WL 7360811 at *3 (NYSCEF Doc. No. 302); [R. 306-314].....................21

*United States v. Constr. Prods. Research*,
    73 F.3d 464, 471 (2d Cir. 1996)..........................................................................29

*Yoon v. Fordham*,
    263 F.3d 196, 200 (2d Cir. 2001).........................................................................23

*Young v U.S. ex rel. Vuitton et Fils S.A.*,
    481 US 787, 810 (1987) .......................................................................................29

*Younger v. Harris*
    (401 U.S. 37 (1971)........................................................................................*passim*

*Zenila Realty v. Masterandrea*,
    123 Misc.2d 1, 5 (N.Y. Civ. Ct. 1984).................................................................24

**Statutes/Regulations/Miscellaneous**

28 U.S. Code § 1291 ..................................................................................................2

28 U.S.C. § 1331 .......................................................................................................2

28 U.S.C. §1343 ........................................................................................................2

Article 4..........................................................................................................1, 7, 8, 24

Article 78.................................................................................................................25

CPLR § 2220........................................................................................................21, 22

CPLR § 401..............................................................................................................24

CPLR § 408..............................................................................................................24

CPLR § 409(b)..........................................................................................................24

## <u>DISCLOSURE STATEMENT</u>

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Defendant-Appellee Trump Organization LLC, by and through its undersigned counsel, hereby certifies that it has no parent corporation and that no publicly held corporation owns 10% or more of its stock.

<u>*s/Alina Habba*</u>
HABBA MADAIO &
ASSOCIATES LLP
1430 U.S. Highway 206, Suite 240
Bedminster, New Jersey 07921
-and-
112 West 34th Street, 17th & 18th Floors
New York, New York 10120
Telephone: (908) 869-1188
Facsimile: (908) 450-1881
E-mail: ahabba@habbalaw.com
*Attorneys for Plaintiffs-Appellants       Donald J. Trump and Trump Organization LLC*

## PRELIMINARY STATEMENT

This appeal arises from an underlying federal action (the "Federal Action") which sought to enjoin a politically motivated and unconstitutional investigation launched by the Attorney General of the State of New York, Letitia James ("Defendant-Appellee") into the then-sitting United States President—Plaintiff-Appellant Donald J. Trump ("Trump")—as well as his family and business, including co-Plaintiff-Appellant Trump Organization LLC (the "Trump Organization"). That investigation ultimately culminated in the commencement of a narrowly focused Article 4 special proceeding that was limited to dealing with discovery-related issues. Due to the harassing and overreaching nature of the investigation and special proceeding, Plaintiffs-Appellants sought the protection of the federal courts to curtail this improperly motivated and unconstitutional abuse of process.

The subject of this appeal is the District Court's erroneous finding that the Federal Action was subject to dismissal under the *Younger* abstention doctrine, as well as its finding, in *dicta*, that the doctrine of *res judicata* would have similarly barred Plaintiffs-Appellants' claims. Plaintiffs-Appellants now appeal, arguing that (1) the Federal Action does not fall within the scope of the *Younger* abstention doctrine and, regardless, even if it did it would fall into the bad faith exception thereto; (2) none of the extremely limited state court orders preclude the relief

requested in the Federal Action, thereby foreclosing application of the doctrine of *res judicata*; and (3) in accordance with Supreme Court precedent, then-sitting Presidents are entitled to federal review of allegedly harassing investigations initiated by state-level actors as a matter of law.

For the reasons set forth herein, the District Court's decision to dismiss the Federal Action should be overturned or, at the absolute bare minimum, the Federal Action should be remanded back to District Court to conduct an evidentiary hearing in furtherance of setting a proper record upon which to determine the applicability of the bad faith exception to the *Younger* abstention doctrine.

## JURISDICTIONAL STATEMENT

The District Court for the Northern District of New York (the "District Court") had subject matter jurisdiction over the Federal Action pursuant to 28 U.S.C. § 1331 since this case arises under the Constitution and laws of the United States, as well as 42 U.S.C. § 1983 since Plaintiffs bring this suit to vindicate their deprivation of "rights, privileges, or immunities secured by the Constitution." This Court also has jurisdiction under 28 U.S.C. §1343.

The District Court entered an order dismissing the Federal Action on May 27, 2022 (the "Order"). Plaintiffs-Appellants filed a notice of appeal on May 31, 2022. This Court has appellate jurisdiction pursuant to 28 U.S. Code § 1291 because this appeal is from a final order dismissing the Federal Action.

2

## ISSUES PRESENTED FOR REVIEW

1. Was there an ongoing state court proceeding to trigger abstention under *Younger*?

2. Did Defendant-Appellee exhibit sufficient bad faith to justify an exception to *Younger,* or at a minimum, an evidentiary hearing to determine bad faith?

3. Was the Federal Action barred by res judicata?

4. Is a former or sitting President of the United States entitled to federal review of a state-level actor's subpoena enforcement action as a matter of law?

## **STATEMENT OF THE CASE**

This appeal arises from Plaintiffs-Appellants' challenge of Defendant-Appellee's improper and unconstitutional harassment of Plaintiffs-Appellants, constituting a present and ongoing violation of their First, Fourth, and Fourteenth Amendment rights in addition to an actionable abuse of process.

From the outset, Defendant-Appellee made clear that her 'investigations' are purely politically motivated, not by the pursuit of legitimate law enforcement goals but rather by her own personal and political agenda. Indeed, Defendant-Appellee paraded her ill-will toward the Plaintiffs-Appellants long before she became Attorney General for the State of New York. Shortly after Trump's inauguration, she joined numerous public protests and led "die in" protests against Trump. [R. at A12]. She frequently made inflammatory statements, such as "we are all being killed by this administration," and accusing Trump of exhibiting a "blatant disregard for human lives." [R. at A12]. She continued to publicly voice her disdain for Trump during his first term in an effort to make him and his supporters "uncomfortable and not able to rest well."

In May of 2018, Defendant Appellee declared her candidacy for Attorney General, and made "taking on Trump" the focal point of her campaign. [R. at A13].

The list below is a demonstration of the type of incendiary and malicious attacks she levied against Trump during her campaign:

- Defendant-Appellee's campaign website accused Trump of engaging in "public corruption." [R. at A13].

- She frequently referred to Trump as an "illegitimate president" and vowed to "fight against Donald Trump and his harmful administration." [R. at A15].

- She pledged to use the law as a "sword" against Trump and proclaimed that she "look[s] forward to going into the office of Attorney General every day, suing him, defending your rights, and then going home!" [R. at A15].

- Defendant-Appellee promised to "use every area of the law to investigate Trump and his business transactions and "anyone in [Trump's] orbit." [R. at A19].

- She tweeted that "[t]he president of the United States has to worry about three things: [Robert] Mueller, [Michael] Cohen, and Tish James. We're all closing in on him." [R. at A15].

- Defendant-Appellee stated that she was "getting ready to ask [Trump] some questions—under oath," that she had her "eyes on Trump Tower," that she would "make sure that justice was served" and that she was "just getting started" in "taking [him] on." [R. at A16].

- She threatened that Trump "should be scared" about her run for AG and that she would "join with law enforcement . . . *in removing this President from office*." [R. at A17].

Defendant-Appellee has repeatedly and unrelentingly harassed Plaintiffs-Appellants with her baseless fishing expedition—commenced under the guise of a legitimate investigation—which she has turned into a public spectacle intended to tarnish Plaintiffs-Appellants' reputation and garner attention for herself. In doing so,

Defendant-Appellee has blatantly disregarded Plaintiffs-Appellants' constitutional rights as her conduct is guided by her desire to harass, intimidate, embarrass and retaliate against Plaintiffs-Appellants, all in fulfillment of a personal vendetta. Defendant-Appellee has deprived, and will continue to deprive, Plaintiffs-Appellants of their rights under the law.

Shortly after being elected as Attorney General, on March 11, 2019, Defendant-Appellee fulfilled her campaign promise and deployed the power and vast array of resources of the Office of the Attorney General (the "OAG") to formally open an investigation of the Trump Organization and has issued multiple subpoenas as part of her rigorous investigation (collectively, the "Subpoenas"). [R. at A21]. Her targeted attacks against Trump have continued throughout her tenure as Attorney General, as she has continually sought to harass, embarrass and retaliate against Plaintiffs-Appellants. Her improper motive in pursuing Plaintiffs-Appellants is evidenced by the many statements Defendant-Appellee has made about since entering office, which put her biased motives on full display, including, but not limited to:

- In her victory speech, she vowed to "shin[e] a bright light into every dark corner of [Trump's] real estate holdings. [R. at A18].

- When asked if she planned to "sue [Plaintiffs-Appellants]," she laughingly responded "[o]h, we're definitely going to sue him. *We're going to be a real pain in the ass. He's going to know my name personally*." [R. at A19].
- Defendant-Appellee levied unfounded allegation that Plaintiffs-Appellants were engaged in criminal activity: "We need to focus on Donald Trump and

his abuses . . . we need to follow his money . . . we need to find out where he's laundered money . . . all of those transactions have happened here in New York City." [R. at A24].

- She claimed that Trump "has spent his career hiding behind lawsuits" and promised to "vigorously fight" him. [R. at A24].

- She boasted that she had "sued the Trump Administration 76 times, but who is counting?" [R. at A27].

On or about August 24, 2020, Defendant-Appellee instituted an Article 4 Special Proceeding against the Trump Organization and six other before the Supreme Court of New York for the County of New York (the "State Court"), entitled *People of the State of New York, by Letitia James, Attorney General of the State of New York v. The Trump Organization, Inc.; et al.* and bearing Index Number 451685/2020 (the "State Court Action").

Article 4 Special Proceedings have an extremely narrow scope, and in this case the scope of the State Court Action was limited to reviewing the viability of, and enforcing as applicable, the individual Subpoenas. Recognizing the procedural restraints that are inherent in an Article 4 Proceeding, the Trump Organization submitted a letter the State Court on August 26, 2020 asking the Court to reassign the matter to the Commercial Division. *See People v. Trump Organization*, Index No. 451685/2020 (NYSCEF Doc. No. 184). The State Court rejected the Trump Organization's request, noting that "the gravamen of this special proceeding is fact finding in nature – to gather evidence and compel discovery – i*t is not about proving*

*the underlying alleged violations or schemes or fraud that respondents are alleged to have engaged in.*" *See People v. Trump Organization*, Index No. 451685/2020 (NYSCEF Doc. No. 190) (emphasis added).

Shortly thereafter, on September 4, 2020, the Trump Organization submitted another letter to the State Court asking to bifurcate certain issues and pointed to various constitutional concerns including the lack of "fundamental due process." *See People v. Trump Organization*, Index No. 451685/2020 (NYSCEF Doc. No. 200). The OAG filed a letter in response, arguing that the Trump Organization had "no right to delay or refuse subpoena compliance." *Id*. The State Court rejected the Trump Organization's requested for bifurcation and, as a result, the Trump Organization was relegated to proceeding in the Article 4 proceeding and was obligated to file its Answer to the Verified Petition mere days later.

Notwithstanding, after numerous disagreements between the parties as to the breadth of the Subpoenas and the State Court Action in general, the State Court entered four relevant orders at the following times: (1) September 2020 (the "September 2020 Order"); October 2020 (the "October 2020 Order"); December 2020 (the "December 2020 Order", collectively, the "2020 Orders"); and February 17, 2022 (the "February 2022 Order"), and (2) a Stipulation and Order dated September 2, 2021 which set forth the parties' agreement on various discovery-related issues (the "September 2021 Stipulation" and collectively with the 2020

Orders and the February 2022 Order, the "State Court Orders"). [R. at A54-A58, A83-A90].

As a result of Defendant-Appellee's relentless pursuit of Defendant-Appellee, Plaintiffs-Appellants commenced the Federal Action with the filing of a complaint in the District Court on December 20, 2021, asserting violations of the First, Fourth, and Fourteenth Amendment—in addition to an abuse of process claim—and challenging the constitutionality of Defendant-Appellee's improper investigation in its entirety.

On April 26, 2022, the State Court issued an order finding Trump in contempt for failure to comply with a subpoena request (the "Contempt Order"). [R. at SPA5-SPA7]. Shortly thereafter, on May 11, 2022, the State Court issued an Order declaring that the contempt was conditionally purged, pending Trump's satisfaction of four separate directives issued by the State Court. [R. at SPA11-SPA12].

On May 27, 2022, the District Court entered the Order granting Defendant-Appellee's motion and dismissing the Federal Action in its entirety based on its finding that the *Younger* abstention doctrine applied; it also noted, in dicta, that *res judicata* would have been applied. [R. at SPA21-SPA63].

On June 29, 2022, the State Court issued an order fully lifting the finding of contempt. [R. at SPA 20].

Plaintiffs-Appellants timely filed a notice of appeal on May 31, 2022 and respectfully request the Order be reversed or, in the alternative, vacated and remanded to hold an evidentiary hearing on the question of Defendant-Appellee's bad faith.

## SUMMARY OF ARGUMENT

This Court should reverse the District Court's dismissal of the Federal Action or, in the alternative, vacate and remand to hold an evidentiary hearing for three reasons: (1) abstention was unwarranted under *Younger*; (2) *res judicata* does not apply; and (3) a President of the United States is entitled to federal review of state actions as a matter of law. More particularly, abstention is not warranted under *Younger* because there is—and was—no qualifying ongoing state proceeding, and also because Defendant-Appellee acted in bad faith. Similarly, *res judicata* does not apply because the State Court Orders do not constitute final orders and the issues raised in the Federal Action are outside the scope of the State Court Action. Finally, as stated by our own Supreme Court, any President of the United States is an "easily identifiable target" for harassment by state officials and therefore the President is entitled to protection from such potential harassment which can only be obtained by ensuring the President may always utilize the inherent protections provided by the bedrock principle of federalism, *i.e.*, *de novo* review of a state actor's actions by a tenured federal judge.

**ARGUMENT**

## I. THE DISTRICT COURT ERRED BY ABSTAINING UNDER *YOUNGER*

A decision to abstain under *Younger* is reviewed *de novo* "because it implicates the court's subject matter jurisdiction." *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 90 (2d Cir. 2004).

"Federal courts have a 'virtually unflagging obligation . . . to exercise the jurisdiction given [to] them.'" *Cavanaugh v. Geballe*, 28 F.4th 428, 430 (2d Cir. 2022) (*quoting Colorado River Water Conserv. Dist. v. United States*, 424 U.S. 800, 817 (1976) and *citing Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013)). While *Younger v. Harris* sets forth limited circumstances in which federal courts should abstain from exercising their jurisdiction (401 U.S. 37 (1971)), such abstention is nonetheless "the exception, not the rule." *Cavanaugh*, 28 F.4th at 432 (internal quotations omitted).

As recognized by the District Court, *Younger* mandates abstention only in "three 'exceptional circumstances' involving: (1) ongoing state criminal prosecutions, (2) certain 'civil enforcement proceedings,' and (3) 'pending civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions.'" Order at p. 17 (*quoting Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 78 (2013)).

### A. There Was No Ongoing State Court Proceeding to Trigger Younger Abstention

Abstention is not warranted under *Younger* because the State Court Action is not—and, at the time of commencement of the Federal Action, was not—a qualifying state proceeding.

As the District Court properly noted, subpoena enforcement actions are not state proceedings for the purpose of *Younger* abstention and so the State Court Action was not such a proceeding when it was commenced. Order at p. 18 (citing *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604 (1975)).

The District Court, however, held that the State Court Action became a proceeding "involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions" upon—*and solely due to*—issuance of the Contempt Order. Order at p. 20.

First, the Contempt Order—which was conditionally purged at the time of the District Court's ruling—has been officially purged and is now lifted. As the District Court noted, its dismissal of the Federal Action was premised on its ability to rely on subsequent developments and changes in the status of the State Court Action. *See* Order at p. 21-22. By that same logic, abstention is no longer warranted since the Contempt Order is no longer in effect. [R. at SPA20]. Thus, *Younger* abstention is inappropriate even under the District Court's own reasoning.

Second, importantly, the Contempt Order does not justify the State Action's qualification as a proceeding which is uniquely in furtherance of the state courts' ability to perform their judicial functions because it was issued several months *after* the Federal Action was commenced. Notably, each of the three cases relied upon by the District Court in the Order involved a plaintiff who specifically sought to challenge a state court's contempt order. *See* Order at p. 22; *see also Juidice v. Vail*, 430 U.S. 327 (1977) (dismissing an action that directly "sought to have the statutory provisions authorizing contempts enjoined"); *Tomczyk v. N.Y. Unified Court Sys.*, No. 19-cv-2753, 2019 WL 2437849, N. 1, (E.D.N.Y. June 10, 2019) (abstaining where federal jurisdiction would affect state divorce and custody proceedings, because the management of such issues is "a subject in which 'the states have an especially strong interest,'" and noting in a footnote that "insofar as Plaintiff seeks to challenge the judgment of contempt" that would also fail); *Jureli, LLC v. Schaefer*, 53 F. Supp. 3d 552, 560 (E.D.N.Y. 2014) (abstaining under *Younger* because the plaintiff was challenging the state court's appointment of a receiver in a suit particularly within the state's interest in addition to the fact that there was a pending appeal of a state court contempt order).

Here, on the other hand, Plaintiff did not commence the Federal Action for the purpose of challenging the Contempt Order but, rather, to seek relief from Defendant-Appellee's unconstitutional investigation. The Federal Action did not

challenge how, when, or why the State Court issued the Contempt Order, nor do Plaintiffs-Appellants ask the District Court to rule on the propriety of the Contempt Order. Instead, Plaintiffs-Appellants seeks to curtail Defendant-Appellee's abuse of her authority to engage in a bad-faith, politically motivated investigation in general, rather than any particular facet of it.

Indeed, the District Court even acknowledged that Plaintiffs-Appellants have not "challenged the New York court's authority to issue lawful orders and enforce those orders by holding parties in contempt." Order at p. 21. In concluding that the mere existence of the Contempt Order—which is entirely unrelated to the subject matter of the Federal Action —rendered the State Action as a proceeding "uniquely in furtherance of the state courts' ability to perform their judicial functions," the District Court unreasonably extending the logic and holdings of *Juidice*, *Tomczyk*, and *Jureli*. Unlike those cases, the Federal Action is not a collateral attack on a state court's authority or ability to manage its own concerns, but rather a proper challenge to the constitutionality of a state-level investigation. As such, it does not fall within the "narrow class of state civil proceedings" that are uniquely in furtherance of the state courts' ability to perform their judicial functions. *Cavanaugh*, 28 F.4th at 430.

At bottom, the State Court Action was not a qualifying state proceeding when it was commenced—*before* the Contempt Order was issued—and it is no longer such a proceeding because the Contempt Order has been fully purged. The existence of

the State Court Action, therefore, does not justify a *Younger* abstention because there is no longer any qualifying state court proceeding; the Federal Action does not challenge the contempt procedures or authority of the State Court and, even if it did at some point, it no longer does so the issue is moot.

### B. There was Sufficient Evidence of Bad Faith in the State Court Action to Mandate an Evidentiary Hearing

Even to the extent the Federal Action would have impacted a state court proceeding, *Younger* abstention was inappropriate because the State Court Action falls squarely into the bad faith exception of the *Younger* analysis. Regardless of the existence of a qualifying state proceeding, federal courts properly retain jurisdiction "upon a showing of 'bad faith, harassment or any other unusual circumstance that would call for equitable relief.'" *Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002) (*quoting Younger*, 401 U.S. at 54).

The *Younger* doctrine is simply one example of federal courts employing the "equitable principles to justify federal intervention," and a federal plaintiff successfully establishes a bad faith exception upon showing "bad faith, harassment, or any other unusual circumstance that would call for equitable relief" in the state proceeding. *Younger*, 401 U.S. at 54. A federal plaintiff may meet this requirement by showing that "the party bringing the state action [has] no reasonable expectation of obtaining a favorable outcome" *or* "where a prosecution or proceeding has been brought to retaliate for or to deter constitutionally protected conduct, *or* where a

prosecution or proceeding is otherwise brought in bad faith or for the purpose to harass." *Cullen v. Fliegner*, 18 F.3d 96, 103–04 (2d Cir. 1994) (emphasis added). *See also Huffman*, 420 U.S. at 611 (noting that a federal court may intervene where the state proceeding "is motivated by a desire to harass or is conducted in bad faith.").

The "subjective motivation of the state authority in bringing the proceeding is critical to, if not determinative of, this inquiry." *Diamond "D"*, 282 F.3d at 199. Furthermore, a court errs where it fails to dismiss on *Younger* grounds "without holding an evidentiary hearing to resolve factual disputes related to [the plaintiff's] claim that he was being prosecuted in bad faith." *Kern v. Clark*, 331 F.3d 9, 10 (2d Cir. 2003).

Here, the Complaint in the Federal Action is replete with statements made by Defendant-Appellee which demonstrate that her investigation was "brought to retaliate for or to deter constitutionally protected conduct or . . . is otherwise brought in bad faith or for the purpose to harass." *Cullen v. Fliegner*, 18 F.3d 96 (1994). Among other things, Defendant-Appellee has frequently referred to Trump as an "illegitimate president" and vowing to "fight against [him] and his harmful administration," [R. at A15]; pledged to use the law as a "sword" against him and proclaimed that "no one is above the law, including this illegitimate president…and so I look forward to going into the office of Attorney General every day . . .suing

him . . . and then going home!" [R. at A15]; promised to "use every area of the law to investigate [Trump] and his business transactions" and "anyone in [Trump's] orbit," [R. at A19]; and stated "we're definitely going to sue him. We're going to be a real pain in the ass. He's going to know my name personally," [R. at A19]. Defendant-Appellee's animus towards Plaintiffs-Appellants is perhaps best encapsulated within the following statement, which she made in a campaign video in connection with her bid to be elected as Attorney General:

> I'm running for attorney general, because I will never be afraid to challenge this illegitimate president when our fundamental rights are at stake….
>
> I believe that this president is incompetent. I believe that this president is ill equipped to serve in the highest office of this Land. And I believe that he is an embarrassment to all that we stand for. He should be charged with obstructing justice. I believe that the President of these United States can be indicted for criminal offenses and we would join with law enforcement and other attorneys general across this nation in removing this President from office.
>
> In addition to that, the office of attorney general will continue to follow the money because we believe he's engaged in a pattern and practice of money laundering. Laundering the money from foreign governments here in New York State, and particularly related to his real estate holdings. It's important that everyone understand, the days of Donald Trump are coming to an end.

[R. at A17].

In finding that the Federal Action does not fall within the bad faith exception, the District Court specifically pointed to its finding that "the subpoena enforcement proceeding has a legitimate factual predicate, concerns an investigation that Justice

Engoron has found to be lawful, and has resulted in several order in Defendant-Appellee's favor, and the fact that there is no evidence before this Court that it was conducted in a manner that is harassing or in bad faith[.]" Order at 29. But this analysis—which is focused solely on the manner in which the investigation has been conducted—ignores that "the *subjective bad faith* of the prosecuting authority is the gravamen of the exception to *Younger* abstention." *Kern*, 331 F.3d at 12. This precise issue was addressed in *Diamond "D" Construction Corp. v. McGowan*, 282 F.3d 191 (2d Cir. 2002), wherein the Second Circuit declined to apply the bad faith exception upon its finding that the plaintiff had failed to adequately allege that the underlying administrative proceeding was "driven by a retaliatory motive or some other nefarious purpose." *Id.* at 26. In so finding, the Second Circuit specifically pointed to the fact that the complaint contained "no credible allegation that the [defendant] singled [plaintiff] out by reason of bias"; rather, the allegations were only direct at the "*manner in which the administrative proceedings were conducted*," which, the court noted, did not "speak to the *subjective intent* of the [defendant] in commencing the. . . proceedings." *Id.* (emphasis added). On this basis alone, the court concluded that the plaintiff had failed to establish that the proceedings were "brought with an intent to harass or any other illegitimate motive." *Id.*

Here, the District Court relied only upon the factors which failed under *Diamond "D" Const. Corp.*—the manner in which the investigation has been

conducted—while failing to lend any credence to the vast number of statements made by Defendant-Appellee which overtly demonstrate her subjective animus for Plaintiffs-Appellants. In fact, the District Court even acknowledged that "Defendant[-Appellee's] public statements make clear that she disagrees vehemently with Mr. Trump's political views" and admitted that "Defendant[-Appellee]'s public statements *reflect personal and/or political animus toward Plaintiffs* . . .." Order at p. 28.

Given the District Court's finding of personal animus between the parties— and given that the "subjective motivation of the state authority in bringing the proceeding is critical to, if not determinative of, [a bad faith] inquiry"—there is no support for the District Court's holding that "Plaintiffs have failed to identify a disputed issue of fact here which would require an evidentiary hearing." *See* Order at 28. This is particularly true given the heightened concerns United States Presidents have of being targeted for politically motivated state action. *See, e.g.*, *Clinton v. Jones*, 520 U.S. 681, 682 (1997) (referring to United States presidents' ability to defend themselves in a federal forum as an important bulwark against subjecting such national, political targets to the whims of "local prejudice.").

Based on the foregoing, the District Court erred in declining to apply the bad faith exception to the *Younger* abstention doctrine to the Federal Action or, at a minimum, to hold an evidentiary hearing concerning this issue.

## II.    THE STATE COURT ORDERS DO NOT PRECLUDE THE FEDERAL ACTION

District court decisions regarding *res judicata* are reviewed *de novo*. *EDP Med. Computer Sys., Inc. v. U.S.*, 480 F.3d 621, 624 (2d Cir. 2007). *Res judicata* bars "later litigation if an earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action." *Ibid.* (internal quotation marks and citations omitted). "The party seeking to invoke *res judicata* has the burden of proving that the doctrine is applicable." *Ibid.* (internal quotation marks and citations omitted).

Under New York's doctrine of res judicata,[1] a "disposition on the merits bars litigation between the same parties, or those in privity with them, of a cause of action arising out of the same transaction or series of transactions as a cause of action that either was raised or could have been raised in the prior proceeding." *Blue Sky, LLC v. Jerry's Self Storage, LLC*, 145 A.D.3d 945, 946 (2d Dep't 2016) (internal citations omitted); *see also Josey v. Goord*, 9 N.Y.3d 386, 389 (2007) ("The doctrine of res judicata precludes a party from litigating a claim where a judgment on the merits exists from a prior action between the same parties involving the same subject matter.") (internal citation and quotation marks omitted)). Thus, the party invoking res judicata must show "(1) a final judgment on the merits, (2) identity or privity of

---

[1] Federal courts apply the preclusion law of the rendering state court. *See Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 87 (2d Cir. 2000).

parties, and (3) identity of claims in the two actions." *Divito v. Glennon*, 193 A.D.3d 1326, 1328 (4th Dep't 2021). As demonstrated below, Defendant-Appellee fails to satisfy the necessary elements, and as such, the doctrine of res judicata does not apply.

### A. The State Court Orders Do Not Constitute Final Orders

Not a single one of the four relevant State Court Orders constitutes a final order, because the State Court explicitly designated three of them as "non-final disposition" and the sole remaining order was never entered with notice of entry pursuant to CPLR § 2220.

The October 2020 Order, the December 2020 Order, and the February 2022 Orders are each explicitly designated as a "non-final disposition." *See Trump Organization*, 2020 WL 5992323 at *2 (NYSCEF Doc. No. 277); *Trump Organization*, 2020 WL 7360811 at *3 (NYSCEF Doc. No. 302); [R. 306-314]. As such, they cannot be considered a "final judgment" for the purposes of *res judicata* or claim preclusion. *See Hudson-Spring Partnership, L.P. v P+M Design Consultants, Inc.,* 112 A.D.3d 419 (1st Dep't 2013) (finding that an order marked as "non-final disposition" cannot constitute a "final judgment" for the purposes of *res judicata*.).

The remaining order, the September 2020 Order, also cannot be construed as a "final judgment" because it was never entered with notice of entry pursuant to

CPLR § 2220. *See People v. Trump Organization*, Index No. 451685/2020 (N.Y. Sup. Ct., Sept. 23, 2020); *see also Mandracchia v. Russo*, 53 Misc.2d 1018, 1019 (App. Term 1967) ("A Decision or verdict upon which no formal judgment has been entered has no conclusive character and is ineffective as a bar to subsequent proceedings."); *Begelman v. Begelman*, 170 A.D.2d 562, 563 (2d Dep't 1991) ("[N]o order or judgment had been entered at the time that this appeal was perfected. The general rule is that "[a] decision or verdict upon which no formal judgment has been entered has no conclusive character and is ineffective as a bar to subsequent proceedings."); *see also Pinkus v. Pinkus*, 230 App.Div. 791, 244 N.Y.S. 652 (2d Dep't).

Finally, the September 2021 Stipulation is not an order but, rather, a so-ordered stipulation which merely sets forth the parties' briefing schedule for motions that were to be subsequently filed. In other words, it does not adjudicate any substantive rights but only sets filing deadlines. *See Pace v. Hazel Towers*., 183 A.D.2d 588, 589 (1st Dep't 1992) (a stipulation should not be accorded "any greater scope" than what the parties intended.).

Therefore, without the need for further analysis, it is facially apparent that the State Court Orders do not constitute 'final' adjudications for the purposes of *res judicata*.

**B. The Issues Raised In The Federal Action Are Outside The Scope Of The State Court Action**

Assuming *arguendo* that the State Court Orders can be considered dispositive adjudications on the merits, they still do not have preclusive effect since they did not address the issues raised in this case. Such a distinction in the scope of relief militates against a finding of parallelism. *New Beckley Mining Corp. v. Int'l Union, United Mine Workers of Am.*, 946 F.2d 1072, 1074 (4th Cir. 1991) ("A difference in remedies is a factor counseling denial of a motion to abstain. . . . The difference in remedies becomes more pronounced when one suit requires a jury and the other does not[.]")

A final judgment is a "final judicial determination which necessarily decided the very cause of action or issue that a party now seeks to litigate in a subsequent action or proceeding." *Ott v. Barash*, 109 A.D.2d 254, 262 (2d Dep't 1985). "New York employs a 'transactional approach' to *res judicata* whereby 'once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy.'" *Yoon v. Fordham,* 263 F.3d 196, 200 (2d Cir. 2001) (quotation omitted). However, "a later claim arising from the same nucleus of facts as a previously adjudicated claim is not barred if the initial forum lacked the power to grant the full measure of relief sought in the later litigation." *Pack v. Artuz,* 348 F.Supp.2d 63, 69 (S.D.N.Y.2004). Claims are "transactionally related" if the "transaction or connected series of transactions at issue in both suits is the same, that

23

is where the same evidence is needed to support both claims, and where the facts essential to the second were present in the first." *Comput. Assocs. v. Altai*, 126 F.3d 365, 369 (2d Cir. 1997).

The State Court Action is an Article 4 special proceeding. In such a proceeding, a respondent has "profoundly restrict[ed] procedural remedies" available to him. *Zenila Realty v. Masterandrea*, 123 Misc.2d 1, 5 (N.Y. Civ. Ct. 1984). For instance, a respondent is not entitled to engage in *any* discovery without leave of court. CPLR § 408; indeed, discovery is "disfavored in a special proceeding and is permitted only on leave of court upon a showing of 'ample need' . . . or 'unusual circumstances.'" *People by James v. N. Leasing Sys., Inc.*, 193 A.D.3d 67, 73-74 (1st Dep't 2021) (citations omitted). Leave of court is similarly required for joinder, interpleader, third-party practice and intervention. *See* CPLR § 401; *see also Masterandrea*, 123 Misc.2d at 5. Even the standard of review is modified – Article 4 proceedings are subject to the same standards that apply to a motion for summary judgment. *See* CPLR § 409(b).

Given the severely restricted nature of the State Court Action, the State Court did not—and cannot—rule on the issues before the District Court. The State Court Action is a special proceeding with a very narrow purpose and scope, focusing only on the viability of each subpoena as opposed to the constitutionality of the investigation as a whole. The Federal Action, in contrast, looks beyond any

particular subpoena and seeks declaratory and injunctive relief affirming that Defendant-Appellee's investigation is unconstitutional in its entirety. In other words, Plaintiffs are seeking to stop the investigation *as a whole*, not just quash certain subpoenas.

Indeed, the State Court explicitly noted the issues raised in the Federal Action are beyond its scope: "***the gravamen of this special proceeding is fact finding in nature – to gather evidence and compel discovery – it is not about proving the underlying alleged violations or schemes or fraud that respondents are alleged to have engaged in***." *See People v. Trump Organization*, Index No. 451685/2020 (NYSCEF Doc. No. 190) (emphasis added); *see also Ashley v. Curtis*, 96 Misc.2d 45, 48 (Sup Ct 1978) ("[I]n the instant case, treatment of petitioner's constitutional claim under 42 U.S.C. § 1983 as a plenary claim for injunctive relief rather than as a claim for relief under Article 78 is especially appropriate, since Article 78 proceedings are neither designed for nor suited to the disposition of constitutional claims for injunctive relief pursuant to 42 U.S.C. § 1983."); *Barrington v. New York*, 806 F. Supp.2d at 741-42 (S.D.N.Y. 2011) ("[A] plaintiff who makes use of a limited state proceeding does not sacrifice claims to broader relief available under Section 1983 in federal court . . . nothing in res judicata doctrine requires a plaintiff to choose between the limited right the State has given him and the more expansive right Congress has given him to vindicate violations of the Constitution[.]"); *Jacobson v. Fireman's Fund Ins. Co.,*

111 F.3d 261, 265 (2d Cir.1997) (noting that *res judicata* does not operate to bar a plaintiff's subsequent claim if "formal jurisdictional or statutory barriers prevented him from presenting to a court in one action the entire claim including any theories of recovery or demands for relief that might have been available to him under law.").

Review of the contents of the relevant orders entered in the State Court Action further confirms that none of them touched upon the issues or claims put forth in the Federal Action. The September 2021 Stipulation is merely a briefing schedule which set forth filing dates for a forthcoming motion and contains no adjudication on any legal issues; simply put, it has no relevance to the issue of *res judicata* at all. Nor do the 2020 Orders, which deal strictly with narrow discovery issues, mostly pertaining to the application of attorney-client privilege. The constitutionality and/or lawfulness of the OAG's investigation was never raised, addressed or discussed in any of those orders. Indeed, the 2020 Orders do not contain even a cursory reference to those issues.

The February 2022 Order also did not address the subject matter of the Federal Action. In the February 2022 Order, the State Court ruled upon a motion to quash the subpoenas that had been filed by various respondents, as well as a motion to compel discovery that had been filed by Defendant-Appellee. Trump was a party to those motions; the Trump Organization was not. While the respondents did raise quasi-constitutional concerns, they were offered as arguments in support of a motion

to quash—not as standalone claims seeking affirmative relief— and, even then, were rooted exclusively in the Fifth Amendment and the Equal Protection Clause, respectively, neither of which are implicated in this case.

Moreover, the scope of the State Court's analysis was very narrow, focusing only on the viability of each subpoena as opposed to the constitutionality of the investigation as a whole. Tellingly, at oral argument—which Defendant-Appellee referred to as a "dry hearing about subpoena enforcement"—the State Court refused to entertain the argument that Defendant-Appellee's misconduct had violated Trump's constitutional rights. [R. at A380]. Indeed, when confronted with this issue, the State Court explicitly withheld judgment:

> MS. HABBA: . . . she's put her words out there so much and taken every opportunity to voice her vendetta against Donald Trump and his family to take him down. My client is entitled to the protections afforded to him by the Constitution against prosecutorial misconduct.

> THE COURT: Let me just say, I'm not the disciplinary committee, so some of the ethical questions are not in front of me. I tend to say they're not part of this case that I have in front of me.

[R. at A378].

Defendant-Appellee's representatives, for their part, noted that respondents hadn't "challenged the fitness of this investigation" and, when pressed on the issue of constitutionality, stated "[t]his isn't a Fourth Amendment claim." [R. at A379]. This position is consistent with Defendant-Appellee's recent acknowledgment that "**[a]t no point during the numerous contested rounds of briefing, evidentiary**

27

***submissions, and hearings here did anyone contend that OAG's investigation was unlawful, pretextual, or lacked a rational basis***." *See People v. Trump Organization*, Index No. 451685/2020 at *12 (NYSCEF Doc. No. 644) (emphasis added); *see also Trump v. James*, No. 1:21-cv-1352 (N.D.N.Y. May 27, 2022), (ECF Doc. No. 15) ("[A]t no point during the contested hearings before Justice Engoron did the Trump Organization or Eric Trump contend that OAG's Investigation was *unlawful, pretextual, an abuse of authority, or in violation of their constitutional rights*") (emphasis added). These issues—which Defendant-Appellee openly admits were not addressed in the State Action—are squarely at the heart of the Federal Action.

Moreover, while the State Court did broadly state that it considered Defendant-Appellee's investigation to be "lawful," this finding was based solely upon its review of the evidence obtained by Defendant-Appellee—a consideration that is wholly irrelevant to the Federal Action. Critically, in this context, the State Court's finding of lawfulness has no bearing on the validity of the constitutional claims asserted by Plaintiffs in the Federal Action. Indeed, should this Court find that the Defendant-Appellee's investigation was initiated and/or carried on for an improper purpose, the investigation in its entirety is *per se* unconstitutional. In other words, whether the investigation has an otherwise legitimate basis "is beside the point." *Lamb's Chapel v. Ctr. Moriches Union*, 508 U.S. 384, 396–97 (1993). This

is true whether the investigation infringed upon Plaintiffs' rights under the First Amendment, *see Peck v. Baldwinsville*, 426 F.3d 617, 633 (2d Cir. 2005) (holding that viewpoint discrimination is "prima facie unconstitutional" even if the government action is "reasonably related to legitimate . . . interests."); *Cornelius* v. *NAACP*, 473 U.S. 788, 812 (1985) (noting that even "valid[] and reasonable[] . . . justifications . . . cannot save" government action that is "based on the desire to suppress a particular point of view"), the Fourth Amendment, *see United States v. Constr. Prods. Research*, 73 F.3d 464, 471 (2d Cir. 1996) (stating that, in the context of the Fourth Amendment, a civil investigation must serve "a legitimate purpose," and the service of subpoenas must be "relevant to the purpose."), or the Fourteenth Amendment, *see Young v U.S. ex rel. Vuitton et Fils S.A.*, 481 US 787, 810 (1987) (noting that the presence of an interested prosecutor, or one who is "influenced by improper motives," is a "fundamental and pervasive error" warranting even reversal of a conviction). Therefore, the State Court's finding that the Defendant-Appellee's investigation has purportedly uncovered material evidence *after* its commencement is wholly unrelated to this Court's assessment of whether the investigation was commenced and carried out for an improper purpose.

In short, it is overwhelmingly apparent that the State Court has not meaningfully addressed any of the constitutional issues put forth in this case, much less make a final and binding adjudication as to the viability of these claims.

Therefore, the District Court erred in finding, in dicta, that Plaintiffs-Appellants' claims would have been barred by the doctrine of res judicata.

## III. ABSTENTION WAS INAPPROPRIATE BECAUSE UNITED STATES PRESIDENTS ARE ENTITLED TO FEDERAL REVIEW OF STATE ACTIONS AS A MATTER OF LAW

In this case, abstention is particularly inappropriate because Presidents are entitled to federal court review of actions by state-level actors as a matter of law. *See generally Trump v. Vance*, 140 S. Ct. 2412, 2416 (2020).

While the Supreme Court has refused to afford sitting Presidents the ability to stay all civil actions against them as a matter of course, it does recognize that Presidents may have legitimate concerns about harassment due to the bias of state officials. *See Nixon v. Fitzgerald*, 457 U.S. 731, 753 (1982) ("the President would be an easily identifiable target" given "the sheer prominence of the President's office," "the visibility of his office and the effect of his actions on countless people."). Indeed, in *Trump v. Vance*—which involved a highly analogous scenario in which a state-level prosecutor was "investigating [a president] and his businesses" through the issuance of subpoenas—the Supreme Court cautioned that "state prosecutors may have political motivations" and could utilize "harassing subpoenas" as a political weapon against a President. *Vance*, 140 S.Ct. at 2428. Of particular concern to the Supreme Court was the threat of state officials "engaging in arbitrary fishing expeditions and initiating investigations out of malice or an intent to

harass"—an allegation which is repeatedly mirrored throughout the Complaint. *Id.* at 2428; *compare to* [R. at A30].

Given these heightened concerns, the Supreme Court stated that a President is "***not relegated only to the challenges available to private citizens***" but has the additional option of "rais[ing] subpoena-specific constitutional challenges, in a . . . *federal forum*." *Vance*, 140 S.Ct. at 2430 (emphasis added). In other words, he is "entitled to the protection of the federal courts," *id.* at 2428, since "federal law allows a President to challenge any such allegedly unconstitutional influence in a federal forum," *id.* at 2416; *see also Clinton*, 520 U.S. at 691 (recognizing that "[i]f this case were being heard in a state forum . . . petitioner would presumably rely on federalism and comity concerns, as well as the interest in protecting federal officials from possible local prejudice that underlies the authority to remove certain cases brought against federal officers from a state to a federal court . . .") (internal citations omitted). This is because federal courts, in particular, "have the tools to deter and dismiss" such suits; namely, the proper remedy is for a federal court to "enjoin state officials to conform their conduct to federal law." *Id.* at 2429 (citing 42 U.S.C. § 1983; *Ex Parte Young*, 209 U.S. 123, 155-156 (1908)). *see also Clinton*, 520 U.S. at 691 (recognizing that "[i]f this case were being heard in a state forum . . . petitioner would presumably rely on federalism and comity concerns, as well as the interest in protecting federal officials from possible local prejudice that underlies the authority

to remove certain cases brought against federal officers from a state to a federal court . . .") (internal citations omitted).

As set forth in the Order, the District Court agreed that "a President 'can raise subpoena-specific constitutional challenges, in either a state or federal forum" and acknowledged that Trump was "President when both Defendant[-Appellee]'s investigation and the [State Action] were commenced." Order at p. 42. However, the District Court declined to find that Trump is entitled to the protection of the federal courts based on the fact that, at the moment, he is "no longer the sitting president." *Id.* at p. 42-43. However, this logic is inconsistent with the manner in which presidential protections are applied to former Presidents for actions or events that took place when they were in office. *See, e.g., Trump v. Mazars USA, LLP*, --- F.4th ---, No. 21-5176, 2022 WL 2586480 (D.C. Cir. July 8, 2022) (applying heightened standard of law for subpoena served on plaintiff when he was a sitting president, even though he is no longer in office); *Committee on Ways and Means v. U.S. Department of Treasury*, No. 21-5289 at *14 (D.C. Cir. Aug. 9, 2022) ("[I]t is likely law of the circuit that a Congressional request for a sitting President's personal information is evaluated under the heightened *Mazars* standard regardless of whether the President in question remains in office.") (citing *Mazars*, *supra*); *Clinton v. Jones*, 520 U.S. 681, 690 (1997) (noting that it was "not necessary to consider or decide whether a comparable claim might succeed in a state tribunal" for

claims asserted against a President related to acts taken before entering office since the action was "asserted in federal court and relies heavily on the doctrine of separation of power."); *see Id.* at 691 n. 13 (pointing to "the interest in protecting federal officials from possible local prejudice that underlies the authority to remove certain cases brought against federal officers from a state to a federal court."); *see also Nixon v. Fitzgerald*, 457 U.S. 731 (1982) (applying separation of powers and Supremacy Cause in equal force to former President Nixon since the conduct at issue occurred while he was in office); *see generally McCullough v. Maryland*, 17 U.S. 316, 427 (1819) ("the sovereignty of the state . . . is subordinate to and may be controlled by the constitution of the United States.").

Simply put, since Trump has alleged that Defendant-Appellee's investigation was commenced as a means of "retaliation" for his "official acts" as President, he is entitled "to challenge [Defendant-Appellee's] allegedly unconstitutional influence in a federal forum." *Vance*, 140 S.Ct. at 2416; *compare to* [R. at A32]. Therefore, the District Court erred in denying Plaintiffs-Appellants the opportunity to have these claims heard in a federal forum.

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should reverse the District Court's dismissal of the Federal Action or, in the alternative, vacate and remand to hold an evidentiary hearing on the question of the application of the bad faith exception to the *Younger* abstention doctrine.

Dated:  August 16, 2022            Respectfully submitted,
        New York, New York        <u>*s/Alina Habba*</u>
                                       Alina Habba, Esq.
                                       HABBA MADAIO & ASSOCIATES LLP
                                       1430 U.S. Highway 206, Suite 240
                                       Bedminster, New Jersey 07921
                                       -and-
                                       112 West 34th Street, 17th & 18th Floors
                                       New York, New York 10120
                                       Telephone: (908) 869-1188
                                       Facsimile: (908) 450-1881
                                       E-mail: ahabba@habbalaw.com
                                       *Attorneys for Plaintiffs-Appellants*
                                       *Donald J. Trump and Trump Organization LLC*

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Second Circuit Local Rule 32.1(a)(4) because this brief contains 8,592 words, uses a monospaced typeface and contains 901 lines of text, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Times New Roman font.

Dated: August 16, 2022
      New York, New York

                              *s/Alina Habba* _____

                              Alina Habba, Esq.
                              HABBA MADAIO & ASSOCIATES LLP
                              1430 U.S. Highway 206, Suite 240
                              Bedminster, New Jersey 07921
                              -and-
                              112 West 34th Street, 17th & 18th Floors
                              New York, New York 10120
                              Telephone: (908) 869-1188
                              Facsimile: (908) 450-1881
                              E-mail: ahabba@habbalaw.com
                              *Attorneys for Plaintiffs-Appellants Donald J. Trump and Trump Organization LLC*

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

DONALD J. TRUMP and TRUMP
ORGANIZATION LLC,

           Plaintiffs-Appellants,

   v.

LETITIA JAMES, in her official
capacity as Attorney General for the
State of New York,

          Defendant-Appellee.

**22-1175-CV**

**CERTIFICATE OF SERVICE**

     I, Alina Habba, hereby certify under penalty of perjury that on August 16,

2022, I served a copy of Plaintiffs-Appellants' Brief by e-mail on:

     Eric Del Pozo, Esq.
     28 Liberty Street, 23rd Floor
     New York, New York 10005
     Eric.DelPozo1@ag.ny.gov
     *Appellate Counsel for Defendant-Appellee*

     Judith Vale, Esq.
     28 Liberty Street, 23rd Floor
     New York, New York 10005
     Judith.Vale@ag.ny.gov
     *Appellate Counsel for Defendant-Appellee*

Dated:  August 16, 2022
        New York, New York

                        *s/Alina Habba*⎯⎯⎯⎯⎯⎯
                        Alina Habba, Esq.
                        HABBA MADAIO & ASSOCIATES
                        LLP

1430 U.S. Highway 206, Suite 240
Bedminster, New Jersey 07921
-and-
112 West 34th Street, 17th & 18th
Floors
New York, New York 10120
Telephone: (908) 869-1188
Facsimile: (908) 450-1881
E-mail: ahabba@habbalaw.com
*Attorneys for Plaintiffs-Appellants*
*Donald J. Trump and Trump*
*Organization LLC*