# 22-1175

## United States Court of Appeals
## for the Second Circuit

DONALD J. TRUMP, TRUMP ORGANIZATION LLC,

*Plaintiffs-Appellants*,

v.

LETITIA JAMES, in her official capacity as Attorney General
for the State of New York,

*Defendant-Appellee*.

On Appeal from the United States District Court
for the Northern District of New York

## BRIEF FOR APPELLEE

BARBARA D. UNDERWOOD
 *Solicitor General*
JUDITH N. VALE
 *Deputy Solicitor General*
ERIC DEL POZO
 *Assistant Solicitor General*
 *of Counsel*

LETITIA JAMES
 *Attorney General*
 *State of New York*
Attorney for Appellee
28 Liberty Street
New York, New York 10005
(212) 416-8019

Dated: September 20, 2022

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................iii

PRELIMINARY STATEMENT ................................................................ 1

ISSUES PRESENTED ............................................................................ 3

STATEMENT OF THE CASE .................................................................. 4

    A.   The New York Office of the Attorney General's (OAG's) Civil Investigation of the Trump Organization Under Executive Law § 63(12) ............................................................. 4

    B.   The New York State Court Orders Enforcing OAG's Investigative Subpoenas ........................................................... 9

        1.   Orders enforcing subpoenas issued to the Trump Organization and its agents ............................................... 9

        2.   Orders enforcing the subpoena for testimony from Donald J. Trump ...................................................... 11

        3.   Orders holding Mr. Trump in civil contempt for disobeying his court-ordered obligation to comply fully with OAG's document subpoena ............................ 16

    C.   This Duplicative Federal Lawsuit Seeking to Halt OAG's Multiyear Investigation Near Its Culmination .......... 19

        1.   Plaintiffs' complaint under 42 U.S.C. § 1983 for declaratory and injunctive relief ..................................... 19

        2.   The district court's dismissal of the complaint on abstention and preclusion grounds ................................. 21

STANDARD OF REVIEW AND SUMMARY OF ARGUMENT ............ 24

**Page**

ARGUMENT

POINT I

THE PRIOR STATE COURT ORDERS AND PROCEEDINGS FORECLOSE
THIS FEDERAL LAWSUIT ....................................................... 28

    A.   The District Court Properly Determined That the
          State-Court Orders Enforcing OAG's Investigative
          Subpoenas Have Claim-Preclusive Effect. ........................... 29

          1.   The state proceedings resulted in final and
               preclusive orders........................................................... 31

          2.   The federal claims were raised or could have been
               raised in the state proceedings...................................... 36

          3.   The federal and state challenges both sought
               essentially the same relief............................................. 41

    B.   Issue Preclusion Independently Bars Plaintiffs'
          Federal Lawsuit. ................................................................ 47

POINT II

THE DISTRICT COURT PROPERLY HELD THAT YOUNGER
ABSTENTION WARRANTS DISMISSAL .................................... 54

    A.   The District Court Correctly Abstained in Light of the
          State Court's Contempt Order Against Mr. Trump.............. 54

    B.   The District Court Properly Found the Narrow "Bad
          Faith" Exception to Younger Abstention Inapplicable........... 60

    C.   Mr. Trump's Status as the Former President Does Not
          Vitiate Abstention.............................................................. 63

CONCLUSION ....................................................................... 67

# TABLE OF AUTHORITIES

**Cases**                                                  **Page(s)**

*Allen v. McCurry*,
 449 U.S. 90 (1980) .................................................................. 28, 47, 51

*Bannon v. Bannon*,
 270 N.Y. 484 (1936) ...............................................................31-32, 35

*Bartel Dental Books Co. v. Schultz*,
 786 F.2d 486 (2d Cir. 1986) ........................................................ 31, 47

*Boguslavsky v. South Richmond Sec., Inc.*,
 225 F.3d 127 (2d Cir. 2000) ............................................................. 24

*Booking v. General Star Mgmt. Co.*,
 254 F.3d 414 (2d Cir. 2001) ............................................................. 47

*Buechel v. Bain*,
 97 N.Y.2d 295 (2001) ....................................................................... 52

*Burnett v. Physician's Online, Inc.*,
 99 F.3d 72 (2d Cir. 1996) ........................................................... 57, 66

*Carlisle v. Bennett*,
 268 N.Y. 212 (1935) ........................................................................ 46

*Cavanaugh v. Geballe*,
 28 F.4th 428 (2d Cir. 2022).......................................................55-56, 58

*Clinton v. Jones*,
 520 U.S. 681 (1997).......................................................................... 65

*Colorado River Water Conservation Dist. v. United States*,
 424 U.S. 800 (1976).......................................................................... 21

*Cook v. Sheldon*,
 41 F.3d 73 (2d Cir. 1994) ................................................................. 39

*Cullen v. Fliegner*,
 18 F.3d 96 (2d Cir. 1994) ................................................................. 62

iii

**Cases**                                                         **Page(s)**

*Day v. Moscow,*
955 F.2d 807 (2d Cir. 1992) .......................................................... 24

*Diamond "D" Constr. Corp. v. McGowan,*
282 F.3d 191 (2d Cir. 2002) ............................................. 24, 54, 60-61

*Dunham v. Ottinger,*
243 N.Y. 423 (1926) ...................................................................... 40

*Edelman v. Jordan,*
415 U.S. 651 (1974) ....................................................................... 59

*El-Dehdan v. El-Dehdan,*
26 N.Y.3d 19 (2015) ...................................................................... 57

*Exxon Mobil Corp. v. Healey,*
28 F.4th 383 (2d Cir. 2022) ....................................... 29, 37-38, 43, 45

*Falco v. Justices of the Matrimonial Parts of Sup. Ct.*
*of Suffolk County,*
805 F.3d 425 (2d Cir. 2015) ......................................................... 56

*Hicks v. Miranda,*
422 U.S. 332 (1975) ....................................................................... 57

*Hudson-Spring P'ship v. P+M Design Consultants, Inc.,*
112 A.D.3d 419 (1st Dep't 2013) .................................................. 33

*Huffman v. Pursue, Ltd.,*
420 U.S. 592 (1975) ....................................................................... 60

*In re Teltronics Servs., Inc.,*
762 F.2d 185 (2d Cir. 1985) ......................................................... 53

*Jacobson v. Fireman's Fund Ins. Co.,*
111 F.3d 261 (2d Cir. 1997) .................................................... 41, 45

*Juidice v. Vail,*
430 U.S. 327 (1977) .................................................................. 55-57

iv

| Cases | Page(s) |
|---|---|

*Kirschner v. Klemons,*
225 F.3d 227 (2d Cir. 2000) ................................................................ 56

*Matter of 381 Search Warrants Directed to Facebook, Inc.
(N.Y. County Dist. Attorney's Off.),*
29 N.Y.3d 231 (2017) ........................................................................ 31

*Matter of Brunswick Hosp. Ctr., Inc. v. Hynes,*
52 N.Y.2d 333 (1981) ................................................................29-30, 35

*Matter of Evergreen Ass'n v. Schneiderman,*
153 A.D.3d 87 (2d Dep't 2017) ........................................................... 41

*Matter of Friedman v. Hi-Li Manor Home for Adults,*
42 N.Y.2d 408 (1977) ........................................................................ 30

*Matter of Hunter,*
4 N.Y.3d 260 (2005) ............................................................. 36, 38, 40

*Matter of Hynes v. Moskowitz,*
44 N.Y.2d 383 (1978) ........................................................................ 41

*Matter of Libre by Nexus, Inc. v. Underwood,*
181 A.D.3d 488 (1st Dep't 2020) .................................................... 5, 61

*Matter of Parkhouse v. Stringer,*
12 N.Y.3d 660 (2009) ........................................................................ 41

*Matter of Reilly v. Reid,*
45 N.Y.2d 24 (1978) ............................................................... 39, 42-43

*Matter of St. Francis Hosp.-Poughkeepsie v. Spitzer,*
284 A.D.2d 629 (3d Dep't 2001) ......................................................... 40

*Matter of Twin Coast Newspapers, Inc. v. State Tax Comm'n,*
64 N.Y.2d 874 (1985) ........................................................................ 16

*Middlesex County Ethics Comm. v. Garden State Bar Ass'n,*
457 U.S. 423 (1982) ................................................................. 22, 56-57

**Cases**                                                        **Page(s)**

*Migra v. Warren City Sch. Dist. Bd. of Educ.*,
   465 U.S. 75 (1984) ........................................................ 28, 48

*Myerson v. Lentini Bros. Moving & Storage Co.*,
   33 N.Y.2d 250 (1973) ......................................................... 40

*Nixon v. Fitzgerald*,
   457 U.S. 731 (1982) ............................................................ 65

*O'Brien v. City of Syracuse*,
   54 N.Y.2d 353 (1981) ......................................................... 45

*Ohio Civil Rights Comm'n v. Dayton Christian Schs., Inc.*,
   477 U.S. 619 (1986) ............................................................ 43

*Parker v. Blauvelt Volunteer Fire Co.*,
   93 N.Y.2d 343 (1999) ........................................ 45, 48, 51, 61

*People ex rel. McCabe v. Matthies*,
   179 N.Y. 242 (1904) ........................................................... 31

*People v. Bunge Corp.*,
   25 N.Y.2d 91 (1969) ........................................................... 56

*Perez v. Time Moving & Storage, Inc.*,
   10 N.Y.3d 784 (2008) ......................................................... 33

*San Remo Hotel, L.P. v. City & County of San Francisco*,
   545 U.S. 323 (2005) ............................................................ 48

*Schlagler v. Phillips*,
   166 F.3d 439 (2d Cir. 1999) ............................................... 54

*Simmons v. Trans Express Inc.*,
   37 N.Y.3d 107 (2021) ....................................... 30, 36, 39, 41, 44

*Slater v. American Min. Spirits Co.*,
   33 N.Y.2d 443 (1974) ......................................................... 40

| Cases | Page(s) |
|---|---|

*Smith v. Russell Sage Coll.*,
54 N.Y.2d 185 (1981) ........................................................... 42

*Sprint Commc'ns, Inc. v. Jacobs*,
571 U.S. 69 (2013) .......................................................... 54, 59

*TechnoMarine SA v. Giftports, Inc.*,
758 F.3d 493 (2d Cir. 2014) ............................................... 24

*Temple of Lost Sheep Inc. v. Abrams*,
930 F.2d 178 (2d Cir. 1991) ....................................... 51-52, 61

*Trump v. Hawaii*,
138 S. Ct. 2392 (2018) ....................................................... 62

*Trump v. Mazars USA, LLP*,
39 F.4th 774 (D.C. Cir. 2022) ....................................... 65-66

*Trump v. Vance*,
140 S. Ct. 2412 (2020) ................................................. 64-65

*Trump v. Vance*,
977 F.3d 198 (2d Cir. 2020) .......................................... 41, 52

*Watts v. Swiss Bank Corp.*,
27 N.Y.2d 270 (1970) ........................................................ 52

*Younger v. Harris*,
401 U.S. 37 (1971) ............................................................ 21

## Constitution

N.Y. Const. art. VI ...................................................... 15, 32

**Laws** **Page(s)**

*Federal*

28 U.S.C. § 1738 ...................................................................28

*New York*

C.P.L.R.

    408 ...............................................................................46
    409 ...............................................................................46
    410 ...............................................................................46
    2304 .............................................................................45
    5601 .............................................................................32

Executive Law § 63 ...........................................................4-5

**Miscellaneous Authorities**

Ben Protess et al., *Likelihood of Trump Indictment in Manhattan Fades as Grand Jury Wraps Up*, N.Y. Times (Apr. 29, 2022), https://www.nytimes.com/2022/04/29/nyregion/trump-investigation-alvin-bragg-grand-jury.html .........................................13

Ben Protess et al., *N.Y. Attorney General May Sue Trump After Rejecting Settlement Offer*, N.Y. Times (Sept. 15, 2022), https://www.nytimes.com/2022/09/15/nyregion/letitia-james-trump-settlement.html .......................................................59

David D. Siegel & Patrick M. Connors, *New York Practice* § 384 (6th ed. June 2022 update) (Westlaw) .................................45

*Hearing Before H. Comm. on Oversight & Reform*, 116th Cong. (2019) ..... 4

# PRELIMINARY STATEMENT

In this federal lawsuit under 42 U.S.C. § 1983, plaintiffs-appellants the Trump Organization and Donald J. Trump seek to relitigate issues and claims they have already raised, litigated, and lost in state court. Those state proceedings have produced final orders requiring plaintiffs to comply with subpoenas issued by the New York State Office of the Attorney General (OAG) as part of its investigation into whether the Trump Organization committed fraud in violation of New York law. Plaintiffs have purported to fully comply with those final orders and OAG's investigative subpoenas. Yet this federal action collaterally attacks the very same investigation and subpoenas.

The U.S. District Court for the Northern District of New York (Sannes, J.) dismissed plaintiffs' federal complaint based on res judicata and *Younger* abstention. This Court should affirm.

As the district court correctly determined, res judicata (i.e., claim preclusion) bars plaintiffs' federal claims. In the subpoena-enforcement proceedings, the state courts considered—and rejected—the same arguments that plaintiffs assert here, holding that OAG's investigation has a sufficient factual basis and that various comments by Attorney General

James do not undermine the investigation's validity. As the state courts (and the district court here) found, OAG's investigation validly began in March 2019, after a senior company insider provided sworn congressional testimony that the Trump Organization's financial documents had misrepresented asset values to obtain assorted economic benefits. And the investigation has since uncovered substantial evidence of financial fraud. Because plaintiffs already have raised or could have raised in the state proceedings the same objections their federal complaint now asserts, this lawsuit is claim precluded.

For similar reasons, collateral estoppel (i.e., issue preclusion) independently bars this action. The core issues raised in plaintiffs' federal complaint were fully litigated in state court. There, Mr. Trump relied on the same public comments by the New York Attorney General on which he also relies here, to make the same argument that he makes here, i.e., that OAG launched this civil fraud investigation out of political animus. The state courts squarely rejected this claim of improper purpose, finding that OAG's investigation was lawfully initiated and well founded. Because the state courts necessarily decided the issues at the heart of this federal

2

lawsuit, and did so adversely to plaintiffs, issue preclusion bars this duplicative action.

In the alternative, *Younger* abstention also warranted the complaint's dismissal. In the subpoena-enforcement proceedings, the state court held Mr. Trump in civil contempt for flouting its order to comply fully with OAG's document subpoena. Mr. Trump has appealed the contempt order and paid a six-figure fine to OAG to hold in escrow during the still-pending appeal. A federal ruling regarding the validity of OAG's investigation could unacceptably interfere with the state court's contempt process and the State's interest in enforcing its judgments.

## ISSUES PRESENTED

1.     Is plaintiffs' federal complaint barred by either claim or issue preclusion when plaintiffs already raised and litigated in state court the same issues that they seek to raise here?

2.     Did the district court properly decide that *Younger* abstention also mandated dismissal?

## STATEMENT OF THE CASE

A. **The New York Office of the Attorney General's (OAG's) Civil Investigation of the Trump Organization Under Executive Law § 63(12)**

In February 2019, Michael Cohen, a former Trump Organization senior executive and special counsel to Mr. Trump, testified before Congress that Mr. Trump's financial statements for 2011, 2012, and 2013—copies of which Mr. Cohen provided to Congress—inflated the values of Mr. Trump's assets to obtain, among other things, favorable terms for loans and insurance. *See Hearing Before H. Comm. on Oversight & Reform*, 116th Cong. 13, 19, 38-39, 160 (2019). (Joint Appendix (J.A.) 59-79.)

The following month, OAG began investigating this alleged misconduct to determine whether to pursue enforcement action, including under New York Executive Law § 63(12). (*See* J.A. 49.) That statute empowers OAG to bring a civil proceeding for injunctive or monetary relief against "any person" who "engage[s] in repeated fraudulent or illegal acts or otherwise demonstrate[s] persistent fraud or illegality in the carrying on, conducting or transaction of business." Executive Law § 63(12). "[T]o take proof and make a determination of the relevant facts," the statute further

4

authorizes OAG "to issue subpoenas in accordance with the civil practice law and rules." *Id.* Such a subpoena will be upheld if OAG shows some factual basis for the investigation and the relevance of the items sought. *E.g.*, *Matter of Libre by Nexus, Inc. v. Underwood*, 181 A.D.3d 488, 488 (1st Dep't 2020).

After learning that the Trump Organization had provided the valuations in question to financial institutions, OAG subpoenaed relevant documents and testimony to ascertain whether this activity violated New York law. (J.A. 49.) Since 2019, OAG has interviewed more than forty witnesses, including many current and former Trump Organization insiders, as well as its outside lawyers, accountants, and appraisers. (*See, e.g.*, J.A. 42, 81, 168, 191-192, 250, 256, 267-268.) OAG also has received and reviewed hundreds of thousands of documents produced by the Trump Organization.[1] (*See* J.A. 26, 260.) The evidence collected to date reveals that financial statements, tax submissions, loan guarantees, and other documents are replete with material falsehoods aimed at portraying

---

[1] As explained more fully below, nearly all these documents were received after the Trump Organization's subpoena response was placed under judicial and third-party supervision.

5

Mr. Trump's net worth and liquidity as higher than the true facts warranted, to secure economic benefits to which he might not otherwise have been entitled.

Central to the investigation are annual "Statements of Financial Condition of Donald J. Trump," reflecting Mr. Trump's net worth, based on asserted values of specific assets and classes of assets. From 2004 until 2020, the accounting firm Mazars compiled these statements. (*See* J.A. 173.) In February 2022, Mazars announced that the statements "for the years ending June 30, 2011 – June 30, 2020, should no longer be relied upon." (J.A. 304.)

The Trump Organization submitted these misleading valuations to lenders and insurers to enter transactions on favorable terms. (*See* J.A. 211-221.) These efforts procured, among other benefits, over $300 million in total loans from Deutsche Bank to develop a golf resort in Florida and hotels in Chicago and Washington, D.C. (*See* J.A. 212-216.) Any misrepresentations would have breached contractual covenants, altered the transactions' risk profile, or caused the counterparties to reconsider the deals. (*See* J.A. 193, 213-214, 221.) And the financial statements have many misrepresentations or omissions.

6

For example, the statements appear to have inflated the values of residential apartments the Trump Organization owned. For several years, the statements represented that Mr. Trump's residence in Manhattan's Trump Tower comprised 30,000 square feet and thus was worth up to $327 million, when the apartment's true size and corresponding value were one-third as much. (J.A. 182-184.) Similarly, several years' statements valued Ivanka Trump's residence in the Trump Park Avenue building at up to $25 million, even though she held an option to buy the unit for roughly one-third that price. (J.A. 203.) The financial statements priced other unsold apartments at Trump Park Avenue at more than six times their independently appraised value, and priced a group of rent-stabilized units at *sixty-six* times their independently appraised value. (*See* J.A. 198, 200.)

As another example, the statements regularly announced that their values derived from analyses reached with outside professionals, which in many instances was untrue. (*E.g.*, J.A. 191-192, 201-202.) The Trump Organization's chief financial officer likewise told an insurer that certain real-estate values had come from specified appraisal firms, which had been entirely uninvolved. (J.A. 218-220.) Moreover, certain valuations

were inflated by a hidden percentage for Mr. Trump's "brand value," which the financial statements expressly purported to exclude. (J.A. 189-193.) The statements also overstated Mr. Trump's liquidity by counting as cash the assets of entities controlled by others. (J.A. 204-206.)

Evidence further reveals that the Trump Organization relied on indefensible appraisals to inflate the value of two development projects—a housing subdivision and a golf course—to obtain millions of dollars' worth of tax benefits from the donation of environmental conservation easements on the parcels. (J.A. 221-250.)

Ample evidence indicates that Mr. Trump knew or should have known of these misleading valuations. Mr. Trump wholly owns the Trump Organization, for which he served as president and chairman from 1981 until 2017. (J.A. 169-170.) The misrepresentations appear in "Donald J. Trump Statement[s] of Financial Condition"—which, through 2016, recited that "Donald J. Trump is responsible for the preparation and fair presentation of the financial statement" and that Mr. Trump, in conjunction with others, had prepared the valuations. (J.A. 262-263.) In loan guarantees, Mr. Trump personally certified that the valuations the lender received were accurate "in all material respects." (J.A. 264-265.) When asked who

8

reviewed the draft statements, the Trump Organization's controller testified that the entity's chief financial officer "reviewed it with Mr. Trump," which the latter officer admitted was "certainly possible." (J.A. 263-264.)

## B. The New York State Court Orders Enforcing OAG's Investigative Subpoenas

### 1. Orders enforcing subpoenas issued to the Trump Organization and its agents

In December 2019, OAG subpoenaed documents from the Trump Organization, as well as testimony from its officers and outside professionals, in furtherance of OAG's fraud investigation. (*See* J.A. 81.) In August 2020, after compliance disputes arose, OAG filed a special proceeding under article 4 of the Civil Practice Law and Rules (C.P.L.R.), in Supreme Court, New York County, "to compel the production of documents and testimony allegedly relevant to its ongoing investigation into potential fraud and illegality." (Addendum (Add.) 1 (Decision & Order on Mot. (Sept. 24, 2020)).[2]) The state-court proceeding was assigned to the Honorable Arthur Engoron.

---

[2] An addendum to this brief contains copies of orders in the state-court proceeding, entered and accessible via the New York State Courts Electronic Filing (NYSCEF) docket for *People ex rel. James v. Trump*

(*continued on the next page*)

During an early appearance, the Trump Organization's counsel professed to have "been very cooperative with the Attorney General throughout this investigation" and to "understand they have a right to investigate this." (J.A. 98.) Among other rulings, the court denied the Trump Organization's privilege objections, ordered that specified documents be produced to OAG, directed that other materials be supplied to the court for in camera review, and reserved "jurisdiction over th[e] special proceeding" to allow the parties "in real time to obtain any necessary rulings" during forthcoming depositions. (Add. 2-3.) The court later granted successive reargument motions and revisited portions of its prior omnibus ruling, the details of which are not relevant here. (*See* Add. 4-5 (Decision & Order on Mot. (Oct. 8, 2020)); Add. 6-9 (Decision & Order on Mot. (Dec. 15, 2020)).) In all, the subpoena recipients produced "thousands of documents" for in camera inspection. (Add. 6.)

In September 2021, amid continuing compliance disputes, the parties entered into a stipulation, which the state court so-ordered,

---

*Organization*, Index No. 451685/2020, Supreme Court, New York County. The addendum also contains copies of relevant appellate decisions. References to NYSCEF in this brief are to the trial-level docket.

governing the Trump Organization's fulfillment of its production obliga-

tions. (Add. 10-17 (Stipulation & Order (Sept. 2, 2021)); J.A. 83-90.) This

stipulation required the Trump Organization to "work diligently to

comply with" OAG's outstanding document requests and gave OAG the

option of directing the Trump Organization to retain an outside e-discovery

firm to supervise its compliance. (Add. 11.) OAG subsequently instructed

the Trump Organization to retain such an e-discovery firm, and the

company chose HaystackID. (*See* Add. 29-31 (Order Regarding Trump

Org. Subpoena Response (Mar. 28, 2022)).) After a conference about the

adequacy of HaystackID's efforts, Supreme Court ordered the Trump

Organization, with HaystackID's assistance, to "comply in full with OAG's

subpoenas" by April 15, 2022. (Add. 31.)

## 2. Orders enforcing the subpoena for testimony from Donald J. Trump

On December 1, 2021, to help reach a final determination about

whether the Trump Organization had committed fraud in violation of

New York law and, if so, who else might be responsible, OAG subpoenaed

testimony and documents from the Trump Organization's owner, Donald

J. Trump, and subpoenaed testimony from its senior vice presidents,

Donald Trump, Jr., and Ivanka Trump (Mr. Trump's children). The subpoena to Mr. Trump called for responsive documents to be produced by December 17, 2021, and a deposition to occur by January 7, 2021. Subpoena Duces Tecum and Ad Testificandum to Donald J. Trump (Dec. 1, 2021), NYSCEF Doc. No. 361. (*See* J.A. 54-55, 251-252.)

After service of this subpoena, Mr. Trump and the Trump Organization filed this federal action in the Northern District of New York—a district with no discernible connection to the parties, attorneys, or subject matter involved. (*See* J.A. 8, 50-51.) Mr. Trump and his children then separately moved in state court to quash the deposition subpoenas. OAG opposed the motion to quash and cross-moved to compel the subpoenaed testimony. The cross-motion was supported by a supplemental verified petition, detailing the evidence gathered by that time suggesting that the Trump Organization's financial documents contained material misrepresentations and explaining the bases for concluding that the deponents would have relevant information on those topics. (*See* J.A. 166-280.)

In their state-court filings, Mr. Trump and his children alleged that OAG's "purpose is improper" and that the investigation was purportedly "predicated on improper animus" towards Mr. Trump. (J.A. 326.) They

further claimed that investigating "Mr. Trump and his family, associates, and companies" solely out of "political animus" (J.A. 336) and "political opposition" (J.A. 338) amounted to selective prosecution in violation of the Fourteenth Amendment's Equal Protection Clause (J.A. 336-349). As support for these assertions, their state court filings repeated a series of public comments by the Attorney General, mostly as a candidate for office, supposedly betraying animus. (*See* J.A. 338-343.) Mr. Trump and his children also argued that requiring them to sit for testimony in OAG's civil investigation would violate their rights by circumventing a then-extant grand jury proceeding, convened by the Manhattan District Attorney's Office, investigating the Trump Organization's financial dealings.[3] (*See* J.A. 155-164.)

In February 2022, in a written opinion, Supreme Court denied the motion to quash the deposition subpoenas and granted OAG's cross-motion to compel the testimony of Mr. Trump and the others. (Add. 18-25 (Decision & Order on Mot. (Feb. 17, 2022)); J.A. 306-313.) The court

---

[3] Public reporting has since stated that the grand jury disbanded without returning any criminal charges. *See, e.g.*, Ben Protess et al., *Likelihood of Trump Indictment in Manhattan Fades as Grand Jury Wraps Up*, N.Y. Times (Apr. 29, 2022).

13

rejected the Trumps' argument that OAG's civil subpoenas were "a subterfuge to garner evidence for a criminal investigation." (Add. 21.) And the court found that OAG's investigation had "uncover[ed] copious evidence of possible financial fraud" by the Trump Organization, giving OAG the "clear right" to question that entity's principals under oath. (Add. 25.)

Supreme Court also found that "the impetus for the investigation was not personal animus" or alleged "campaign promises, but was sworn congressional testimony by former Trump associate Michael Cohen" that the Trump Organization was "'cooking the books.'" (Add. 23.) From having reviewed "thousands of documents responsive to OAG's prior subpoenas," the court confirmed that OAG had a "sufficient basis for continuing its investigation," which further undermined any claim that the "ongoing investigation is based on personal animus." (Add. 22.) The court also noted the lack of "any evidence that the law was not applied to others similarly situated."[4] (Add. 23.)

The Trumps appealed, and the Appellate Division, First Department, unanimously affirmed. (Add. 41-44 (Decision & Order (May 26, 2022)).)

_____

[4] The parties agreed to suspend the depositions until after an appeal was decided. (Add. 26-27 (Stipulation & Order (Mar. 3, 2022)).)

That court concluded that "political campaign and other public statements" by the Attorney General did not support a claim that OAG was improperly using civil subpoenas to undermine Mr. Trump's rights. (Add. 42.) The First Department also determined that OAG's investigation—which followed the "public testimony of a senior corporate insider" that the Trump Organization "had issued fraudulent financial statements"—was "lawfully initiated at its outset and well founded." (Add. 43.) And the court noted that OAG had reviewed "significant volumes of evidence" before subpoenaing Mr. Trump, who had not shown that any "similarly implicated" businesses or executives were treated differently. (Add. 43.)

Rather than seek discretionary review, the Trumps noticed an appeal as of right to the New York Court of Appeals. New York law permits such an appeal as of right from an Appellate Division order that both "finally determines an action or special proceeding" and "directly involve[s]" a constitutional question. N.Y. Const. art. VI, § 3(b)(1). The Court of Appeals dismissed the appeal "upon the ground that no substan-

15

tial constitutional question [wa]s directly involved."[5] (Add. 45 (Order (June 14, 2022)).)

### 3. Orders holding Mr. Trump in civil contempt for disobeying his court-ordered obligation to comply fully with OAG's document subpoena

At no point did Mr. Trump object to the portion of the subpoena to him that sought documents. Rather, in a so-ordered stipulation, Mr. Trump agreed to "comply in full with that portion of the OAG subpoena seeking documents and information by March 31, 2022." (Add. 27.)

In April 2022, Supreme Court held Mr. Trump in civil contempt for willfully disobeying this directive. (Add. 32-34 (Decision & Order on Mot. (Apr. 26, 2022)); J.A. 382-384.) As the court explained: "Instead of producing the documents called for in the subpoena, on March 31, 2022, Mr. Trump produced 16 pages of boilerplate objections and a four-page affirmation by counsel that states, summarily, that Mr. Trump was unable to locate any responsive documents in his custody." (Add. 33.) The court determined that, under settled New York precedent, Mr. Trump had

---

[5] *See Matter of Twin Coast Newspapers, Inc. v. State Tax Comm'n*, 64 N.Y.2d 874, 875-76 (1985) (requiring that constitutional question be "substantial" and dispositive to support appeal as of right).

16

"waived the right" to object to the subpoena "by not timely bringing such challenges in his motion to quash." (Add. 33.) And the court found Mr. Trump's counsel's affirmation about the search to be "woefully inadequate." (Add. 33.)

Supreme Court levied a fine of $10,000 per day until the contempt was purged. (Add. 34.) Mr. Trump appealed the contempt order to the Appellate Division, First Department, *see People ex rel. James v. Trump Org.*, No. 2022-01812 (1st Dep't docketed May 2, 2022), which denied Mr. Trump's emergency application to stay the fines (Add. 37-38 (Order Denying Interim Relief (May 3, 2022)); J.A. 402-403).

After receiving supplementary sworn statements—one from Mr. Trump and two from his attorneys—Supreme Court declined to lift the contempt. (Add. 35-36 (Opinion & Order (Apr. 29, 2022)); J.A. 385-386.) In particular, the court found "Mr. Trump's personal affidavit [to be] completely devoid of any useful detail," failing to describe, among other things, where Mr. Trump kept his files, who could access them, and his policy, if any, for retaining documents. (Add. 35-36.)

After receiving further submissions, Supreme Court held Mr. Trump to have purged the contempt, subject to his satisfying certain conditions.

(Add. 39-40 (Suppl. Decision & Order on Mot. (May 11, 2022)).) Among them were that Mr. Trump pay the accrued fine of $110,000 to OAG to be kept in escrow; that he provide affidavits from his assistants describing his document retention practices; and that HaystackID certify "that all responsive documents" from the Trump Organization—which Mr. Trump had confirmed were within his control to produce (*see* J.A. 400)—were "accounted for, located, and turned over" (Add. 39).

After Mr. Trump claimed to have satisfied the conditions, Supreme Court held the contempt purged. (Add. 46 (Suppl. Decision & Order on Mot. (June 29, 2022)).) The $110,000 paid to OAG "remain[s] in escrow pending the final disposition" of Mr. Trump's appeal of the contempt order (Add. 46), which remains pending. Mr. Trump has until October 27, 2022, to perfect his appeal or seek an extension. Meanwhile, the state special proceeding overseeing compliance with OAG's investigative subpoenas has continued. *See* NYSCEF Doc. No. 817 (order holding third-party services firm in civil contempt for subpoena noncompliance), No. 825 (subsequent order lifting contempt).

**C.** **This Duplicative Federal Lawsuit Seeking to Halt OAG's Multiyear Investigation Near Its Culmination**

**1.** **Plaintiffs' complaint under 42 U.S.C. § 1983 for declaratory and injunctive relief**

In December 2021, the Trump Organization and Mr. Trump filed this federal lawsuit under 42 U.S.C. § 1983 against New York Attorney General Letitia James, in her official capacity. (J.A. 8-37.) This lawsuit was filed nearly three years after OAG's investigation began, and two years after OAG first subpoenaed the Trump Organization, but just weeks after OAG had subpoenaed Mr. Trump's testimony.[6] By then, OAG had obtained more than 900,000 documents; interviewed dozens of witnesses, including many senior officers of the Trump Organization; and litigated subpoena-compliance issues in New York State court for more than a year. See *supra* at 5, 9-11.

The federal lawsuit sought declaratory relief and an injunction halting or limiting further investigative efforts. (J.A. 36.) The complaint raised four nominally separate but overlapping claims: *first*, that OAG launched the investigation in bad faith, in violation of the Fourteenth

---

[6] The complaint refers to this "deposition notice." (J.A. 28.)

Amendment's Due Process Clause (J.A. 29-31); *second*, that the investiga-
tion was intended to retaliate against Mr. Trump's political speech, in
violation of the First Amendment (J.A. 31-33); *third*, that the document
subpoenas to Mr. Trump and the Trump Organization were overbroad
and unduly burdensome, and sought irrelevant material, in violation of
the Fourth Amendment (J.A. 33-34); and *fourth*, that OAG's subpoenas
constituted abuse of process (J.A. 34-36).

Each of these claims alleged that OAG's investigation lacked a
sufficient factual basis. (J.A. 29-30, 32-33, 35.) In addition, each asserted
that OAG's subpoenas had the "improper purpose" to harass and oppress
Mr. Trump and the Trump Organization. (J.A. 30, 32, 34; *see* J.A. 35.) In
support of each of these claims, the complaint's factual section listed
many of the same public comments by the Attorney General on which
Mr. Trump relied in his state-court filing seeking, unsuccessfully, to
quash his deposition subpoena. (*See* J.A. 11-29.) And like the state-court
filing, the federal complaint alleged that OAG began its investigation due
to "political animus" and "political opposition." (*E.g.*, J.A. 10, 20, 30.)

Pointing exclusively to the complaint, plaintiffs sought a prelimi-
nary injunction staying OAG's investigation or disqualifying the Attorney

General therefrom. (J.A. 41-45.) OAG opposed that relief and moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(1), based on *Younger* and *Colorado River* abstention,[7] and under Rule 12(b)(6), based on res judicata and failure to allege a plausible claim for relief. *See* Dist. Ct. ECF No. 14, 15.

## 2. The district court's dismissal of the complaint on abstention and preclusion grounds

In a written decision, the district court granted OAG's motion to dismiss on two alternative grounds and denied as moot plaintiffs' request for a preliminary injunction. (Special Appendix (S.A.) 21-63.)

*First*, the district court held that res judicata barred this federal action. (S.A. 55-63.) The court concluded that Supreme Court's February 2022 order compelling Mr. Trump's deposition was a final order triggering claim preclusion. (S.A. 55-57.) The court further determined that, for preclusion purposes, the Trump Organization and Mr. Trump were in privity—which they had not disputed. (S.A. 57-58.) And the court concluded that the state and federal actions shared an identity of claims

---

[7] *See generally Younger v. Harris*, 401 U.S. 37 (1971); *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976).

(S.A. 58-63), observing that plaintiffs already had raised or "could have raised the claims and requested the relief they seek in the federal action in the New York proceeding" (S.A. 63), which similarly arose from OAG's investigation into the Trump Organization and "involve[d] the same or related facts" (S.A. 59).

*Second*, the district court dismissed the complaint on the basis of *Younger* abstention. (S.A. 36-51.) It concluded that the state-court proceedings holding Mr. Trump in civil contempt warranted abstention (S.A. 40-43), because they are "'pending civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions'" (S.A. 37 (quoting *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 78 (2013))). The court explained that enjoining OAG's civil fraud investigation "would have the practical effect of interfering with the contempt ruling in the New York proceeding" and would risk negating that order. (S.A 42-43.) The district court also found that the three additional criteria from *Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423 (1982), "all weigh in favor of abstention": there was an ongoing state proceeding, which concerned the important state interest of law enforcement, and which could have entertained the

federal constitutional claims that Mr. Trump was trying to assert in the federal action. (S.A. 43-44.)

The district court then held that the "bad faith" exception to *Younger* abstention did not apply. (S.A. 44-51.) The district court emphasized that the state courts had already rejected Mr. Trump's assertions about political animus or bad faith. (S.A. 49.) The district court further observed that OAG had obtained favorable results in the state proceeding, securing orders enforcing various investigative subpoenas. (S.A. 45-47.) And the district court independently found that "the subpoena enforcement proceeding ha[d] a legitimate factual predicate," i.e., Mr. Cohen's congressional testimony accusing the Trump Organization of inflating asset values for economic advantage, followed by OAG's discovery that these questionable valuations had been provided to financial institutions. (S.A. 47.)

Finally, the district court rejected the argument that Mr. Trump's formerly having been President guaranteed him a federal forum for his current claims. (S.A. 62-63.) The court reasoned that Mr. Trump had "been out of office for over one year," eliminating any concerns about interference with presidential duties. (S.A. 63.)

**STANDARD OF REVIEW AND SUMMARY OF ARGUMENT**

This Court reviews de novo the district court's application of res judicata. *See Boguslavsky v. South Richmond Sec., Inc.*, 225 F.3d 127, 129-30 (2d Cir. 2000). This defense may support a Rule 12(b)(6) dismissal when the complaint and court records make preclusion apparent. *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 498 (2d Cir. 2014); *Day v. Moscow*, 955 F.2d 807, 811 (2d Cir. 1992).

This Court likewise reviews de novo whether the requirements for *Younger* abstention are met. *See Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191, 197 (2d Cir. 2002). Whether the facts meet the "bad faith" exception to *Younger* abstention "is a mixed question of law and fact" subject to de novo review, with the district court's underlying factual findings assessed "only for clear error." *Id.* at 198.

**I.** Res judicata and collateral estoppel each independently preclude plaintiffs' federal claims.

**A.** The district court correctly determined that res judicata, or claim preclusion, forecloses this action because plaintiffs have already raised or could have raised in the state proceedings the claims that they now assert here. The state proceedings generated final orders enforcing OAG's

24

subpoenas to the Trump Organization and Mr. Trump, resolving essentially the same arguments about OAG's investigation that this federal case seeks to relitigate.

Indeed, the state and federal proceedings arise from the same set of operative facts, i.e., OAG's investigation into the veracity of the Trump Organization's financial documents. In both the state and federal proceedings, Mr. Trump relied on the same comments by Attorney General James in contending that OAG's investigation had unconstitutionally targeted him and his business, while purportedly lacking a factual basis. And both actions alleged that OAG's investigation and subpoenas violate assorted constitutional guarantees.

Insofar as the actions' legal theories may differ, either Mr. Trump or the Trump Organization could have raised any of the current federal objections in the subpoena-enforcement proceedings in state court. In turn, the state court could have awarded substantially the same relief sought in this case—i.e., to block OAG from concluding its yearslong civil fraud inquiry, and specifically from deposing Mr. Trump, on the asserted ground that OAG's investigation was tainted with bad faith from the

start. As a result, under New York law, which controls the preclusion question, the objections cannot be pursued here.

**B.** Collateral estoppel, or issue preclusion, independently requires dismissal of the federal complaint. In enforcing OAG's investigative subpoenas, the state courts expressly rejected the central premises of plaintiffs' federal claims here. For example, the state courts rebuffed Mr. Trump's assertions that public comments by Attorney General James revealed impermissible political animus, that OAG launched its investigation for an improper purpose, and that the investigation lacked a valid factual basis. Because each of plaintiffs' federal claims hinges on the same premises that the state courts conclusively rejected, issue preclusion applies. And this bar extends to both Mr. Trump and the Trump Organization because, as they do not dispute, they are in privity for purposes of preclusion.

**2.** Alternatively, the district court appropriately determined that *Younger* abstention required dismissal.

**A.** Given the state court's order holding Mr. Trump in civil contempt—an appeal of which is currently pending—granting relief here unacceptably risks interfering with the New York courts' enforcement of

their own judgments. That interest is at its apex in the context of a civil fraud investigation by New York's chief law enforcer. And the case for *Younger* abstention will grow even stronger if OAG files an enforcement action charging the Trump Organization or affiliated individuals or entities with fraudulent and illegal practices. Accordingly, OAG will promptly update the Court if any such development occurs.

**B.** The facts here do not satisfy the narrow exception to abstention for proceedings allegedly brought in bad faith. The state courts' express findings that OAG's investigation is valid and well supported preclude revisiting those issues in this federal lawsuit. In any event, as the state courts correctly concluded, ample evidence of the Trump Organization's fraud supported OAG's investigative subpoenas. And as the district court here independently found, the record fails to link OAG's investigative efforts to alleged public comments by the Attorney General, which do not betray impermissible animus in any case.

**C.** Mr. Trump's status as former President does not override abstention or guarantee him a federal forum for his arguments. The U.S. Supreme Court has held that a President may challenge a state investigative subpoena in federal court if the "bad faith" exception to *Younger*

27

abstention is met or if the subpoena interferes with the President's Article II duties. Neither situation is presented here: OAG's investigation is proper, and Mr. Trump is not the President.

## ARGUMENT

### POINT I

#### THE PRIOR STATE COURT ORDERS AND PROCEEDINGS FORECLOSE THIS FEDERAL LAWSUIT

There is no "universal right to litigate a federal claim in a federal district court." *Allen v. McCurry*, 449 U.S. 90, 105 (1980). Rather, state judicial proceedings "shall have the same full faith and credit" in federal court as they have in state court. 28 U.S.C. § 1738. Thus, "traditional rules of preclusion" apply to § 1983 suits, *Allen*, 449 U.S. at 99, including both claim and issue preclusion, *see Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 84 (1984).

Here, the doctrines of claim and issue preclusion each independently bar this federal lawsuit—which is plainly an improper collateral attack on OAG's fraud investigation. That investigation—conducted under OAG's statutory authority—has been the subject of extensive state-court proceedings in which Mr. Trump and the Trump Organization raised

28

or could have raised all of the issues and claims they pursue here. Indeed, the state courts have fully adjudicated and rejected plaintiffs' allegations of improper bias and retaliation. The district court thus properly held that res judicata precludes this federal action, filed years into OAG's investigation, in Syracuse, New York—a locale with no discernible connection to any party, attorney, or property involved in the investigation. Allowing such a lawsuit to proceed would "open the door to never-ending challenges to the validity of subpoenas, perhaps even years after initial issuance." *Matter of Brunswick Hosp. Ctr., Inc. v. Hynes*, 52 N.Y.2d 333, 339 (1981).

## A. The District Court Properly Determined That the State-Court Orders Enforcing OAG's Investigative Subpoenas Have Claim-Preclusive Effect.

The district court properly held that res judicata, or claim preclusion, bars these federal claims attacking OAG's investigation because they were already raised or could have been raised in the New York State subpoena-enforcement proceedings. (*See* S.A. 51-63.)

"Federal courts are required to give preclusive effect to state-court judgments whenever the courts of the state from which the judgments emerged would do so." *Exxon Mobil Corp. v. Healey*, 28 F.4th 383, 398 (2d

Cir. 2022) (quotation marks and alterations omitted). Thus, as plaintiffs concede, New York law governs the res judicata analysis here. *See* Br. for Pls.-Appellants (Br.) at 20. Under New York's transactional approach to res judicata, "'once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy'" from the prior action. *Simmons v. Trans Express Inc.*, 37 N.Y.3d 107, 111 (2021) (emphasis omitted) (quoting *O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 357 (1981)).

Moreover, under New York law, a subpoena recipient must promptly raise objections to the subpoena in a motion to quash or in opposition to a motion to compel compliance. Any objections not so raised are forfeited. *See Matter of Brunswick Hosp.*, 52 N.Y.2d at 339 ("A motion to quash or vacate . . . is the proper and exclusive vehicle to challenge the validity of a subpoena or the jurisdiction of the issuing authority."); *Matter of Friedman v. Hi-Li Manor Home for Adults*, 42 N.Y.2d 408, 413 (1977). These principles compel the federal complaint's dismissal.

### 1. The state proceedings resulted in final and preclusive orders.

Contrary to plaintiffs' contention, the state proceedings generated final orders with claim-preclusive effect. *See* Br. at 21-22. Claim preclusion potentially "applies to all judicial determinations, whether made in actions, or in summary or special proceedings." *People ex rel. McCabe v. Matthies*, 179 N.Y. 242, 248 (1904). A "final order in a special proceeding" that "settles finally and conclusively the questions at issue" thus becomes preclusive between the parties. *Bannon v. Bannon*, 270 N.Y. 484, 489 (1936) (quotation marks omitted); *see also Bartel Dental Books Co. v. Schultz*, 786 F.2d 486, 489 (2d Cir. 1986) (holding that order in New York special proceeding precluded later § 1983 action based on same events).

Here, the district court correctly determined that the February 2022 state-court order denying Mr. Trump's motion to quash OAG's deposition subpoena and granting OAG's cross-motion to compel Mr. Trump's testimony was a final order for purposes of claim preclusion. (S.A. 56-57.) "[A]n order resolving a motion to quash such a subpoena is a final and appealable order in a special proceeding." *Matter of 381 Search Warrants Directed to Facebook, Inc. (N.Y. County Dist. Attorney's Off.)*, 29 N.Y.3d 231, 243 (2017). In fact, Mr. Trump appealed the February

31

2022 order, and the Appellate Division affirmed. (*See* Add. 41-44.) Mr. Trump then noticed an appeal as of right to the New York Court of Appeals, which dismissed the appeal for lack of a directly involved and substantial constitutional question. (Add. 45.) The order is thus beyond review and not "subject to change and modification in the future." *Bannon*, 270 N.Y. at 489. Indeed, after the Court of Appeals rejected Mr. Trump's appeal, he complied with the February 2022 order by sitting for his deposition.

Plaintiffs' own state-court filings belie their contention that the February 2022 deposition order was nonfinal. In his notice of appeal to the Court of Appeals, Mr. Trump expressly represented that he was appealing "from the *final* decision and order" of the Appellate Division, which had "affirmed the Supreme Court's *final* order and decision" denying his motion to quash. Notice of Appeal (June 8, 2022), NYSCEF Doc. No. 796 (emphasis added). That representation was correct and necessary to invoke the Court of Appeals' jurisdiction, which includes review as of right only from an Appellate Division decision that "*finally* determines an action or special proceeding." N.Y. Const. art. VI, § 3(b)(1) (emphasis added); *see also* C.P.L.R. 5601(b)(1). And the Court of Appeals implicitly

agreed that the February 2022 order was final, dismissing the appeal for lack of a directly involved and substantial constitutional question (Add. 45), rather than for lack of a final appealable order, *see, e.g.*, *Perez v. Time Moving & Storage, Inc.*, 10 N.Y.3d 784, 784 (2008) (dismissing appeal because "order appealed from does not finally determine the action").

It makes no difference that, as plaintiffs note (Br. at 21), Supreme Court marked the February 2022 order as a "non-final disposition" (*see* Add. 25). As the district court correctly observed, this designation denoted that the overall state-court special proceeding remained ongoing for adjudication of future discovery disputes. (S.A. 56.) The marking does not remotely suggest that the order enforcing the deposition subpoena to Mr. Trump was provisional—particularly given that the order has already been appealed and Mr. Trump has already complied.[8] Indeed, in late 2020, Supreme Court had explicitly "maintain[ed] jurisdiction over this special

---

[8] Contrary to plaintiffs' contention, the First Department has not held that orders marked as "non-final" cannot be preclusive. *See* Br. at 21. The case on which plaintiffs rely, *Hudson-Spring Partnership v. P+M Design Consultants, Inc.,* denied claim-preclusive effect to an interlocutory decision in the very same case, since there was no "final judgment in a prior action." 112 A.D.3d 419, 419 (1st Dep't 2013). Here, by contrast, the February 2022 order finally enforces the subpoenas addressed therein.

proceeding" to rule on any privilege claims that might arise at depositions. (Add. 2.) Retaining jurisdiction to address potential future issues distinct from those decided in the February 2022 order does not render that order nonfinal.

The district court properly extended the February 2022 order's preclusive impact to the Trump Organization, with which Mr. Trump is in privity. (S.A. 57-58.) See *infra* at 52-53. In any event, the state proceedings generated additional final and preclusive orders against the Trump Organization as well. Most pertinent, in March 2022, Supreme Court ordered the Trump Organization, under the supervision of an e-discovery firm, to "comply in full with OAG's subpoenas" by April 15, 2022. (Add. 31.) More than a year earlier, the Trump Organization's compliance efforts had lagged, which led OAG to initiate the state-court proceeding to compel compliance. (Add. 1.) In September 2021, the court subsequently so-ordered a stipulation requiring the Trump Organization to "work diligently to comply with" OAG's document requests and allowing OAG to direct the Trump Organization to retain an outside e-discovery firm to

supervise compliance.[9] (Add. 11.) And after the Trump Organization retained an e-discovery firm at OAG's direction, Supreme Court issued its March 2022 order setting a firm deadline for compliance. Counsel has since represented that the Trump Organization's document production to OAG is complete.[10] (*See* J.A. 387-388.)

The March 2022 order compelling the Trump Organization's full compliance by a date certain thus "finally and conclusively" enforced those subpoenas. *See Bannon*, 270 N.Y. at 489 (quotation marks omitted). The Trump Organization could have asserted any objections to the document subpoenas, including its current claims in this federal lawsuit, during the state-court special proceeding. "Once there has been compliance with the subpoena, however, a motion to quash or vacate no longer is available." *Matter of Brunswick Hosp.*, 52 N.Y.2d at 339. Under New York law, the

---

[9] Plaintiffs' assertion that the September 2021 stipulation "only sets filing deadlines" (Br. at 22) is obviously incorrect given that it allowed OAG to direct the Trump Organization to retain an e-discovery firm. In any event, the March 2022 order is plainly final as to issues arising out of OAG's document demands to the Trump Organization.

[10] Supreme Court relied on this representation, supplemented by HaystackID's progress reports, when lifting the contempt order against Mr. Trump—which depended on his turning over all responsive documents within his control, including those the Trump Organization possessed. (Add. 39, 46; *see* J.A. 400.)

Trump Organization thus forfeited any further objections to the subpoenas, including its assertions that the underlying investigation is unconstitutional, by failing to raise them in state court before issuance of the final March 2022 order.

### 2. The federal claims were raised or could have been raised in the state proceedings.

The district court also correctly concluded that the state and federal actions involve the same claims for preclusion purposes. (S.A. 58-60.) "Importantly, the claim preclusion rule extends beyond attempts to relitigate identical claims." *Simmons*, 37 N.Y.3d at 111. New York's "pragmatic and flexible" transactional approach asks "whether the claims turn on facts that are related in time, space, origin, or motivation," and "whether their treatment as a unit conforms to the parties' expectations." *Id.* (quotation marks omitted). Where this standard is met, res judicata "applies not only to claims actually litigated but also to claims that could have been raised in the prior litigation." *Matter of Hunter*, 4 N.Y.3d 260, 269 (2005).

Here, plaintiffs do not and cannot dispute that the state and federal proceedings concern the same transactions. As this Court has explained,

federal and state challenges to investigative demands will regard the same claim where the actions have "overlapping facts" and "[b]oth identify the same relevant injury," such as "violation of various federal constitutional provisions and their state analogues." *Exxon Mobil*, 28 F.4th at 399. That is plainly the case here.

The state and federal proceedings "involve the same or related facts"—all arising out of OAG's investigation into the Trump Organization's financial representations during the same time period. (S.A. 59.) Indeed, in both actions, Mr. Trump asserted that testimony by former confederate Michael Cohen could not form a sufficient basis for OAG's investigation (*compare* J.A. 21-23, *with* J.A. 344-345); that the investigation had an improper purpose (*compare* J.A. 30-34, *with* J.A. 326); that it sprang from the Attorney General's alleged "political animus" and "political opposition" (*compare* J.A. 10, 20, 30, *with* J.A. 336, 338, 349); and that it was meant to retaliate against Mr. Trump's speech and views (*compare* J.A. 31-33, *with* J.A. 349). And as purported evidence of impropriety, both proceedings rely on essentially the same public comments made by the

Attorney General, mostly on the campaign trail.[11] (*Compare* J.A. 11-29, *with* J.A. 338-343.) The state courts rejected all of these claims and upheld OAG's investigation. New York's transactional approach to res judicata bars plaintiffs' attempt to relitigate in federal court claims that are based on nearly identical facts and circumstances as the claims plaintiffs already had a full and fair opportunity to litigate in state court. *See Matter of Hunter*, 4 N.Y.3d at 269.

Moreover, plaintiffs' claims in the state and federal proceedings identify "the same relevant injury," *Exxon Mobil*, 28 F.4th at 399, stemming from OAG's allegedly unconstitutional investigation. In the federal litigation, the complaint alleges that OAG's investigation is motivated by a "desire to harass" and "oppress," in violation of plaintiffs' Fourteenth Amendment due process and First Amendment free speech rights

---

[11] There is no merit to the contention that the state court "refused to entertain" constitutional challenges to OAG's conduct (Br. at 27). When the state judge noted that "'ethical questions'" about the Attorney General's public comments were "'not in front of'" him (*id.* (quoting J.A. 378)), the court was addressing Mr. Trump's counsel's suggestion that the Attorney General be referred to an ethics committee (*see* Add. 52). Arguments about the legal effects and relevance of the Attorney General's comments, including under the First and Fourteenth Amendments, were extensively aired and considered. (Add. 49-66.)

(J.A. 29-32), and that OAG's purportedly "overbroad, overreaching and irrelevant subpoenas" effect an unlawful Fourth Amendment search or seizure (J.A. 33).[12] Meanwhile, in state court, Mr. Trump moved to quash his deposition subpoena on the grounds, among others, that OAG's targeting of Mr. Trump and his "associates and companies for investigation . . . violates the Equal Protection Clauses" of the U.S. and New York Constitutions. (J.A. 336.)

Dressing up the federal claims in different labels and constitutional theories cannot avoid preclusion. *See Simmons*, 37 N.Y.3d at 111. For example, whereas Mr. Trump's state filing claimed that he was selectively prosecuted in retaliation for his political views (J.A. 349), plaintiffs' federal complaint asserts such retaliation as its own claim (J.A. 31-33). But the state and federal filings have a conjoined narrative and rest on the same basic facts. Mere "differences in legal theory" will not "permit relitigation of claims based on the same gravamen." *Matter of Reilly v. Reid*, 45 N.Y.2d 24, 29 (1978).

---

[12] The complaint's claim for abuse of process (J.A. 34-36) essentially duplicates the federal due process claim. *See Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994) ("Procedural due process forbids the use of legal process for a wrongful purpose.").

For its part, the Trump Organization lodged mainly privilege objections in state court, withholding any constitutional attacks on OAG's investigation or subpoenas.[13] (*See* Add. 1-3.) Yet as the district court correctly observed, in analyzing preclusion, "the proper inquiry is not whether the issues *have* been addressed, but rather whether the claims *could have* been raised in the state-court forum." (S.A. 58.) *See Matter of Hunter*, 4 N.Y.3d at 269.

Both Mr. Trump and the Trump Organization plainly could have raised in the state-court proceedings the constitutional defenses they now raise in federal court. For example, if the Attorney General fails to "proceed in good faith" in an investigation, the subject "can always appeal to the courts for protection." *Dunham v. Ottinger*, 243 N.Y. 423, 433-34 (1926). Thus, a recipient may seek to quash a subpoena that "subjects the witness to harassment." *Myerson v. Lentini Bros. Moving & Storage Co.*, 33 N.Y.2d 250, 256 (1973); *see Matter of St. Francis Hosp.-Poughkeepsie v. Spitzer*,

_____

[13] Although this Court need not rely for preclusion on Supreme Court's September 2020 order overruling those objections, plaintiffs' argument that this order was "never entered" (Br. at 21) ignores that a definitive judicial ruling will trigger preclusion despite the lack of "formal entry of a final judgment," *Slater v. American Min. Spirits Co.*, 33 N.Y.2d 443, 446 (1974).

284 A.D.2d 629, 630 (3d Dep't 2001) (considering whether "subpoena was issued in bad faith and for an improper purpose"). State courts also will review subpoenas for compliance with the Fourth Amendment, *see Matter of Hynes v. Moskowitz*, 44 N.Y.2d 383, 394 (1978), as well as with the First Amendment, *see Matter of Parkhouse v. Stringer*, 12 N.Y.3d 660, 668 (2009); *see also Matter of Evergreen Ass'n v. Schneiderman*, 153 A.D.3d 87, 90 (2d Dep't 2017) (entertaining company's motion to quash subpoena as a "politically motivated attack on its First Amendment right[s]"). Moreover, the standards for subpoena "overbreadth and bad faith are substantively identical under New York and federal law." *Trump v. Vance*, 977 F.3d 198, 206 n.5 (2d Cir. 2020). Claim preclusion thus obtains.

### 3. The federal and state challenges both sought essentially the same relief.

There is no merit to plaintiffs' suggestion that preclusion does not apply because the state and federal proceedings purportedly sought different relief. *See* Br. at 24-27. A second action's requesting "dissimilar or additional relief" on a previously litigated claim will not evade preclusion. *Jacobson v. Fireman's Fund Ins. Co.*, 111 F.3d 261, 265 (2d Cir. 1997) (quotation marks omitted); *see Simmons*, 37 N.Y.3d at 111. Claim preclu-

sion disallows "a second opportunity to obtain substantially the same relief" that a party "was denied in [a] prior proceeding" sharing an "essential identity." *Matter of Reilly*, 45 N.Y.2d at 31; *accord Smith v. Russell Sage Coll.*, 54 N.Y.2d 185, 192 (1981).

Here, plaintiffs gain no traction from the proffered distinction that the state proceeding focused on individual subpoenas whereas this federal case assails "the constitutionality of the investigation" (Br. at 24). To begin, the distinction is false. In early 2022, in seeking to forestall his deposition, Mr. Trump did not contend that the deposition subpoena lacked a factual predicate or that his testimony would be irrelevant to the inquiry; instead, he reached back in time to 2019, maintaining that OAG's "investigation [wa]s predicated on improper animus" and therefore void from its inception. (J.A. 326.) As Mr. Trump told the state court, "once it is established" that the New York Attorney General "had unconstitutional motives for investigating," OAG could not take "any action, including the issuance of subpoenas." (J.A. 348.) These arguments placed the validity of OAG's investigation squarely at issue in state court, and the state court rejected the line of attack.

Moreover, this federal case sought essentially the same relief that Mr. Trump sought in state court: to block enforcement of the subpoenas. *See Matter of Reilly*, 45 N.Y.2d at 31 (preclusion applies where second action seeks "to obtain substantially the same relief" as first action). Although plaintiffs claim here to attack OAG's investigation, a State "violates no constitutional rights by merely investigating" whether legal violations have occurred. *Ohio Civil Rights Comm'n v. Dayton Christian Schs., Inc.*, 477 U.S. 619, 628 (1986). An investigative *subpoena* is what, if anything, inflicts cognizable injury. *See Exxon Mobil*, 28 F.4th at 399. Recognizing as much, the complaint here decries OAG's "unwarranted subpoenas" (J.A. 9) and cites the subpoenas as being tools of harassment (J.A. 32-34). And mimicking the position taken in state court, plaintiffs argue here that "should this Court find that [OAG]'s investigation was initiated and/or carried on for an improper purpose, the investigation in its entirety is *per se* unconstitutional." Br. at 28.

Indeed, the timing of this federal case makes clear that its goal was primarily, if not exclusively, the same as that of Mr. Trump's state-court motion to quash: to thwart OAG's deposition subpoena to Mr. Trump. (*See* J.A. 28.) By the time plaintiffs filed this federal lawsuit in December

2021, OAG's investigation had been ongoing for nearly *three years*, in which OAG had obtained close to one million documents from the Trump Organization and interviewed dozens of that entity's officers, employees, and outside professionals.

Tellingly, OAG subpoenaed documents and testimony from Mr. Trump himself on December 1, 2021. (*See* J.A. 54-55, 251-252.) Less than three weeks later, before the return date for his testimony, Mr. Trump filed this action "to immediately cease . . . all ongoing investigations." (J.A. 36.) He then sought a preliminary injunction to that end. (J.A. 39-43.) And he separately moved in state court to quash the deposition subpoena (while agreeing to produce requested documents). (Add. 18-27.) The record thus makes clear that in both forums, at the eleventh hour, Mr. Trump assailed the investigation to try to block the subpoena for his testimony. Under New York's pragmatic approach to res judicata, the state courts' rejection of Mr. Trump's challenge precludes relitigating the same claim in federal court. *See Simmons*, 37 N.Y.3d at 111-12.

Ultimately, the proposed distinction between "quash[ing] certain subpoenas" and "stop[ping] the investigation *as a whole*" (Br. at 25) is a distinction without a difference. An order enjoining an investigation is

merely different in degree, but not in kind, from one quashing an investigative request, particularly when based on the same overarching assertion that the whole investigation cannot stand. *See O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 357-58 (1981) (preclusion applies if one action is an "aggravated form of" another). This case is thus distinguishable from those concluding that a second action was not precluded to the extent it sought an altogether different kind of remedy that the prior forum could not award. *See, e.g.*, *Parker v. Blauvelt Volunteer Fire Co.*, 93 N.Y.2d 343, 348-49 (1999) (holding § 1983 damages action not precluded by C.P.L.R. article 78 proceeding in which damages were unavailable).

As the district court observed, plaintiffs have identified no formal barriers that would have prevented the state court from awarding relief approximating the injunction sought here. (S.A. 61.) *See Jacobson*, 111 F.3d at 265. To the contrary, New York statutory law provides that "[r]easonable conditions may be imposed upon the granting or denial of a motion to quash" a subpoena. C.P.L.R. 2304. The court may thus "impose any condition the court finds just." David D. Siegel & Patrick M. Connors, *New York Practice* § 384 (6th ed. June 2022 update) (Westlaw); *see also Exxon Mobil*, 28 F.4th at 400-01 (deeming injunction on investigation,

sought in federal § 1983 action, to be "equally available in state court," which could have granted protective order); *Carlisle v. Bennett*, 268 N.Y. 212, 218 (1935) ("motion to quash, vacate or modify the subpoenas" provided "adequate remedy at law" to party suing to enjoin OAG investigation).

Finally, contrary to plaintiffs' suggestion, other alleged procedural restrictions on New York subpoena-enforcement proceedings do not diminish their preclusive effect. *See* Br. at 24. Although these proceedings are treated akin to motions for summary judgment, discovery is available with leave of court, and trials are authorized to resolve disputed factual issues. *See* C.P.L.R. 408-410.[14] Supreme Court denied requests for discovery and a hearing about OAG's investigation and motives, since the investigation was plainly well founded from its outset, following Mr. Cohen's congressional testimony, and increasingly well supported as

---

[14] For the idea that such proceedings entail other "'profoundly restrict[ed]'" procedures, plaintiffs cite an inapt decision analyzing residential eviction proceedings under New York's Real Property Actions and Proceedings Law. *See* Br. at 24 (quoting *Zenila Realty Corp. v. Masterandrea*, 123 Misc. 2d 1, 5 (Civ. Ct., N.Y. County 1984)).

OAG continued to uncover evidence of misstatements and omissions in the Trump Organization's financial reporting. (Add. 23; *see* J.A. 348-349.)

In analyzing claim preclusion, "New York courts look to whether a claim has been 'brought to a final conclusion,' not to whether a full evidentiary hearing has been held." *Bartel Dental*, 786 F.2d at 489 (quoting *O'Brien*, 54 N.Y.2d at 357); *see id.* (according preclusive effect to order in special proceeding decided without hearing). Allowing plaintiffs to delve into the internal investigatory deliberations of OAG to relitigate claims already raised and decided in state court would amplify "the cost and vexation" of endless litigation that res judicata is meant to prevent. *See Allen*, 449 U.S. at 94. Accordingly, the Court should affirm the district court's dismissal.

## B. Issue Preclusion Independently Bars Plaintiffs' Federal Lawsuit.

Collateral estoppel, or issue preclusion, independently bars plaintiffs' federal claims. Although the district court did not rule on it, the Court may affirm on this alternative legal ground. *See Booking v. General*

*Star Mgmt. Co.*, 254 F.3d 414, 418-19 (2d Cir. 2001) (deciding "purely legal issue" raised but not resolved in district court).[15]

Under collateral estoppel, "issues actually decided in valid state-court judgments may well deprive plaintiffs of the 'right' to have their federal claims relitigated in federal court." *San Remo Hotel, L.P. v. City & County of San Francisco*, 545 U.S. 323, 342 (2005). That is so because adverse findings "are entitled to the same preclusive effect in a subsequent federal § 1983 suit as they enjoy in the courts of the State where the judgment was rendered." *Migra*, 465 U.S. at 83. New York will bar relitigation of an issue that "is identical to an issue which was raised, necessarily decided and material in the first action," if "the plaintiff had a full and fair opportunity to litigate the issue." *Parker*, 93 N.Y.2d at 349.

Collateral estoppel applies here because all of the complaint's claims depend on two key issues—each of which was fully litigated and neces-

---

[15] In reply briefing below, OAG contended that Supreme Court's February 2022 order—issued a few days before the reply brief was filed—enforcing the deposition subpoena to Mr. Trump precluded plaintiffs "from establishing that OAG's Investigation is unlawful, which is a necessary element of each of their causes of action." Dist. Ct. ECF No. 24, at 8. The district court then directed plaintiffs to submit a supplemental brief on that question (ECF No. 29), which they did (ECF No. 30).

sarily decided in the state-court proceedings. *First*, the federal claims are based on the contention that OAG's investigation has "an improper purpose," i.e., to harass and oppress Mr. Trump and his business due to "political animus." (J.A. 30, 32, 34-35.) *Second*, and relatedly, the federal claims are premised on the theory that OAG's investigation and subpoenas lack a "legally sufficient basis." (J.A. 29; *see* J.A. 32-35.)

Mr. Trump raised and litigated these exact same two issues in the state proceeding. There, Mr. Trump alleged that OAG's investigation violated the Equal Protection Clause (J.A. 336-349) because its purpose was to punish him for his political views (J.A. 338) and because it lacked a sufficient factual basis (J.A. 344-346). To portray OAG's civil subpoenas as an improper effort to garner evidence for a criminal case, Mr. Trump separately argued that OAG's "investigation is predicated on improper animus." (J.A. 326.) And like the federal claims here, these arguments in the state proceeding rested almost entirely on the New York Attorney General's public comments—the majority of which addressed prior federal policies or public reports of potentially illegal conduct by Mr. Trump or the Trump Organization. See *infra* at 61-62. Indeed, Mr. Trump's state filings appended lengthy charts listing essentially the

49

same public comments on which the federal complaint is based. *See* NYSCEF Doc. No. 639 (timeline of reproduced comments), No. 641 (spreadsheet with text of comments).

The state courts necessarily decided these issues by squarely rejecting them. In upholding the subpoenas, Supreme Court explicitly considered whether "public statements made by [the] Attorney General" showed "the 'impropriety' of her investigation." (Add. 21.) And the court found that "the impetus for the investigation was not personal animus" or "campaign promises, but was sworn congressional testimony by former Trump associate Michael Cohen that respondents were 'cooking the books.'" (Add. 23.) In addition, the court's review of "thousands of documents responsive to OAG's prior subpoenas" confirmed that OAG had "a sufficient basis for continuing its investigation," reinforcing that the inquiry was rooted in "facts and law" rather than "personal animus." (Add. 22.) The Appellate Division subsequently affirmed, finding that "the investigation was lawfully initiated at its outset and well founded," and that any "political campaign and other public statements" did not establish impropriety. (Add. 42-43.)

Plaintiffs cannot plausibly contend that they lacked a fair opportunity to litigate these issues, when they chose to raise the same arguments and rely on the same evidence in both the state and federal proceedings. A party cannot base a § 1983 action on "virtually a verbatim repetition" of allegations from a special proceeding that resulted in adverse rulings on "dispositive factual and legal issues." *Parker*, 93 N.Y.2d at 350; *see also Allen*, 449 U.S. at 104.

*Temple of Lost Sheep Inc. v. Abrams* exemplifies this principle. *See* 930 F.2d 178 (2d Cir. 1991). There, subpoena recipients brought a § 1983 suit claiming that OAG, two private informants, and a newspaper had conspired to injure the plaintiffs with a bad-faith investigation and negative media reporting. The plaintiffs then cross-moved in state court to quash the subpoenas, alleging that the subpoenas were the product of an unlawful conspiracy, without tying that allegation to a § 1983 claim.[16]

---

[16] As this Court recounted, the district court stayed the federal case to permit the plaintiffs, if successful in state court, to return to federal court "to receive monetary or injunctive relief for any constitutional violations." *Temple of Lost Sheep*, 930 F.2d at 184. But this Court did not consider or decide whether the state court could have enjoined OAG's investigation as unlawful, nor was there any need to do so given the demands for monetary and injunctive relief against other parties. *See id.* at 181, 184.

*Id.* at 180-81. The state court "found that there was 'no basis' for concluding that the Attorney General was acting in bad faith in pursuing the investigation." *Id.* at 184. And this Court held that because the subpoena recipients "chose to place the conspiracy allegations, which were central to their section 1983 claims, directly in issue in the state court proceeding," the state court's adverse finding precluded § 1983 relief. *Id.* at 184-85. So too here for plaintiffs' claim of improper political motive.

Issue preclusion applies to both Mr. Trump and the Trump Organization, even though the Trump Organization was not a party to Mr. Trump's unsuccessful motion to quash. *See* Br. at 26. As the district court correctly determined for claim preclusion, and as plaintiffs do not dispute, Mr. Trump and the Trump Organization are in privity (S.A. 57-58)—extending issue preclusion to them both. A person "may be bound by a prior judgment to which he was not a party," if the person's "interests are represented by a party to the action." *Watts v. Swiss Bank Corp.*, 27 N.Y.2d 270, 277 (1970); *see also Buechel v. Bain*, 97 N.Y.2d 295, 304 (2001) (noting fact-specific nature of privity inquiry).

In these proceedings, Mr. Trump represents the interests of his wholly owned business. *See Vance*, 977 F.3d at 203-04 (noting fact of

ownership). Indeed, the federal complaint alleges that "Plaintiffs"—including Mr. Trump—produced millions of pages of the Trump Organization's documents. (J.A. 26.) Representing both parties, the same attorney certified in state court that Mr. Trump controlled the Trump Organization. (J.A. 387, 400.) Mr. Trump's state filing assailed OAG's investigation of the Trump Organization. (J.A. 317, 326.) And the Trump Organization seeks a federal forum here based on Mr. Trump's formerly being President. *See* Br. at 30-33. Privity is thus evident, and issue preclusion requires dismissal of the federal complaint. *See In re Teltronics Servs., Inc.*, 762 F.2d 185, 190-91 (2d Cir. 1985) (holding company in privity with individual who was its founder, president, chairman, and shareholder, and with whom its interests in litigation were intertwined).

# POINT II

## THE DISTRICT COURT PROPERLY HELD THAT *YOUNGER* ABSTENTION WARRANTS DISMISSAL

Alternatively to preclusion, the district court properly dismissed this case under the *Younger* abstention doctrine. (S.A. 36-51.) When "*Younger* applies, abstention is mandatory." *Diamond "D" Constr.*, 282 F.3d at 197; *Schlagler v. Phillips*, 166 F.3d 439, 441 (2d Cir. 1999). Here, abstention is warranted.

## A. The District Court Correctly Abstained in Light of the State Court's Contempt Order Against Mr. Trump.

While federal courts "ordinarily should entertain" actions within their jurisdiction, under the *Younger* abstention doctrine, they "must refrain from" interfering with (i) criminal prosecutions, (ii) civil enforcement actions "akin to criminal prosecutions," and (iii) "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72-73 (2013) (quotation marks omitted). The district court correctly determined that developments in state court "implicate[d] *Sprint*'s third category." (S.A. 43.)

54

As relevant here, in April 2022, Supreme Court held that "Mr. Trump ha[d] willfully disobeyed a lawful order" to comply fully with OAG's document subpoena, by tendering zero documents, a set of "wholly improper" objections, and a "woefully inadequate" affirmation failing to describe a "diligent search" for responsive material. (Add. 33-34.) The court levied a $10,000 daily fine until Mr. Trump purged the contempt. (Add. 34.) Mr. Trump appealed, and the First Department refused to stay the fine pending appeal. (Add. 37-40.) Mr. Trump eventually purged the contempt, while paying $110,000—the total accrued fine—to OAG to hold in escrow during the appeal, which remains pending. (Add. 39-40, 46.) Mr. Trump has another month in which to perfect his appeal.

*Sprint*'s third category prohibits federal courts "from interfering with core state court civil administrative processes, powers, and functions that allow the state courts to adjudicate the matters before them and enforce their judgments." *Cavanaugh v. Geballe*, 28 F.4th 428, 434 (2d Cir. 2022). New York's "contempt power lies at the core of the administration of [the] State's judicial system." *Juidice v. Vail*, 430 U.S. 327, 335 (1977) (citing *Ketchum v. Edwards*, 153 N.Y. 534 (1897)). The district court thus correctly abstained since voiding OAG's investigation would

"hinder the [New York] court's basic authority to enforce its orders," *Cavanaugh*, 28 F.4th at 434.

As the district court further concluded, the three *Middlesex* criteria reinforce abstention's propriety. (S.A. 43-44.) These "additional" but not "dispositive" factors are whether a state proceeding (i) is pending, (ii) implicates an important state interest, and (iii) affords an adequate opportunity for judicial review of federal objections. *Falco v. Justices of the Matrimonial Parts of Sup. Ct. of Suffolk County*, 805 F.3d 425, 427 (2d Cir. 2015); *see Middlesex*, 457 U.S. at 432. On the first factor, Mr. Trump's appeal of the contempt order is ongoing. *See Kirschner v. Klemons*, 225 F.3d 227, 234 (2d Cir. 2000) (holding that *Younger* abstention persists through available state appeals). On the second, "federal-court interference with the State's contempt process" for "disobedience of a court-sanctioned subpoena" offends the State's crucial interest in enforcing its judgments. *Juidice*, 430 U.S. at 335-36. Indeed, the State's interest here is at its zenith, where OAG "is representing the People of the State at large" by seeking to enforce laws against fraud. *People v. Bunge Corp.*, 25 N.Y.2d 91, 100 (1969). And on the third factor, New York's courts will adjudicate federal defenses to subpoena enforcement (see *supra* at 40-41),

56

as well as to contempt rulings, *see Juidice*, 430 U.S. at 337 (calling this proposition "abundantly clear"); *see also El-Dehdan v. El-Dehdan*, 26 N.Y.3d 19, 37-38 (2015).

Plaintiffs' various counterarguments are meritless. *See* Br. at 11-15. For example, while the contempt order postdated this case's filing (*id.* at 13), federal courts may consider such "subsequent development[s]" when analyzing whether to abstain, *Middlesex*, 457 U.S. at 436; *see Burnett v. Physician's Online, Inc.*, 99 F.3d 72, 77 (2d Cir. 1996) ("[T]he issues that bear on any possible abstention may be affected by intervening events."). Abstention is permissible "before any proceedings of substance on the merits have taken place in the federal court." *Hicks v. Miranda*, 422 U.S. 332, 349 (1975). Here, as the district court noted, no substantive proceedings on the merits of the federal claims had yet occurred below. (S.A. 41-42.) Litigating "whether abstention is appropriate" does not count. *Middlesex*, 457 U.S. at 437.

Plaintiffs also miss the mark in stressing that this § 1983 action does not specifically challenge the state-court contempt order or New York's contempt processes. *See* Br. at 13-14; *cf. Juidice*, 430 U.S. at 331 (noting that federal plaintiffs contested validity of New York's statutory

scheme for contempt). This argument ignores that plaintiffs' third cause of action directly attacks the document subpoena that precipitated the contempt order. (*See* J.A. 33-34.) At any rate, whether in a challenge to the contempt order or an attack on the underlying investigation, granting relief "runs the risk of rendering that order 'nugatory,'" offending weighty state interests. (S.A. 42 (quoting *Juidice*, 430 U.S. at 336 n.12).) For example, one issue in Mr. Trump's pending state appeal is whether New York courts have inherent authority to devise remedies for civil contempt. *See* Mem. in Supp. of Mot. for Stay at 8-14, No. 2022-01812 (1st Dep't May 2, 2022). Hearing this federal case could short-circuit that inquiry and undermine the state court's determination that such power "'lies at the core of the administration of a State's judicial system,'" *Cavanaugh*, 28 F.4th at 434 (quoting *Juidice*, 430 U.S. at 335).

Moreover, although Mr. Trump has purged the contempt finding (Br. at 12, 14), the terms on which he did so reinforce the propriety of abstention. The outcome of Mr. Trump's pending state appeal will dictate whether OAG must return the $110,000 escrowed fine or whether that sum will inure to the State's General Fund. A federal ruling unwinding the investigation could prompt that money's return to Mr. Trump, "in

practical effect indistinguishable" from a prohibited "award of damages against the State," *Edelman v. Jordan*, 415 U.S. 651, 668 (1974); *see also id.* at 669 (Eleventh Amendment bars federal injunction refunding sum paid "under protest" to state agency).

In any event, even if the contempt's lifting diminished one basis for *Younger* abstention, the underlying investigation giving rise to the ongoing state proceedings may produce another. Now that Mr. Trump has given his deposition, and he and the Trump Organization purport to have completed their document productions, OAG's investigation has reached a natural inflection point. As has been publicly reported, the stage is set for a potential civil enforcement action alleging that the Trump Organization and, possibly, individuals involved in the business engaged in fraud or illegality under Executive Law § 63(12).[17] Such an enforcement proceeding would plainly qualify for *Younger* abstention. *See Sprint*, 571 U.S. at 79-80. If a state enforcement action is filed, OAG will promptly notify the Court.

---

[17] *See* Ben Protess et al., *N.Y. Attorney General May Sue Trump After Rejecting Settlement Offer*, N.Y. Times (Sept. 15, 2022).

**B.    The District Court Properly Found the Narrow "Bad Faith" Exception to *Younger* Abstention Inapplicable.**

*Younger* abstention admits of "narrow exceptions," including where the plaintiff demonstrates that "the state proceeding is motivated by a desire to harass or is conducted in bad faith." *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 611 (1975). "To invoke this exception, the federal plaintiff must show that the state proceeding was initiated with and is animated by a retaliatory, harassing, or other illegitimate motive." *Diamond "D" Constr.*, 282 F.3d at 199. This so-called "bad faith" exception applies "only when the state proceeding is brought with no legitimate purpose." *Id.* at 200. Here, the district court properly found that plaintiffs "have failed to demonstrate that the narrow bad faith exception applies." (S.A. 49.)

As an initial matter, issue preclusion bars plaintiffs' arguments about the "bad faith" exception to *Younger* abstention. Like all of plaintiffs' claims, their theory of bad faith hinges on public comments by Attorney General James that allegedly reveal "subjective animus" against Mr. Trump. Br. at 16-19. Yet as established (see *supra* at 47-52), the state courts already considered these same comments and plaintiffs' arguments about them in finding that OAG had validly begun investigating the Trump Organization based on an insider's whistleblower testimony—not

60

on "personal animus" or "campaign promises" (Add. 23; *see also* Add. 42-43).

These prior state-court determinations preclude a finding of bad faith in

this case. *See Temple of Lost Sheep*, 930 F.2d at 184-85; *Parker*, 93 N.Y.2d

at 350.

At any rate, plaintiffs' theory of bad faith fails on its own terms.

There is no plausible basis to conclude that OAG lacked a "reasonable

expectation of obtaining a favorable outcome" in its subpoena-compliance

efforts—when OAG repeatedly obtained such favorable outcomes. *See*

*Diamond "D" Constr.*, 282 F.3d at 199 (quotation marks omitted). The

state courts consistently granted OAG's motions to compel, finding that

OAG was acting properly and with the requisite lawful basis for its

investigative requests. (S.A. 46.) *See, e.g.*, *Matter of Libre by Nexus*, 181

A.D.3d at 488.

As the state courts and district court below correctly concluded, the

public comments by Attorney General James do not transform OAG's

well-founded fraud investigation into a means of retaliation. The district

court expressly found that "the subpoena enforcement proceeding has a

legitimate factual predicate" (S.A. 47, 49) and that the record failed to

establish "any causal connection" between Mr. Trump's political views

and OAG's investigation or subpoenas (S.A. 48). These findings withstand clear-error review. *See Cullen v. Fliegner*, 18 F.3d 96, 104 (2d Cir. 1994).

Indeed, there was nothing improper about the Attorney General's comments. They generally concerned either (i) official Trump Administration actions, often in the context of litigation between States and the federal government about those actions; or (ii) already public allegations of financial or other improprieties by Mr. Trump, his businesses, or his associates.[18] Given the clear factual basis for OAG's investigation and the copious evidence of fraud that it has uncovered, the district court correctly determined that *Younger* abstention applied. *Cf. Trump v. Hawaii*, 138 S. Ct. 2392, 2418 (2018) (holding that past public statements did not

---

[18] For example, commentary that New York should "'stand up'" to (J.A. 16) or "'take on'" (J.A. 14) or "'definitely . . . sue'" (J.A. 19) the Trump Administration on behalf of "'vulnerable populations'" (J.A. 25) referred to actual or potential legal challenges to governmental actions (*see, e.g.*, J.A. 14 (referencing lawsuit challenging ban on entry into United States by residents of Muslim-majority nations)). And other statements alluded to events that were publicly reported, and in some cases were already being investigated—including a then-ongoing federal inquiry covering Mr. Trump's business affairs, and press accounts of Mr. Trump's suspected tax irregularities. (*See, e.g.*, J.A. 18 (urging IRS or OAG "'to follow the facts wherever they may lead'").)

62

undermine facially neutral federal action in "a matter within the core of executive responsibility").

Finally, as the district court properly concluded, plaintiffs have not identified a disputed factual issue requiring an evidentiary hearing. (S.A. 50.) Nobody disputes that Attorney General James made the (legally innocuous) comments at issue. And plaintiffs offered no evidence to rebut OAG's sworn declaration that the investigation in fact began in March 2019, after OAG learned that the Trump Organization had sent financial counterparties the valuations about which Mr. Cohen had testified the month before. (*See* J.A. 49.) Plaintiffs' request for a federal court to conduct an evidentiary hearing to probe OAG's internal deliberations is plainly an improper attempt to harass investigators.

## C.  Mr. Trump's Status as the Former President Does Not Vitiate Abstention.

The district court correctly ruled that Mr. Trump's status as the former President does not warrant special treatment that would override abstention and guarantee a federal forum to attack OAG's investigation. (S.A. 62-63.)

In arguing otherwise, plaintiffs mainly rely on *Trump v. Vance*, 140 S. Ct. 2412 (2020). But that case provides no support to plaintiffs. *Vance* rejected the idea that "a state grand jury subpoena seeking a President's private papers must satisfy a heightened need standard." *Id.* at 2429. Rather, the Court explained, a President faced with such a subpoena "may avail himself of the same protections available to every other citizen," including by moving to quash "on any grounds permitted by state law." *Id.* at 2430. Although *Vance* added that federal courts might intervene upon a finding "'that the state proceeding is motivated by a desire to harass or is conducted in bad faith,'" *id.* at 2428 (quoting *Huffman*, 420 U.S. at 611), this passage "simply set forth the bad faith exception to *Younger* abstention," as the district court recognized (S.A. 62). For the reasons already given, that exception does not apply here. See *supra* at 60-63.

Moreover, there can be no claim here that the state investigation impedes (or attempts to impede) the President's official duties—which "state judges and prosecutors" may not do. *Vance*, 140 S. Ct. at 2428; *see id.* at 2430-31 (elaborating that this claim would extend to actual or attempted inference with Article II duties). Mr. Trump "has been out of

64

office for over one year." (S.A. 63.) OAG's investigation cannot impede presidential duties that Mr. Trump no longer has.

Other decisions on which plaintiffs rely are inapposite. *See* Br. at 31-33. *Nixon v. Fitzgerald* held that a President has "immunity from damages liability for acts within the 'outer perimeter' of his official responsibility." 457 U.S. 731, 756 (1982). That doctrine does not immunize Presidents, much less former Presidents, from investigation into their private conduct. *See Vance*, 140 S. Ct. at 2426. And *Clinton v. Jones* observed that even Presidents have been able to sit for civil testimony without disrupting their official duties. 520 U.S. 681, 708-09 (1997). There is no plausible reason why Mr. Trump, who is not a federal official, could not sit for a deposition. Indeed, he already has done so.

Finally, plaintiffs also misplace their reliance on the D.C. Circuit's decision in *Trump v. Mazars USA, LLP*, 39 F.4th 774 (D.C. Cir. 2022). There, after Mr. Trump's presidency had ended, the D.C. Circuit applied on remand "special considerations" that the U.S. Supreme Court had announced for evaluating a Congressional Committee's request for then-President Trump's personal information. *See id.* at 782. Here, unlike in *Mazars*, Mr. Trump filed this lawsuit after leaving office, there has been

65

no remand "for application of" a specified test, *id.* at 781, and there is no material difference in legal standards from which to select. Nothing guarantees a federal forum in these circumstances.[19]

---

[19] If this Court were to hold that neither preclusion nor *Younger* abstention applies, then the case should be remanded for consideration of, among other things, *Colorado River* abstention and whether the complaint states a plausible claim on the merits—issues that the district court did not need to reach. *See Burnett*, 99 F.3d at 77 (this Court will not perform "initial balancing" of *Colorado River* factors).

66

## CONCLUSION

The judgment of the district court should be affirmed.

Dated:  New York, New York
        September 20, 2022

                              Respectfully submitted,

                              LETITIA JAMES
                                *Attorney General*
                                *State of New York*
                              Attorney for Appellee


                         By:  */s/ Eric Del Pozo*
                              ERIC DEL POZO
                              Assistant Solicitor General

BARBARA D. UNDERWOOD              28 Liberty Street
  *Solicitor General*            New York, NY 10005
JUDITH N. VALE                   (212) 416-8019
  *Deputy Solicitor General*
ERIC DEL POZO
  *Assistant Solicitor General*
      *of Counsel*

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a) of the Federal Rules of Appellate Procedure, Kelly Cheung, an employee in the Office of the Attorney General of the State of New York, hereby certifies that according to the word count feature of the word processing program used to prepare this brief, the brief contains 12,747 words and complies with the typeface requirements and length limits of Rule 32(a)(5)-(7) and Local Rule 32.1.


 /s/ Kelly Cheung

# Addendum

# TABLE OF CONTENTS

**Page**

Decision & Order on Motion, dated Sept. 23, 2020 (N.Y. Sup. Ct.) ....ADD1

Decision & Order on Motion, dated Oct. 7, 2020 (N.Y. Sup. Ct.)........ADD4

Decision & Order on Motion, dated Dec. 15, 2020 (N.Y. Sup. Ct.) .....ADD6

Stipulation & Order, dated Sept. 2, 2021 (N.Y. Sup. Ct.)...........ADD10

Decision & Order on Motion, dated Feb. 17, 2022 (N.Y. Sup. Ct.) ...ADD18

Stipulation & Order, dated Mar. 3, 2022 (N.Y. Sup. Ct.) ...........ADD26

Order re: Trump Organization Subpoena Response,
dated Mar. 28, 2022 (N.Y. Sup. Ct.).............................................ADD29

Decision & Order on Motion, dated Apr. 26, 2022 (N.Y. Sup. Ct.) ...ADD32

Opinion & Order, dated Apr. 29, 2022 (N.Y. Sup. Ct.) ..............ADD35

Order re: Interim Relief,
dated May 3, 2022 (N.Y. App. Div., 1st Dep't) ...........................ADD37

Supplemental Decision & Order on Motion,
dated May 11, 2022 (N.Y. Sup. Ct.)............................................ADD39

Decision & Order,
dated May 26, 2022 (N.Y. App. Div., 1st Dep't) .........................ADD41

Order, dated June 14, 2022 (N.Y. Ct. App.) ...............................ADD45

Supplemental Decision & Order on Motion,
dated June 29, 2022 (N.Y. Sup. Ct.)...........................................ADD46

Excerpts from Hearing Transcript,
dated Feb. 17, 2022 (N.Y. Sup. Ct.)...........................................ADD47

i

FILED: NEW YORK COUNTY CLERK 09/24/2020 04:44 PM
NYSCEF DOC. NO. 254

INDEX NO. 451685/2020
RECEIVED NYSCEF: 09/23/2020

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:  **HON. ARTHUR F. ENGORON**

*Justice*

PART  **IAS MOTION 37EFM**

--------------------------------------------------------------------------X

THE PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK,

Petitioner,

- v -

THE TRUMP ORGANIZATION, INC., DJT HOLDINGS LLC, DJT HOLDINGS MANAGING MEMBER LLC, SEVEN SPRINGS LLC, ERIC TRUMP, CHARLES MARTABANO, MORGAN, LEWIS & BOCKIUS LLP, SHERI DILLON,

Respondents.

--------------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 451685/2020 |
| MOTION DATE | 09/23/2020, 08/24/2020 |
| MOTION SEQ. NO. | 001, 002 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 001) 3, 4, 5, 6, 7, 8, 182, 191, 198, 200, 212, 213, 214, 218, 220, 222, 226, 227, 230, 231, 249, 250, 251, 252

were read on this motion to                                   SEAL                                   .

The following e-filed documents, listed by NYSCEF document number (Motion 002) 9, 10, 11, 12, 183, 192, 199, 215, 216, 217, 219, 223, 224, 225, 232, 233, 234, 235, 236, 237, 239, 240, 241, 244, 245, 246, 247, 253

were read on this motion                         TO COMPEL DISCLOSURE                         .

Upon the foregoing documents, and following oral argument heard before this Court on September 23, 2020, it is hereby ordered that petitioner's motion to seal is granted, and petitioner's motion to compel disclosure is granted in part as set forth herein.

In this special proceeding, petitioner, the People of the State of New York, by Letitia James, Attorney General of the State of New York, seeks to compel the production of documents and testimony allegedly relevant to its ongoing investigation into potential fraud or illegality by respondent the Trump Organization and related entities. Specifically, petitioner is investigating whether the Trump Organization improperly inflated the value of certain of its assets on various financial statements to obtain tax and other financial benefits.

Preliminarily, none of the opposition papers that the multiple respondents filed contains an affidavit from anyone with personal knowledge of the factual matters at issue. Accordingly, the opposition papers that  respondents submitted are not in admissible form. Zuckerman v City of New York, 49 NY2d 557, 560 (1980). That fact alone arguably justifies granting the petition in its entirety.

451685/2020  PEOPLE OF THE STATE OF vs. TRUMP ORGANIZATION, INC.
Motion No.  001 002

Page 1 of 3

1 of 3
**ADD1**

FILED: NEW YORK COUNTY CLERK 09/24/2020 04:44 PM

NYSCEF DOC. NO. 254

INDEX NO. 451685/2020

RECEIVED NYSCEF: 09/23/2020

Petitioner has met its burden of demonstrating the need to submit the Second Affirmation of Matthew Colangelo *in camera* so as not to prejudice its ongoing investigation. Moreover, petitioner and respondents have demonstrated good cause for the sealing of these proceedings pursuant to Rule 216.1(a) of the Uniform Rules for New York State Trial Courts. Mosallem v Berenson, 76 AD3d 345, 348 (1st Dep't 2010). Accordingly, the Clerk is hereby directed to seal those documents that the parties have designated for sealing.

Respondent Eric Trump was first served on May 26, 2020 with a subpoena for his testimony. After initially agreeing to be deposed on July 22, 2020, Mr. Trump subsequently withdrew his commitment to appear. Mr. Trump now waives any objection to petitioner's deposing him, but he seeks to delay his deposition until after Election Day, November 3, 2020. This Court finds that application unpersuasive; Mr. Trump cites no authority in support of his request, and, in any event, neither petitioner nor this Court is bound by the timelines of the national election. Accordingly, this Court hereby orders Eric Trump to appear to be deposed no later than October 7, 2020.

As petitioner has properly demonstrated, the Trump Organization, although the privilege holder of any attorney-client privilege at issue here, is not permitted to attend any depositions that petitioner conducts in this matter. Petitioner has already permitted the individual attorney for deponent to be present. However, to the extent that these depositions will require rulings on privilege, this Court will maintain jurisdiction over this special proceeding, and any of the parties may contact the Court in real time to obtain any necessary rulings as the depositions proceed.

Accordingly, the depositions, or continued depositions, of Sheri Dillion, Charles Martabano, and Alan Weisselberg (to the extent that petitioner still seeks them) are ordered to be conducted no later than October 23, 2020.

Finally, with respect to petitioner's motion to compel document production, this Court finds as follows. (1) The Trump Organization has expressly waived privilege as to all documents responsive to subpoenas that Cushman & Wakefield possesses. Accordingly, all such documents that Cushman & Wakefield possesses are to be produced to petitioner by October 2, 2020. (2) Respondent Charles Martabano has waived privilege by failing to produce, despite repeated opportunities and attempts, an adequate privilege log. See Anonymous v High Sch. For Envtl. Studies, 32 AD3d 353, 359 (1st Dep't 2006) (defendants' failure to supply privilege log amounts to waiver of any claim of privilege for documents sought). That Martabano is a solo practitioner is irrelevant to the rule. Accordingly, Charles Martabano is hereby ordered to produce, by October 2, 2020, all documents that he possesses that are responsive to petitioner's subpoena. (3) This Court orders respondent Morgan Lewis & Bockius to turn over, by October 2, 2020, all documents that they have identified as "settlement privileged." This Court rejects the applicability of any "settlement privilege" in this proceeding, but, in any event, petitioner has easily demonstrated that the documents sought are material and necessary to its investigation. (4) This Court orders Morgan Lewis & Bockius to produce to petitioner, by October 2, 2020, all documents related to the "preliminary valuations" of the Seven Springs Easement, as documents relating to a preliminary valuation are of a business, and not legal, nature. (5) This Court orders all respondents to turn over, by October 2, 2020, any emails on which Donald Bender is copied, as disclosure to a third-party waives any privilege. (6) Any documents sought in the subpoenas

451685/2020   PEOPLE OF THE STATE OF vs. TRUMP ORGANIZATION, INC.                   Page 2 of 3
Motion No.  001 002

FILED: NEW YORK COUNTY CLERK 09/24/2020 04:44 PM

NYSCEF DOC. NO. 254

INDEX NO. 451685/2020

RECEIVED NYSCEF: 09/23/2020

not already discussed herein are hereby ordered to be produced to the Court by October 2, 2020 for an *in camera* inspection. All documents submitted to the Court should be bate-stamped with a detailed privilege log that includes a place for the Court to mark its individual rulings.

Arthur
F_
Engoron

Digitally signed by Arthur F_ Engoron
DN: C=US, OU=NY County Supreme Court, O=New York State Courts, CN=Arthur F_ Engoron, E=AENGORON@NYCOURTS.GOV
Reason: I authored, approved, am ordering, and/or officially issuing it.
Location: 60 Centre Street, NYC, 10007, Room 418
Date: 2020-09-23 16:28:27
Foxit PhantomPDF Version: 9.7.2

| 9/23/2020 | | | | | |
|---|---|---|---|---|---|
| **DATE** | | | | **ARTHUR F. ENGORON, J.S.C.** | |

| CHECK ONE: | | [X] | CASE DISPOSED | | | [ ] | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|---|---|
| | | [ ] | GRANTED | [ ] | DENIED | [X] | GRANTED IN PART | [ ] | OTHER |
| APPLICATION: | | [ ] | SETTLE ORDER | | | [ ] | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | [ ] | INCLUDES TRANSFER/REASSIGN | | | [ ] | FIDUCIARY APPOINTMENT | [ ] | REFERENCE |

**451685/2020  PEOPLE OF THE STATE OF vs. TRUMP ORGANIZATION, INC.**
**Motion No.  001 002**

Page 3 of 3

FILED: NEW YORK COUNTY CLERK 10/08/2020 09:13 AM

NYSCEF DOC. NO. 277

INDEX NO. 451685/2020

RECEIVED NYSCEF: 10/07/2020

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:  **HON. ARTHUR F. ENGORON**

*Justice*

-------------------------------------------------------------------------------X

THE PEOPLE OF THE STATE OF NEW YORK, BY
LETITIA JAMES, ATTORNEY GENERAL OF THE STATE
OF NEW YORK,

Plaintiff,

- v -

THE TRUMP ORGANIZATION, INC., DJT HOLDINGS LLC,
DJT HOLDINGS MANAGING MEMBER LLC, SEVEN
SPRINGS LLC, ERIC TRUMP, CHARLES MARTABANO,
MORGAN, LEWIS & BOCKIUS LLP, SHERI DILLON,

Defendant.

-------------------------------------------------------------------------------X

| | |
|---|---|
| PART | **IAS MOTION 37EFM** |
| **INDEX NO.** | 451685/2020 |
| **MOTION DATE** | 10/7/2020 |
| **MOTION SEQ. NO.** | 006 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 006) 257, 258, 259, 260, 261, 262, 263, 264, 265, 267, 268, 269, 271, 272, 273, 274, 275, 276

were read on this motion to/for _____ REARGUE _____ .

Upon the foregoing documents, it is hereby ordered that the motion by respondents The Trump Organization, Inc. ("TTO"), Eric Trump, and Charles Martabano to reargue that part of this Court's Decision and Order of 9/23/2020 (NYSCEF Doc 254) ("the prior decision and order") that found that Mr. Martabano had waived the attorney-client and/or work product privileges of documents in his possession that he received or generated in the course of his legal representation of TTO and that were subject to a subpoena from petitioner, by not providing an adequate privilege log "despite repeated opportunities and attempts" (id. at 2), is granted, and Mr. Martabano, who apparently (or at least allegedly) has turned over said documents to this Court for an *in-camera* privilege review, need not turn them over directly to petitioner.

CPLR 2221(d) provides, in relevant part, that a motion for leave to reargue "shall be based upon matters of fact or law allegedly overlooked or misapprehended by the court in determining the prior motion." See generally Foley v Roche, 68 AD2d 558, 567-68 (1st Dept 1979). In the prior decision and order, this Court relied heavily on Anonymous v High Sch. For Envtl. Studies, 32 AD3d 353 359 (1st Dept 2006) for the general proposition that failure to produce an adequate privilege log timely waives the privilege. As a general proposition, that is the law. However, this Court overlooked (or "misapprehended") two distinguishing features between that case and the instant one: in that case, the respondent was much more recalcitrant than Mr. Martabano has been; and in that case the subject attorney still represented the subject client (note that just when Mr. Martabano ceased representing TTO is not completely clear). Here, movants have already turned over hundreds of documents and have convinced the Court that technical challenges made compliance more difficult.

451685/2020  PEOPLE OF THE STATE OF vs. TRUMP ORGANIZATION, INC.
Motion No.  006

Page 1 of 2

Hornbook law holds that only a client can waive a privilege. Mr. Martabano and his counsel may not have been, indeed, were hardly, punctilious in responding to the subject subpoenas, but not to the extent that a former client's allegedly privileged documents should be produced en masse, without an *in-camera* review. "Let the punishment, fit the crime; to err is human, to forgive is divine."

Petitioner points out that the subject subpoenas were issued many months ago, since which time petitioner has been attempting, through "good faith" negotiations, to obtain the documents to further the subject probe. Obviously, petitioner could have come to court months ago to seek to compel compliance (which should not at all be taken as a criticism, just an observation).

Thus, the instant motion to reargue is granted, and that part of the prior decision and order (NYSCEF Doc 254) that directed Mr. Charles Martabano to produce to petitioner the subpoenaed documents in his possession is hereby vacated, with any responsive documents to be turned over to this Court for *in camera* review if not already done so.

Arthur F. Engoron

Digitally signed by Arthur F. Engoron.
DN: C=US, OU=NY County Supreme Court, O=New York State Courts, CN=Arthur F. Engoron, E=AENGORON@NYCOURTS.GOV
Reason: I authored, approved, am ordering, and/or officially issuing it.
Location: 60 Centre Street, NYC, 10007, Room 418
Date: 2020-10-07 15:50:12
Foxit PhantomPDF Version: 9.7.2

| | |
|---|---|
| **10/7/2020** | |
| **DATE** | **ARTHUR F. ENGORON, J.S.C.** |

| CHECK ONE: | | | | | | |
|---|---|---|---|---|---|---|
| | [ ] CASE DISPOSED | | [X] NON-FINAL DISPOSITION | | | |
| | [X] GRANTED | [ ] DENIED | [ ] GRANTED IN PART | | [ ] OTHER | |
| APPLICATION: | [ ] SETTLE ORDER | | [ ] SUBMIT ORDER | | | |
| CHECK IF APPROPRIATE: | [ ] INCLUDES TRANSFER/REASSIGN | | [ ] FIDUCIARY APPOINTMENT | | [ ] REFERENCE | |

FILED: NEW YORK COUNTY CLERK 12/15/2020 04:32 PM

INDEX NO. 451685/2020

NYSCEF DOC. NO. 302

RECEIVED NYSCEF: 12/15/2020

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:  HON. ARTHUR F. ENGORON

PART  IAS MOTION 37EFM

*Justice*

--------------------------------------------------------------------X

THE PEOPLE OF THE STATE OF NEW YORK, BY
LETITIA JAMES, ATTORNEY GENERAL OF THE STATE
OF NEW YORK,

INDEX NO.  451685/2020

MOTION DATE  11/19/2020

MOTION SEQ. NO.  007

Petitioner,

- v -

THE TRUMP ORGANIZATION, INC., DJT HOLDINGS LLC,
DJT HOLDINGS MANAGING MEMBER LLC, SEVEN
SPRINGS LLC, ERIC TRUMP, CHARLES MARTABANO,
MORGAN, LEWIS & BOCKIUS LLP, SHERI DILLON,

**DECISION + ORDER ON
MOTION**

Respondents.

--------------------------------------------------------------------X

The following e-filed documents, listed by NYSCEF document number (Motion 007) 284, 285, 286, 287,
288, 289, 290, 291, 292, 293, 294, 295, 296, 297, 298, 299, 300, 301

were read on this motion to                                    REARGUE                          .

Upon the foregoing documents, it is hereby ordered that the instant motion to reargue is granted,
and upon reargument this Court decides and orders as follows.

As set forth in this Court's Decision and Order on Motion dated September 23, 2020 (the "Prior
Decision"), NYSCEF Doc. No. 255, familiarity with which may assist the reader, in this special
proceeding, as now relevant, petitioner, the People of the State of New York, by Letitia James,
Attorney General of the State of New York, seeks to compel the production of documents
allegedly relevant to an ongoing investigation into potential fraud or illegality by respondent The
Trump Organization ("TTO") and related entities.  Specifically, petitioner is investigating
whether TTO improperly inflated, on various financial statements, the value of certain of its real
estate assets in order to obtain tax and other financial benefits.  The Prior Decision directed
respondents to produce various categories of documents to this Court for an in camera inspection
as to whether or not they were shielded by the attorney-client privilege or other protections
against disclosure, while noting (at 2) that "disclosure to a third-party waives any privilege."
Interestingly, the Prior Decision does not mention the name "Ralph Mastromonaco," whose
sending or receipt of certain documents or other communications is the focus of the instant
motion.

Respondents timely produced thousands of documents for the aforesaid inspection, and in
Decisions and Orders dated October 16 and 30, 2020 ("the Disclosure Decisions"), this Court
held that, pursuant to the "Kovel" doctrine, some, but not all, of the documents that Mr.
Mastromonaco possessed were privileged.  In United States v Kovel, 296 F2d 918 (1961), the
United States Supreme Court held that communications with a third-party non-lawyer could

451685/2020  PEOPLE OF THE STATE OF vs. TRUMP ORGANIZATION, INC.
Motion No.  007

Page 1 of 4

FILED: NEW YORK COUNTY CLERK 12/15/2020 04:32 PM

NYSCEF DOC. NO. 302

INDEX NO. 451685/2020

RECEIVED NYSCEF: 12/15/2020

nonetheless be privileged if he or she were explaining complex technical subjects (in that case, accounting) to a lawyer in order for the lawyer to provide legal advice to the client.

Since Kovel, various federal and state courts have endorsed different nuanced standards for interpreting what level of assistance by non-lawyers is sufficient to invoke privilege protection. In the Disclosure Decisions, this Court followed the approach that myriad federal courts have taken: "the attorney-client privilege may extend to communications with third parties who have been engaged *to assist* the attorney in providing legal advice." United States v Richey, 632 F3d 559, 566 (9th Cir. 2011) (emphasis added); accord, Golden Trade, S.r.L. v Lee Apparel Co., 143 FRD 514, 518 (SDNY 1992) (holding that "[i]f the [non-lawyer specialist] is acting to assist an attorney to provide legal services, the communications with him by the attorney or the client should come within the ambit of the privilege"). Consequently, the Disclosure Decisions afforded privilege under Kovel if a non-lawyer communication "helped" or "assisted" a lawyer to provide legal advice.

However, the federal courts do not apply the "helpful" standard consistently; indeed, for each federal case that TTO cites, approximately as many federal cases apply a "necessary" standard. E.g., United States v Ackert, 169 F3d 136, 139 (2d Cir. 1999). Furthermore, New York cases that bind this Court, overseeing a New York case applying New York law, tilt heavily toward the higher standard.

Petitioner now moves to reargue the Disclosure Decisions, asserting that this Court "overlooked or misapprehended" (CPLR 2221(d)(2)) controlling New York law in applying the higher, "necessary" standard. Ambac Assur. Corp. v Countrywide Home Loans, Inc., 27 NY3d 616, 624 (2016); Spicer v GardaWorld Consulting (UK) Ltd., 181 AD3d 413, 414 (1st Dept. 2020) (privilege applies only if "the presence of such third parties is deemed *necessary* to enable the attorney-client communication). Of note, the Prior Decision did not need to address directly whether Kovel protected Mastromonaco's communications; and in issuing the Disclosure Decisions this Court seems to have lost sight of the forest for the trees, having overlooked Ambac and Spicer.

Moreover, as petitioner points out, the burden rested on TTO to provide the Court with sufficient evidence, from persons with actual personal knowledge, demonstrating that Mastromonaco's communications were necessary, not merely helpful, to provide legal advice. TTO failed to do so. Notably, TTO, not Martabano, hired Mastromonaco; and Mastromonaco, a non-lawyer, was working for TTO for approximately a year before Martabano came on the scene. See Cavallaro v United States, 284 F3d 236, 248 (1st Cir. 2002) (that accounting firm was hired by taxpayer, as opposed to lawyer, is "probative when considering whether [accounting firm] was employed to help [law firm] render legal advice"). There is no affidavit from Martabano, an attorney versed in land-use issues, that he *needed* Mastromonaco to provide legal advice, and no documentary evidence to this effect. While this Court's review of Mastromonaco's communications found many documents that could "assist" TTO's attorneys, it did not find anything that on its face, or in context, appeared necessary for providing legal advice, and TTO's failure to satisfy, or even address, this burden in its many court filings results in a waiver of such claim.

451685/2020 PEOPLE OF THE STATE OF vs. TRUMP ORGANIZATION, INC.
Motion No. 007

Page 2 of 4

2 of 4

**ADD7**

Similarly, the Court's review of the Morgan Lewis productions has found that TTO failed to satisfy its burden of demonstrating privilege over communications that include third-parties that Morgan Lewis retained. Of the many experts and consultants hired by Morgan Lewis on behalf of TTO, there is no claim by anyone with personal knowledge at Morgan Lewis that any such consultant was *necessary* to its provision of legal services. As neither the face of the documents themselves, nor their contexts, demonstrates such necessity, and TTO has failed to furnish this Court with supplemental documents, as is its burden, this Court finds it has waived any such privilege over communications that include third-parties.

Furthermore, this Court also finds that TTO, the privilege holder, has explicitly waived any privilege claim it might have had to Mastromonaco's communications. As evidenced in petitioner's papers, TTO waived privilege, then attempted to claw back such waiver, several times (first through express waiver on December 10, 2019, then through inaction between December 2019 and January 2020).

Specifically, the record includes a December 16, 2019 email from petitioner's representative, Mr. Colangelo, to TTO, which states, in pertinent part:

> To clarify, the request in the OAG's December 10 letter regarding Mr. Mastromonaco was not limited to communications between him and Cushman. As you were specifically responding to our request[,] we assume the limitation in your response was inadvertent, and we further assume that you are not asserting any privilege with respect to his work concerning Seven Springs. If this is not accurate, please advise.

(NYSCEF Doc. No. 174.) Despite some ambiguous assertions from TTO's counsel that petitioner should have understood from the context that TTO did not intend fully to waive privilege, the record is devoid of any affirmative communication by TTO in response to Mr. Colangelo's email until at least May 2020, over five months after the waiver.

Finally, the Prior Decision notes (at 1) as follows:

> Preliminarily, none of the opposition papers that the multiple respondents filed contains an affidavit from anyone with personal knowledge of the factual matters at issue. Accordingly, the opposition papers that respondents submitted are not in admissible form. Zuckerman v City of New York, 49 NY2d 557, 560 (1980). That fact alone arguably justifies granting the petition in its entirety.

It does. It also justifies granting the instant motion, and upon reargument finding that no documents that non-party, non-lawyer Ralph Mastromonaco possessed, or communications with him, are privileged (TTO's having waived the privilege) and, going forward, that any other Kovel claims of privilege for documents or communications with non-lawyers must meet the "necessary" standard.

Accordingly, this Court hereby grants reargument; and upon reargument the Court modifies its previous orders as follows: by December 18, 2020 (1) Respondents TTO and Charles Martabano

451685/2020  PEOPLE OF THE STATE OF vs. TRUMP ORGANIZATION, INC.
Motion No.  007

Page 3 of 4

FILED: NEW YORK COUNTY CLERK 12/15/2020 04:32 PM

NYSCEF DOC. NO. 302

INDEX NO. 451685/2020

RECEIVED NYSCEF: 12/15/2020

shall produce all communications with Ralph Mastromonaco to petitioner; (2) all respondents are ordered to produce all communications to, from, or on which third-party non-lawyers are copied to petitioner; and (3) Morgan Lewis shall submit a revised privilege log and document production to the Court that no longer includes the documents hereby ordered to be produced.

20201215163208AENGORONBA1441C6C1B48BD3973E09296852F7D7

| __12/15/2020__ | | | __ARTHUR F. ENGORON, J.S.C.__ |
|---|---|---|---|
| DATE | | | |

| CHECK ONE: | | CASE DISPOSED | | [X] | NON-FINAL DISPOSITION | |
|---|---|---|---|---|---|---|
| | [X] | GRANTED | [ ] DENIED | [ ] | GRANTED IN PART | [ ] OTHER |
| APPLICATION: | | SETTLE ORDER | | [ ] | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | [ ] | FIDUCIARY APPOINTMENT | [ ] REFERENCE |

**451685/2020  PEOPLE OF THE STATE OF vs. TRUMP ORGANIZATION, INC.**
**Motion No.  007**

Page 4 of 4

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| PEOPLE OF THE STATE OF NEW YORK, by LETITIA JAMES, Attorney General of the State of New York, | Index No. 451685/2020 |
| Petitioner, | **STIPULATION AND ORDER** |
| -against- | |
| THE TRUMP ORGANIZATION, INC.; DJT HOLDINGS LLC; DJT HOLDINGS MANAGING MEMBER LLC; SEVEN SPRINGS LLC; ERIC TRUMP; CHARLES MARTABANO; MORGAN, LEWIS & BOCKIUS, LLP; and SHERI DILLON, | |
| Respondents. | |

WHEREAS, in this special proceeding, the People of the State of New York, by Letitia James, Attorney General of the State of New York ("OAG"), have sought judicial resolution with respect to applications to compel compliance with certain OAG subpoenas by the parties, including the Trump Organization;[1]

WHEREAS, this Court has made itself available to resolve matters as they have arisen among the parties, including during testimonial examinations;

WHEREAS, OAG has previously advised this Court that, because of the ongoing nature of OAG's investigation and the anticipated need for potential judicial resolution of additional

---

[1] The Trump Organization, Inc.; DJT Holdings LLC; DJT Holdings Managing Member LLC; Seven Springs LLC; and any predecessors, successors, present or former parents, subsidiaries, and affiliates, whether direct or indirect (collectively with OAG, the "Stipulating Parties").

**ADD10**

issues, it would be beneficial for the Court to retain jurisdiction over this proceeding, and this Court kept the proceeding open;

WHEREAS, disputes have arisen regarding the Trump Organization's document collection and production in response to OAG subpoenas, including the December 27, 2019 subpoena, which by this Stipulation and Order the Stipulating Parties are addressing;

**IT IS HEREBY STIPULATED AND AGREED that:**

1.    The Trump Organization, by September 30, 2021, shall provide a report, in reasonable detail, of actions taken to preserve, collect, and produce hard-copy and electronic documents responsive to the OAG subpoenas. The choice of the final form and content of the report is the responsibility of the Trump Organization.

2.    The Trump Organization shall work diligently to comply with each of the production and other responsibilities described in Exhibit A to this stipulation.

3.    If OAG reasonably concludes, after October 15, 2021 (but no later than December 31, 2021), and so notifies the Trump Organization (setting forth in reasonable detail the basis for its conclusion) that the Trump Organization has not met its obligations to comply with any subpoenas outstanding as of the date hereof, then the Trump Organization will retain, at its expense, an independent third-party e-discovery firm (the "eDiscovery Firm") to oversee the identification, collection, and review of electronically stored information ("ESI") responsive to OAG's subpoenas. The eDiscovery Firm shall be chosen by the Trump Organization, subject to the approval of OAG, such approval to not be unreasonably withheld.

4.    If the OAG withholds approval of the eDiscovery Firm chosen by the Trump Organization, and provided that same was not unreasonable, then the Court shall appoint an eDiscovery Firm upon letter application by OAG including suggested appointees from the

2

**ADD11**

Stipulating Parties. The Trump Organization shall bear all costs of the eDiscovery Firm's

identification, collection, and examination of ESI in connection with this stipulation.

     5.    An eDiscovery Firm chosen or appointed under paragraphs 3 or 4 shall have the

responsibilities reflected in Exhibit A.

Dated: New York, New York
      September 2, 2021

       **STIPULATED AND AGREED:**

**LETITIA JAMES**
Attorney General of the State of New York

By: Colleen K. Faherty
    *Digitally signed by Colleen K. Faherty*
    *Date: 2021.09.02 15:58:04 -04'00'*

    Colleen K. Faherty
    28 Liberty Street
    New York, New York 10005
    (212) 416-6046

*Counsel for the People of the State of New York*


LAROCCA HORNIK ROSEN & GREENBERG LLP

By: _____

    Amy D. Carlin
    40 Wall Street, 32nd Floor
    New York, NY 10005
    (212) 530-4835

*Counsel for the Trump Organization*


**SO ORDERED:**

_____ 9/2/2021
Hon. Arthur Engoron, J.S.C.

3

**ADD12**

**Exhibit A: eDiscovery Responsibilities**

An eDiscovery Firm chosen or appointed under paragraphs 3 or 4 of the stipulation to which this exhibit is attached (or, if no such firm is chosen or appointed, the Trump Organization) shall have the following responsibilities:

1.    To obtain and verify a log of all devices issued to each custodian listed in Exhibit B from January 1, 2014 to December 18, 2020, including, for each custodian, the type of device, a unique identifier for the device (e.g., serial number, inventory tag number), the date issued, the date returned (if applicable), and the current location of the device. OAG acknowledges that on August 26, 2021, the Trump Organization provided the OAG with a log of devices (prepared by Eric Brunnett) issued to certain custodians in response to this request.

2.    To identify all other custodians of hard copy or electronic materials that may be responsive to the OAG subpoenas, such materials to include any appraisals or other valuations, purchase records, and any balance sheets, income statements, general ledgers, financial statements, or similar materials reflecting the value or financial performance of any Trump Organization property whose value is identified in or incorporated into any Statement of Financial Condition, or whose value is identified as being excluded from any Statement of Financial Condition.

3.    To ascertain the likely locations of responsive records, including by means of documented interviews with potential custodians and other current and former Trump Organization personnel (except, with respect to former Trump Organization personnel, where commercially reasonable efforts are unsuccessful in procuring such an interview).

4.    To ensure that one or more backups of Trump Organization data from before or after a data migration that occurred in 2016 is restored to a standalone system where it may be searched.

**ADD13**

5.    To perform, against all data collected by the Trump Organization or by the eDiscovery Firm, in connection with OAG's investigation, searches using search terms provided by OAG (the "Search Terms"). The Search Terms shall be reasonably related to OAG's ongoing investigation. The data searches shall follow the following procedures:

a.    Search Procedures. When OAG provides the Search Terms, the eDiscovery Firm shall identify items that result from a search using those terms and create a set of production materials (the "Production Materials"). The eDiscovery Firm shall then run an additional set of search terms agreed to by the Stipulating Parties to identify potentially privileged items (the "Privilege Search Terms"). Any items in the Production Materials that do not hit on one of the Privilege Search Terms shall be turned over to OAG. Any materials that hit on one of the Privileged Search Terms shall be turned over to the Trump Organization. The Trump Organization shall have three weeks to identify any items over which the Trump Organization concludes a privilege attaches (the "Privilege Review"). The Trump Organization shall be entitled to seek to extend, for a reasonable period, the time for it to complete the Privilege Review, upon written request to the OAG, consent to which shall not unreasonably be withheld by the OAG. At the conclusion of the Privilege Review, the eDiscovery Firm shall produce all remaining items which are not subject to a claim of privilege. Two weeks after the conclusion of the Privilege Review, the Trump Organization shall provide OAG with a privilege log identifying all items over which it asserts privilege with a specific basis for the assertion (the "Privilege Log"). The Trump Organization shall be entitled to seek to extend, for a reasonable period, the time for it to complete the Privilege Log,

5

**ADD14**

upon written request to the OAG, consent to which shall not unreasonably be withheld by the OAG.

b.  <u>Clawback Procedures</u>. If the Trump Organization identifies any items in the Production Materials that were not part of the Privilege Review and have been turned over to OAG, that the Trump Organization determines are subject to a claim of privilege, the Trump Organization shall promptly provide notice to OAG along with the basis for the assertion of privilege. OAG shall immediately segregate any such item and delete it from its system. OAG shall further provide confirmation to the Trump Organization that it has taken the steps to segregate and delete any item that is the subject of the notice. If the Trump Organization, within thirty days of production, identifies any items in the Production Materials that are not responsive to an OAG subpoena, they may provide notice to OAG and request segregation and deletion of the document. OAG will not unreasonably withhold consent to any such request. If OAG disagrees with the designation of any item, then the OAG shall promptly notify the Trump Organization of same and begin good faith meet and confer discussions with the Trump Organization to resolve the dispute.  In the event that the dispute is not resolved within 5 business days, either party may apply to the court by letter application for a determination.

c.  Upon retention of the eDiscovery Firm the Stipulating Parties agree to negotiate in good faith regarding: (i) the automatic removal and logging of Production Materials containing an individual's non-business, highly sensitive personal information and (ii) deduplication and reasonable steps to avoid the production of information identical to what has already been produced to OAG.

**ADD15**

6.    To issue monthly reports to the Stipulating Parties articulating its progress carrying out the responsibilities described herein, and identifying any source of potentially responsive materials to which it has not been provided access.

**ADD16**

## Exhibit B: Custodians

1. Patrick Birney
2. Troy Bonjavanni
3. Matthew Calamari
4. Alex Cannon
5. David Cohen
6. Alan Garten
7. Hal Goldman
8. Jaclyn Maraynes
9. Jill Martin
10. Jeff McConney
11. Heidi Mitchell
12. Rhona Graff
13. Jason Greenblatt
14. Donna Kidder
15. Ron Lieberman
16. David Orowitz
17. Adam Rosen
18. Owen Reidy
19. Joshua Seidner
20. Debe Stellio
21. Donald J. Trump
22. Donald Trump Jr.
23. Eric Trump
24. Ivanka Trump
25. Allen H. Weisselberg

FILED: NEW YORK COUNTY CLERK 02/18/2022 09:00 PM   INDEX NO. 451685/2020

NYSCEF DOC. NO. 654                                  RECEIVED NYSCEF: 02/18/2022

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

| | |
|---|---|
| **PRESENT:** <u>**HON. ARTHUR ENGORON**</u> | **PART** 37 |
| *Justice* | |

---------------------------------------------------------------X

THE PEOPLE OF THE STATE OF NEW YORK, BY
LETITIA JAMES, ATTORNEY GENERAL OF THE STATE
OF NEW YORK,

|  |  |
|---|---|
| **INDEX NO.** | 451685/2020 |
| **MOTION DATE** | 01/26/2022 |
| **MOTION SEQ. NO.** | 008 |

Petitioner,

- v -

THE TRUMP ORGANIZATION, INC., DJT HOLDINGS LLC,
DJT HOLDINGS MANAGING MEMBER LLC, SEVEN
SPRINGS LLC, ERIC TRUMP, CHARLES MARTABANO,
MORGAN, LEWIS & BOCKIUS LLP, SHERI DILLON,
DONALD J. TRUMP, IVANKA TRUMP, and DONALD
TRUMP, JR.,

**DECISION + ORDER ON
MOTION**

Respondents.

---------------------------------------------------------------X

The following e-filed documents, listed by NYSCEF document number (Motion 008) 321, 322, 323, 324,
325, 326, 327, 328, 329, 330, 331, 332, 333, 334, 335, 336, 337, 338, 339, 340, 341, 342, 343, 344, 345,
346, 347, 348, 349, 350, 351, 352, 353, 354, 357, 358, 359, 360, 361, 362, 363, 364, 365, 366, 367, 368,
369, 370, 371, 372, 373, 374, 375, 376, 377, 378, 379, 380, 381, 382, 383, 384, 385, 386, 387, 388, 389,
390, 391, 392, 393, 394, 395, 396, 397, 398, 399, 400, 401, 402, 403, 404, 405, 406, 407, 408, 409, 410,
411, 412, 413, 414, 415, 416, 417, 418, 419, 420, 421, 422, 423, 424, 425, 426, 427, 428, 429, 430, 431,
432, 433, 434, 435, 436, 437, 438, 439, 440, 441, 442, 443, 444, 445, 446, 447, 448, 449, 450, 451, 452,
453, 454, 455, 456, 457, 458, 459, 460, 461, 462, 463, 464, 465, 466, 467, 468, 469, 470, 471, 472, 473,
474, 475, 476, 477, 478, 479, 480, 481, 482, 483, 484, 485, 486, 487, 488, 489, 490, 491, 492, 493, 494,
495, 496, 497, 498, 499, 500, 501, 502, 503, 504, 505, 506, 507, 508, 509, 510, 511, 512, 513, 514, 515,
516, 517, 518, 519, 520, 521, 522, 523, 524, 525, 526, 527, 528, 529, 530, 531, 532, 533, 534, 535, 536,
537, 538, 539, 540, 541, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551, 552, 553, 554, 555, 556, 557,
558, 559, 560, 561, 562, 563, 564, 565, 566, 567, 568, 569, 570, 571, 572, 573, 574, 575, 576, 577, 578,
579, 580, 581, 582, 583, 584, 585, 586, 587, 588, 589, 590, 591, 592, 593, 594, 595, 596, 597, 598, 599,
600, 601, 602, 603, 604, 605, 606, 607, 608, 609, 610, 611, 612, 613, 814, 615, 616, 617, 618, 619, 620,
621, 622, 623, 624, 625, 626, 627, 628, 629, 632, 633, 634, 635, 636, 637, 638, 639, 640, 641, 642, 643,
644, 645, 646, 647, 648, 649, 650, 651

were read on this motion to                         QUASH SUBPOENAS                    .

Upon the foregoing documents, it is hereby ordered that the motion by respondents Donald J.
Trump, Ivanka Trump, and Donald Trump, Jr. to quash subpoenas issued by petitioner is denied,
and petitioner's cross-motion to compel is granted.

<u>Background</u>

The instant special proceeding arises out of an investigation commenced by petitioner, the People of
the State of New York, by Letitia James, Attorney General of the State of New York (hereinafter,
"OAG"), into the financial practices of respondent the Trump Organization, its employees, and its
affiliates.

451685/2020 PEOPLE OF THE STATE OF vs. TRUMP ORGANIZATION, INC.                    **Page 1 of 8**
Motion No. 008

Specifically, OAG is investigating whether respondents misstated the value of certain assets on annual financial statements, loan applications, tax submissions, and other official documents, and whether respondents made other material misrepresentations to third parties to secure favorable loan terms and insurance coverage and to obtain tax and other economic benefits.

OAG now claims that it has identified additional facts indicating that the aforesaid documents and others under investigation contain material misstatements and omissions and are materially inconsistent. OAG further states that to determine who is responsible for such alleged misstatements and omissions, it requires the testimony and evidence sought in subpoenas issued to newly joined respondents, Donald J. Trump, Ivanka Trump, and Donald Trump, Jr. (hereinafter, "the New Trump Respondents").

The New Trump Respondents now move to quash the subpoenas or, in the alternative, to stay their enforcement until the conclusion of OAG and/or the Manhattan District Attorney's criminal investigations and/or any other prosecutions of the Trump Organization. OAG now cross-moves to compel compliance with the subject subpoenas.

More than a year ago, at the outset of this special proceeding, this Court held that OAG's investigation, undertaken pursuant to New York Executive Law § 63(12), was lawful. The New Trump Respondents now ask this Court to re-examine the lawfulness of the investigation, arguing that OAG is using the existence of parallel civil and criminal investigations to circumvent the New Trump Respondents' rights under the United States and New York State Constitutions and New York statutory law.

Since this Court last issued a substantive Decision and Order in this case, the nature of OAG's investigation has expanded from purely civil to a civil/criminal hybrid. In a letter dated January 29, 2021, OAG informed the New Trump Respondents and respondent Eric Trump that the evidence reviewed to date could lead to criminal liability and prompt OAG to open a criminal investigation or make a criminal referral. NYSCEF Doc. No. 571. Subsequently, in a letter dated April 27, 2021, OAG informed the New Trump Respondents that "in addition to [OAG's] ongoing civil investigation, [OAG] is also engaged in a criminal investigation." NYSCEF Doc. No. 572.

Additionally, OAG has made numerous public statements confirming its ongoing assistance to the Manhattan District Attorney's criminal investigation into the Trump Organization. See, e.g., Statement from Attorney General James on Criminal Indictment of Trump Organization and CFO Weisselberg, https://ag.ny.gov/press-release/2021/statement-attorney-general-james-criminal-indictment-trump-organization-and-cfo, last accessed February 16, 2022.

Discussion
The New Trump Respondents seek two alternative forms of relief: (1) quashing the subpoenas, on the ground that the hybrid civil/criminal investigation conducted by OAG is inherently unconstitutional and, therefore, the tools normally available to OAG (here, its subpoena power) are being used unlawfully; and (2) a stay of the civil investigation until the conclusion of any criminal investigations on the ground that a stay is necessary to protect the New Trump Respondents' constitutional rights.

451685/2020  PEOPLE OF THE STATE OF vs. TRUMP ORGANIZATION, INC.
Motion No. 008

Page 2 of 8

FILED: NEW YORK COUNTY CLERK 02/18/2022 04:00 PM

NYSCEF DOC. NO. 654

INDEX NO. 451685/2020

RECEIVED NYSCEF: 02/18/2022

The Constitutional Arguments
Both the United States Constitution and the New York State Constitution, following in the footsteps of deep-rooted Anglo-Saxon law, guarantee that no witness may be compelled to give testimony that will incriminate himself or herself.

Additionally, New York Criminal Procedure Law 190.40 provides that:

> 1. Every witness in a grand jury proceeding must give any evidence legally requested of him regardless of any protest or belief on his part that it may tend to incriminate him.

> 2. A witness who gives evidence in a grand jury proceeding receives immunity unless:

> (a) He has effectively waived such immunity pursuant to section 190.45; or

> (b) Such evidence is not responsive to any inquiry and is gratuitously given or volunteered by the witness with knowledge that it is not responsive.

> (c) The evidence given by the witness consists only of books, papers, records or other physical evidence of an enterprise, as defined in subdivision one of section 175.00 of the penal law, the production of which is required by a subpoena duces tecum, and the witness does not possess a privilege against self-incrimination with respect to the production of such evidence. Any further evidence given by the witness entitles the witness to immunity except as provided in subparagraph1 (a) and (b) of this subdivision.

The New Trump Respondents argue that OAG is "endeavor[ing] to bypass the grand jury protections of New York's Constitution and CPL 190.40." NYSCEF Doc. No. 642 at 8. In support thereof, the New Trump Respondents assert that the issuance of civil subpoenas while a criminal investigation is ongoing allows OAG to extract information from them under the guise of a civil proceeding without OAG's having to offer them the immunity that a grand jury setting would afford them.

This argument completely misses the mark. Neither OAG nor the Manhattan District Attorney's Office has subpoenaed the New Trump Respondents to appear before a grand jury. Indeed, OAG affirms in its reply that it is not conducting a grand jury investigation of respondents. NYSCEF Doc. No. 645 at 2. Furthermore, New York prosecutors do not call the subjects of their criminal investigations to testify before grand juries about their suspected criminal conduct without first securing an immunity waiver. See Carey v Kitson, 93 AD2d 50, 64 (2nd Dep't 1983) (stating in dicta that that case "should again serve as a reminder to law enforcement officials of the consequences of calling a witness before a Grand Jury without obtaining a waiver of immunity"). There is no evidence to support the New Trump Respondents' suggestion that, in the absence of a

451685/2020 PEOPLE OF THE STATE OF vs. TRUMP ORGANIZATION, INC.
Motion No. 008

Page 3 of 8

FILED: NEW YORK COUNTY CLERK 02/18/2022 04:00 PM
NYSCEF DOC. NO. 654

INDEX NO. 451685/2020
RECEIVED NYSCEF: 02/18/2022

parallel civil investigation, OAG would have been forced to subpoena the New Trump Respondents to appear before a grand jury, in which case they would have been entitled to immunity under CPL 190.40.

The New Trump Respondents' reliance on United States v Kordel, 397 US 1, 10 (1970), is also unpersuasive. In Kordel, the United States Supreme Court addressed the constitutional implications at issue when a governmental entity conducts simultaneous civil and criminal proceedings. The Kordel Court upheld the lawfulness of the parallel investigations. Specifically, the Kordel Court held:

> For [respondent] need not have answered the interrogatories. Without question he could have invoked his Fifth Amendment privilege against compulsory self-incrimination. Surely [respondent] was not barred from asserting his privilege [simply] because the proceeding in which the Government sought information was civil rather than criminal in character.

Id. at 7-8. The New Trump Respondents' argument overlooks the salient fact that they have an absolute right to refuse to answer questions that they claim may incriminate them. Indeed, respondent Eric Trump invoked his right against self-incrimination in response to more than 500 questions during his one-day deposition arising out of the instant proceeding. NYSCEF Doc. No. 630 at 90.

The New Trump Respondents further cite to dicta in Kordel in which the Court stated:

> We do not deal here with a case where the Government has brought a civil action solely to obtain evidence for its criminal prosecution or has failed to advise the defendant in its civil proceeding that it contemplates his criminal prosecution; nor with a case where the defendant is without counsel or reasonably fears prejudice from adverse pretrial publicity or other unfair injury; nor with any other special circumstances that might suggest the unconstitutionality or even the impropriety of this criminal prosecution.

Id. at 11-12. For all that appears, we are not presented with any of those situations either. OAG pursued its civil investigation for more than a year without the slightest hint that it was a subterfuge to garner evidence for a criminal investigation in the offing. Notably, as discussed during this morning's oral argument, Donald J. Trump was hardly a stranger to the Attorney General's Office when Ms. James was campaigning to head that office. Ms. James' predecessors had investigated Donald J. Trump's "University" and "Foundation" and achieved significant settlements both times. A candidate for Attorney General would have been completely cognizant that, if elected, she would not be writing on a clean slate.

The New Trump Respondents further assert that public statements made by Attorney General Letitia James demonstrate the "impropriety" of her investigation. In support of this argument, they cite to dozens of public statements that James made, during her election campaign and afterward,

451685/2020 PEOPLE OF THE STATE OF vs. TRUMP ORGANIZATION, INC.
Motion No. 008

Page 4 of 8

54 of 180

**ADD21**

FILED: NEW YORK COUNTY CLERK 02/18/2022 04:00 PM

NYSCEF DOC. NO. 655

INDEX NO. 451685/2020

RECEIVED NYSCEF: 02/18/2022

indicating that she intended to investigate any illegal conduct of respondent Donald J. Trump. The statements range from relatively innocuous ("I believe that the President of these United States can be indicted for criminal offenses") to overtly aggressive ("Oh we're definitely going to sue him. We're gonna be a real pain in his ass. He's going to know my name personally"). NYSCEF Doc. No. 641. Citing Kordel, the New Trump Respondents claim that these statements demonstrate that OAG is acting with the "impropriety" upon which Kordel Court expressly withheld judgment.

However, the New Trump Respondents read Kordel's dicta for far more than it is worth. First, the Kordel Court expressly declined to rule on the situations described in its dicta, and the New Trump Respondents have failed to offer any more recent authority to support any implication that the facts presented here should merit a legal conclusion distinct from that in Kordel. Second, even assuming, *arguendo*, that the Kordel Court had held that those facts require a different outcome, the New Trump Respondents have failed to demonstrate that any of the factual criteria hypothesized in the Kordel dicta are present here. OAG has promptly and repeatedly informed the New Trump Respondents that they could be subject to both civil and criminal prosecution, and OAG's investigation is hardly unsubstantiated. Indeed, this Court's *in camera* review of the thousands of documents responsive to OAG's prior subpoenas demonstrates that OAG has a sufficient basis for continuing its investigation, which undercuts the notion that this ongoing investigation is based on personal animus, not facts and law.

Moreover, Attorney General James, just like respondent Donald J. Trump, was not deprived of her First Amendment rights to free speech when she was a politician running for a public office with investigatory powers. As the United States Court of Appeals for the 7th Circuit has observed:

> Any effort by the judiciary to stop one politician from proposing
> and advocating steps that injure another politician would do more
> to violate the First Amendment (the right to advocate one's view of
> good policy is the core of free speech) than to vindicate the Equal
> Protection Clause... A class-of-one claim cannot be used to attack
> political practices that are valid as a general matter but bear
> especially hard on one politician.

Jones v Markiewicz-Qualkinbush, 892 F3d 935, 939 (7th Cir 2018). As has often been said, that a prosecutor dislikes someone does not prevent a prosecution.

Furthermore, the New Trump Respondents' reliance on 303 W. 42nd St. Corp. v Klein, 46 NY2d 686 (1979), is misplaced. In that case the New York Court of Appeals examined whether the New York State and United States Constitutions require an evidentiary hearing when a petitioner challenging an administrative determination demonstrates with reasonable probability that the administrative determination was a result of unconstitutional First Amendment discrimination. While holding that petitioner was entitled to a hearing, the Court found:

> The underlying right asserted by petitioner is to equal protection of
> the laws as guaranteed by the 14th Amendment and the New York
> State Constitution (art I, § 11), one of the governing principles of
> our society. As enunciated more than a century ago in *Yick Wo v
> Hopkins* (118 US 356, 373-374), it forbids a public authority from

451685/2020 PEOPLE OF THE STATE OF vs. TRUMP ORGANIZATION, INC.
Motion No. 008

Page 5 of 8

> applying or enforcing an admittedly valid law "with an evil eye
> and an unequal hand, so as practically to make unjust and illegal
> discriminations between persons in similar circumstances". We
> have recognized the principle in cases involving the enforcement
> of the criminal laws and the administrative regulation of public
> health, safety and morals. To invoke the right successfully,
> however, both the "unequal hand" and the "evil eye" requirements
> must be proven--to wit, there must be not only a showing that the
> law was not applied to others similarly situated but also that the
> selective application of the law was deliberately based upon an
> impermissible standard such as race, religion or some other
> arbitrary classification.

Id. at 693 (internal citations omitted). Here, the New Trump Respondents have failed to submit any evidence that the law was not applied to others similarly situated, nor have they submitted any evidence of discrimination based on race, religion, or any other impermissible or arbitrary classification.

For OAG not to have investigated the original respondents, and not to have subpoenaed the New Trump Respondents, would have been a blatant dereliction of duty (and would have broken an oft-repeated campaign promise). Indeed, the impetus for the investigation was not personal animus, not racial or ethnic or other discrimination, not campaign promises, but was sworn congressional testimony by former Trump associate Michael Cohen that respondents were "cooking the books." NYSCEF Doc. No. 644. See Anheuser-Busch, Inc. v Abrams, 71 NY2d 327, 332 (1988) ("[i]n defending his inquiry, the Attorney-General enjoys a presumption that he is acting in good faith").

Additionally, as the New Trump Respondents have failed to demonstrate a "reasonable probability" of success on the merits, unlike the petitioners in 303 W. 42nd St. Corp., they are not entitled to "an evidentiary hearing before a judicial tribunal." 46 NY2d at 690.

Accordingly, OAG is not violating any rights that CPL 190.40 and the United States and New York State Constitutions afford the New Trump Respondents.

This Court notes in passing, and in dicta, that by letter dated February 9, 2022, Mazars USA LLC ("Mazars") (long-time accountant to respondents the Trump Organization and Donald J. Trump), informed the Trump Organization as follows:

> [T]he Statements of Financial Condition for Donald J. Trump for
> the years ending June 30, 2011 - June 30, 2020, should no longer
> be relied upon and you should inform any recipients thereof who
> are currently relying upon one or more of those documents that
> those documents should not be relied upon.
>
> We have come to this conclusion based, in part, upon the filings
> made by the New York Attorney General on January 18, 2022, our
> own investigation, and information received from internal and
> external sources. While we have not concluded that the various

451685/2020 PEOPLE OF THE STATE OF vs. TRUMP ORGANIZATION, INC.
Motion No. 008

Page 6 of 8

financial statements, as a whole, contain material discrepancies, based upon the totality of the circumstances, we believe our advice to you to no longer rely upon those financial statements is appropriate.

As we have stated in the Statements of Financial Condition, Mazars performed its work in accordance with professional standards.

NYSCEF Doc. No. 646. Upon this statement becoming public, on February 14, 2022, a spokesperson for the Trump Organization released the following statement to various media outlets:

[Mazars'] February 9, 2022 letter confirms that after conducting a subsequent review of all prior statements of financial condition, Mazars' work was performed in accordance with all applicable accounting standards and principles and that such statements of financial condition do not contain any material discrepancies. This confirmation effectively renders the investigations by the DA and AG moot.

https://www.washingtonpost.com/business/2022/02/14/trump-accountant-financial-statements/, last accessed February 16, 2022.

The idea that an accounting firm's announcement that no one should rely on a decade's worth of financial statements that it issued based on numbers submitted by an entity somehow exonerates that entity and renders an investigation into its past practices moot is reminiscent of Lewis Carroll ("When I use a word, Humpty Dumpty said ... it means just what I chose it to mean – neither more nor less"); George Orwell ("War is peace, freedom is slavery, ignorance is strength"); and "alternative facts."

The New Trump Respondents' lawyers have submitted serious, substantive, sophisticated legal arguments in support of quashing the subject subpoenas. Although this Court finds those arguments wanting, they are plausible and learned, and counsel made them in good faith. To proclaim that the Mazars' red-flag warning that the Trump financial statements are unreliable suddenly renders the OAG's longstanding investigation moot is as audacious as it is preposterous.

The Discretionary Stay
As an alternative to quashing the subject subpoenas, the New Trump Respondents ask this Court to exercise its discretion by granting a stay pursuant to CPLR 2201, which states: "Except where otherwise prescribed by law, the court in which an action is pending may grant a stay of proceedings in a proper case, upon such terms as may be just."

Relying on Access Cap., Inc. v DeCicco, 302 AD2d 48, 52 (1st Dep't 2002), which held "[i]t is settled that invoking the privilege against self-incrimination is generally an insufficient basis for precluding discovery in a civil matter," OAG asserts that the New Trump Respondents have not demonstrated a sufficient basis for a stay. The New Trump Respondents argue that OAG's reliance on Access Cap., Inc. is baseless, as the facts at issue in that case did not involve the same

451685/2020 PEOPLE OF THE STATE OF vs. TRUMP ORGANIZATION, INC.
Motion No. 008

Page 7 of 8

FILED: NEW YORK COUNTY CLERK 02/18/2022 04:00 PM

NYSCEF DOC. NO. 654

INDEX NO. 451685/2020

RECEIVED NYSCEF: 02/17/2022

prosecutor's office working on both a civil and criminal investigation. However, the legal principle remains the same regardless of any factual distinctions. Indeed, it is well settled: "[t]hat defendant's conduct also resulted in a criminal charge against him should not be availed of by him as a shield against a civil suit and prevent plaintiff from expeditiously advancing its claim." Paine, Webber, Jackson & Curtis Inc. v Malon S. Andrus, Inc., 486 F Supp 1118, 1119 (SDNY 1980); see also In re 650 Fifth Ave., 2011 WL 3586169 at 15 (SDNY Aug. 12, 2011), aff'd 2012 WL 363118 at 1 (SDNY Feb. 2, 2012) (denying stay and holding "the Constitution does not guarantee that the exercise of Fifth Amendment rights will be without cost in the civil arena").

The target of a hybrid civil/criminal investigation cannot use the Fifth Amendment as both a sword and a shield; a shield against questions and a sword against the investigation itself. When they are deposed, the New Trump Respondents will have the right to refuse to answer any questions that they claim might incriminate them, and that refusal may not be commented on or used against them in a criminal prosecution. However, there is no unfairness in allowing the jurors in a civil case to know these refusals and to draw their own conclusions. El-Dehdan v El-Dehdan, 26 NY3d 19, 37 (2015) ("a negative inference may be drawn in the civil context when a party invokes that right against self-incrimination").

Accordingly, the Court, in its discretion, declines to issue a stay of OAG's civil investigation into the New Trump Respondents.

The Court has considered the New Trump Respondents' other arguments, including that OAG is violating their right to equal protection, and finds them to be unavailing and/or non-dispositive.

In the final analysis, a State Attorney General commences investigating a business entity, uncovers copious evidence of possible financial fraud, and wants to question, under oath, several of the entities' principals, including its namesake. She has the clear right to do so.

Conclusion
Thus, for the reasons stated herein, the motion of respondents Donald J. Trump, Ivanka Trump, and Donald Trump, Jr. to quash the subpoenas that the New York State Office of Attorney General issued to them or, in the alternative, to stay petitioner's civil investigation, is hereby denied, and petitioner's cross-motion to compel is hereby granted. Respondent Donald J. Trump is hereby ordered: (1) to comply in full, within 14 days of the date of this order, with that portion of the Office of the Attorney General's subpoena seeking documents and information; and (2) to appear for a deposition within 21 days of the date of this order. Respondents Ivanka Trump and Donald Trump Jr. are also hereby ordered to appear for depositions within 21 days of the date of this order.



| 2/17/2022 | | | ARTHUR ENGORON, J.S.C. |
| DATE | | | |

| CHECK ONE: | | | | | |
| | ☐ CASE DISPOSED | | | ☒ NON-FINAL DISPOSITION | |
| | ☐ GRANTED | ☐ DENIED | | ☐ GRANTED IN PART | ☒ OTHER |
| APPLICATION: | ☐ SETTLE ORDER | | | ☐ SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | ☐ INCLUDES TRANSFER/REASSIGN | | | ☐ FIDUCIARY APPOINTMENT | ☐ REFERENCE |

451685/2020 PEOPLE OF THE STATE OF vs. TRUMP ORGANIZATION, INC.
Motion No. 008

Page 8 of 8

FILED: NEW YORK COUNTY CLERK 03/03/2022 12:20 PM
NYSCEF DOC. NO. 660

INDEX NO. 451685/2020
RECEIVED NYSCEF: 03/03/2022

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

|  |  |
|---|---|
| PEOPLE OF THE STATE OF NEW YORK, by LETITIA JAMES, Attorney General of the State of New York, | Index No. 451685/2020 |
| Petitioner, | **STIPULATION AND ORDER** |
| -against- | |
| THE TRUMP ORGANIZATION, INC.; DJT HOLDINGS LLC; DJT HOLDINGS MANAGING MEMBER LLC; SEVEN SPRINGS LLC; ERIC TRUMP; CHARLES MARTABANO; MORGAN, LEWIS & BOCKIUS, LLP; SHERI DILLON; DONALD J. TRUMP; IVANKA TRUMP; and DONALD TRUMP, JR., | |
| Respondents. | |

WHEREAS, on February 17, 2022 the Court entered a Decision and Order on Motion (Dkt. 654, the "Order"), directing Respondents Donald J. Trump, Donald Trump, Jr. and Ivanka Trump (the "Trump Parties") to appear for testimony within 21 days of the Order;

WHEREAS, the Order directed Donald J. Trump to comply in full with that portion of the Office of Attorney General's ("OAG") subpoena seeking documents and information within 14 days of the Order;

WHEREAS, the Trump Parties filed a Notice of Appeal on February 28, 2022 (the "Appeal");

WHEREAS, the parties have agreed to an accelerated briefing schedule before the Supreme Court of the State of New York, Appellate Division, First Judicial Department (the "First Department").

**ADD26**

FILED: NEW YORK COUNTY CLERK 03/03/2022 12:20 PM

NYSCEF DOC. NO. 660

INDEX NO. 451685/2020

RECEIVED NYSCEF: 03/03/2022

**THEREFORE IT IS HEREBY STIPULATED AND AGREED that:**

1.  Respondent Donald J. Trump shall comply in full with that portion of the OAG subpoena seeking documents and information by March 31, 2022;

2.  Respondents Donald J. Trump, Donald Trump, Jr., and Ivanka Trump shall appear for testimony within 14 days of a decision by the First Department on the Appeal affirming the terms of the Order, absent a stay issued by the First Department or the New York Court of Appeals.

Dated: New York, New York
     March  3 , 2022

STIPULATED AND AGREED:

LETITIA JAMES
Attorney General of the State of New York

By: _____

     Kevin C. Wallace
     28 Liberty Street
     New York, NY 10005

*Counsel for the People of the State of New York*

2

**ADD27**

FILED: NEW YORK COUNTY CLERK 03/03/2022 12:20 PM

NYSCEF DOC. NO. 660

INDEX NO. 451685/2020

RECEIVED NYSCEF: 03/03/2022

FISCHETTI & MALGIERI LLP

By: _____

Ronald P. Fischetti, Esq.
565 5th Avenue, 7th Floor
New York, New York 10017

HABBA MADAIO & ASSOCIATES LLP

By: _____

Alina Habba, Esq.
112 West 34th Street, 17th & 18th Floors
New York, NY 10120

*Counsel for Donald J. Trump*

ALAN S. FUTERFAS

By: _____

Alan S. Futerfas
565 Fifth Ave., 7th Floor
New York, NY 10017

*Counsel for Ivanka Trump and Donald Trump, Jr.*

**SO ORDERED:**

_____  3/3/2022
Hon. Arthur Engoron, J.S.C.

3

**ADD28**

INDEX NO. 451685/2020

NYSCEF DOC. NO. 667

RECEIVED NYSCEF: 03/28/2022

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| PEOPLE OF THE STATE OF NEW YORK, by LETITIA JAMES, Attorney General of the State of New York,<br><br>                    Petitioner,<br><br>          -against-<br><br>THE TRUMP ORGANIZATION, INC.; DJT HOLDINGS LLC; DJT HOLDINGS MANAGING MEMBER LLC; SEVEN SPRINGS LLC; ERIC TRUMP; CHARLES MARTABANO; MORGAN, LEWIS & BOCKIUS, LLP; SHERI DILLON; DONALD J. TRUMP; DONALD TRUMP, JR.; and IVANKA TRUMP,<br><br>                    Respondents. | Index No. 451685/2020<br><br>**ORDER REGARDING TRUMP ORGANIZATION SUBPOENA RESPONSE** |

WHEREAS, the Court held a compliance conference with the Office of the Attorney General ("OAG"), the Trump Organization, and HaystackID, the Trump Organization's selected third-party eDiscovery vendor, which was approved by OAG;

WHEREAS, there is disagreement as to the level of detail provided in the reports issued to date by HaystackID;

WHEREAS, the Court has continuing authority to oversee enforcement of the subpoenas issued to Respondent the Trump Organization by OAG;

Upon the foregoing papers,[1] it is ordered that:

1.      Within one week of the date of this Order, and every week thereafter, HaystackID shall submit to the Court and parties a detailed report (the "Haystack Report") with a timeline for

---

[1] Including NYSCEF Nos. 314 and 661 – 666 and materials submitted *in camera*.

**ADD29**

INDEX NO. 451685/2020

NYSCEF DOC. NO. 667                                         RECEIVED NYSCEF: 03/28/2022

completion of each of the duties it has been assigned under the September 2, 2022 Stipulated

Order, NYSCEF No. 314.; and

     2.    The Haystack Report must specify Haystack's findings to date regarding its duties

under paragraphs 1-4 of the Stipulated Order, including detail regarding:

         a.  every device identified in connection with paragraph 1 of the stipulated order;

         b.  identifying information on every potential custodian identified under

            paragraph 2 of the stipulated order

         c.  any information relevant to the stipulated order from any interview of a

            potential custodian;

         d.  detailed information on every potential custodian identified but not yet

            interviewed, including the expected interview date, and the reason, if any, the

            custodian has not yet been interviewed;

         e.  every likely location of responsive records identified in connection with

            paragraph 3 of the stipulated order;

         f.  a timeline for the completion of each of the duties it has been assigned under

            the Stipulated Order; and

         g.  if the timeline has changed since its previous submission, the reasons therefor.

     3.    By April 20, 2022 the Trump Organization must submit a report (the "Trump

Organization Report") in response to the first detailed Haystack Report, identifying its progress

collecting, reviewing, and producing documents from each device, custodian, and location of

potentially responsive information above. The Trump Organization Report must specifiy, as

much as reasonably possible, the quantities of documents collected, reviewed, and produced, and

the quantities of documents reviewed from each device or likely location of responsive records;

**ADD30**

INDEX NO. 451685/2020

NYSCEF DOC. NO. 667

RECEIVED NYSCEF: 03/28/2022

The Trump Organization shall continue to submit a response one week after the issuance of every detailed Haystack Report going forward; and

4.　　The Trump Organization must make best efforts to provide or obtain access to all potential custodians, and, in each Trump Organization Report, must also explain why any potential custodian HaystackID has identified has not yet been interviewed; and

5.　　HaystackID shall complete its obligations under the Stipulated Order no later than April 22, 2022; and

6.　　The Trump Organization shall comply in full with OAG's subpoenas, with the exception of the certification, privilege log, clawbacks and downgrades, by April 15, 2022; The Trump Organization shall produce its certification, privilege, clawbacks, and downgrade log no later than April 29, 2022.

7.　　The Parties are directed to appear for an in-person status conference on April 25, 2022 at 10:00 am.

Dated: New York, New York
　　　　March 28, 2022

**SO ORDERED:**

_____

Hon. Arthur Engoron, J.S.C.

**ADD31**

INDEX NO. 451685/2020

NYSCEF DOC. NO. 758
RECEIVED NYSCEF: 04/26/2022

## SUPREME COURT OF THE STATE OF NEW YORK
## NEW YORK COUNTY

| | | | |
|---|---|---|---|
| **PRESENT:** | **HON. ARTHUR ENGORON** | **PART** | **37** |

*Justice*

------------------------------------------------------------------------------X

| | |
|---|---|
| **INDEX NO.** | 451685/2020 |
| **MOTION DATE** | 04/08/2022 |
| **MOTION SEQ. NO.** | 009 |

THE PEOPLE OF THE STATE OF NEW YORK, BY
LETITIA JAMES, ATTORNEY GENERAL OF THE STATE
OF NEW YORK,

Petitioner,

- v -

THE TRUMP ORGANIZATION, INC., DJT HOLDINGS LLC,
DJT HOLDINGS MANAGING MEMBER LLC, SEVEN
SPRINGS LLC, ERIC TRUMP, CHARLES MARTABANO,
MORGAN, LEWIS & BOCKIUS LLP, SHERI DILLON,
DONALD J. TRUMP, IVANKA TRUMP, and DONALD
TRUMP, JR.,

**DECISION + ORDER ON
MOTION**

Respondents.

------------------------------------------------------------------------------X

The following e-filed documents, listed by NYSCEF document number (Motion 009) 668, 669, 670, 671,
672, 673, 674, 675, 695, 696, 720, 721, 722, 723, 724, 725, 726, 744

were read on this motion for                                                    CONTEMPT                          .

Upon the foregoing documents, it is hereby ordered that petitioner's motion to hold respondent
Donald J. Trump in contempt of court is granted.

Background

In this special proceeding, familiarity with which the Court will assume, petitioner, the People of
the State of New York, by Letitia James, Attorney General of the State of New York
(hereinafter, "OAG") seeks to hold respondent Donald J. Trump in contempt of court for failing
to comply with this Court's February 17, 2022 Decision and Order compelling him to produce
certain documents.

On December 2, 2021, OAG served a subpoena on Donald J. Trump that sought, inter alia[1],
documents and evidence, to be produced by December 17, 2021. Mr. Trump subsequently
moved to quash such subpoena, which this Court denied on February 17, 2022. Said Decision
and Order directed Mr. Trump to "comply in full, within 14 days of the date of this order, with
that portion of the [OAG's] subpoena seeking documents and information." NYSCEF Doc. No.
654.

---

[1] OAG also served a subpoena for Donald J. Trump's testimony, which this Court compelled on
February 17, 2022, and is currently on appeal before the Appellate Division, First Department.

**451685/2020 PEOPLE OF THE STATE OF vs. TRUMP ORGANIZATION, INC.**
**Motion No. 009**

**Page 1 of 3**

## ADD32

INDEX NO. 451685/2020
NYSCEF DOC. NO. 758                                                      RECEIVED NYSCEF: 04/26/2022

OAG and Mr. Trump subsequently entered into a stipulation, which this Court so-ordered, to extend the document production deadline from March 3, 2022 to March 31, 2022. The stipulation states that "Respondent Donald J. Trump shall comply in full with that portion of the OAG subpoena seeking documents and information by March 31, 2022." NYSCEF Doc. No. 660.

Instead of producing the documents called for in the subpoena, on March 31, 2022, Mr. Trump produced 16 pages of boilerplate objections and a four-page affirmation by counsel that states, summarily, that Mr. Trump was unable to locate any responsive documents in his custody. The affirmation fails to identify what search methods were employed, where they were employed, by whom they were employed, and when such searches took place.

OAG has moved to hold Mr. Trump in contempt and asks this Court to impose a sanction of $10,000 per day until Mr. Trump complies in full with OAG's subpoena.

Discussion
Judiciary Law § 753(A)(1) provides, in pertinent part, that: "[a] court of record has power to punish, by fine and imprisonment, or either, a neglect or violation of duty, or other misconduct, by which a right or remedy of a party to a civil action or special proceeding, pending in the court may be defeated, impaired, impeded, or prejudiced, in any of the following cases:… for disobedience to a lawful mandate of the court."

Additionally, CPLR 5104 provides that "[a]ny interlocutory or final judgment or order, or any part thereof, not enforceable under either article fifty-two or section 5102 may be enforced by serving a certified copy of the judgment or upon the party or other person required thereby or by law to obey it and, if he refuses or wilfully neglects to obey it, by punishing him for a contempt of the court."

Mr. Trump waived the right to raise boilerplate objections to the subpoena by not timely bringing such challenges in his motion to quash. "A motion to quash or vacate, of course, is the proper and exclusive vehicle to challenge the validity of a subpoena." Brunswick Hosp. Ctr., Inc. v Hynes, 52 NY2d 333, 339 (1981) (further finding that "[a]ny other rule would open the door to never-ending challenges to the validity of subpoenas, perhaps even years after initial issuance and compliance"). Accordingly, it was wholly improper for Mr. Trump to raise boilerplate objections to the subpoena after failing to raise such objections in his motion to quash. Furthermore, having stipulated to produce all the documents by March 31, 2022, Mr. Trump may no longer challenge the validity of the subpoena.

Furthermore, the "compliance affirmation" submitted by counsel for Mr. Trump is woefully inadequate, both under the terms of the subpoena and under controlling New York case law, which require an affiant conducting a search for records to attest to the "who," "what," "where," "when," and "how" the search was conducted. Jackson v City of New York, 185 AD2d 768, 770 (1st Dep't 1992) (holding that "[h]ere, after years of delay, the affidavit presented by the [defendant] made no showing as to where the subject records were likely to be kept, what efforts, if any, were made to preserve them, whether such records were routinely destroyed, or whether a search had been conducted in every location where the records were likely to be found").

**451685/2020  PEOPLE OF THE STATE OF vs. TRUMP ORGANIZATION, INC.**                        **Page 2 of 3**
**Motion No.  009**

**ADD33**

INDEX NO. 451685/2020

NYSCEF DOC. NO. 758

RECEIVED NYSCEF: 04/26/2022

For example, Mr. Trump has not refuted, with admissible evidence, OAG's detailed assertions that he failed to search numerous file cabinets in various locations. NYSCEF Doc. No. 744.

In short, the affidavit provided the Court with no basis to find that the search had been a thorough one or that it had been conducted in a good faith effort to provide these necessary records to plaintiff. Not only did Mr. Trump fail to submit an affidavit himself, which this Court believes would have been the best practice, as he is the most obvious person to affirm where any responsive documents in his possession, custody, and control would be located, but the attorney affirmation submitted on behalf of Mr. Trump contained only conclusory statements, rather than details of a diligent search.

Accordingly, Mr. Trump has willfully disobeyed a lawful order of this Court.

> In order to find that contempt has occurred in given case, it must be determined that a lawful order of the court, clearly expressing an unequivocal mandate, was in effect. It must appear, with reasonable certainty, that the order has been disobeyed. Moreover, the party to be held in contempt must have had knowledge of the court's order, although it is not necessary that the order actually have been served upon the party. Finally, prejudice to the right of a party to the litigation must be demonstrated.

McCormick v Axelrod, 59 NY2d 574, 583 (1983) (internal citations omitted).

OAG, the people's representative, correctly states that any delay causes prejudice to "the rights or remedies of the State acting in the public interest." State v Stallings, 183 AD2d 574, 575 (1st Dep't 1992) (affirming motion for contempt brought on behalf of State). Moreover, each day that passes without compliance further prejudices OAG, as the statutes of limitations continue to run and may result in OAG being unable to pursue certain causes of action that it otherwise would.

Accordingly, OAG has satisfied its burden of demonstrating that Mr. Trump willfully disobeyed a lawful court order of which he had knowledge, prejudicing OAG. The purpose of civil contempt is not to punish, but, rather, to coerce and/or to compensate. OAG seeks to fine Mr. Trump $10,000 per day until he satisfies his obligations, which this Court, which has wide discretion in such matters, finds to be reasonable.

Thus, Donald J. Trump is in contempt of Court and must pay a fine of $10,000 per day, from the date of this Decision and Order, until he purges such contempt to the satisfaction of this Court.

| 4/26/2022 | | | | | |
|---|---|---|---|---|---|
| **DATE** | | | | **ARTHUR ENGORON, J.S.C.** | |
| **CHECK ONE:** | | CASE DISPOSED | | X  NON-FINAL DISPOSITION | |
| | X | GRANTED | DENIED | GRANTED IN PART | OTHER |
| **APPLICATION:** | | SETTLE ORDER | | SUBMIT ORDER | |
| **CHECK IF APPROPRIATE:** | | INCLUDES TRANSFER/REASSIGN | | FIDUCIARY APPOINTMENT | REFERENCE |

451685/2020  PEOPLE OF THE STATE OF vs. TRUMP ORGANIZATION, INC.
Motion No. 009

Page 3 of 3

**FILED: NEW YORK COUNTY CLERK 04/29/2022 03:02 PM**
NYSCEF DOC. NO. 768

INDEX NO. 451685/2020

RECEIVED NYSCEF: 04/29/2022

## SUPREME COURT OF THE STATE OF NEW YORK
## NEW YORK COUNTY

| | | | | |
|---|---|---|---|---|
| **PRESENT:** | **HON. ARTHUR ENGORON** | | **PART** | 37 |

*Justice*

--------------------------------------------------------------------------------X

THE PEOPLE OF THE STATE OF NEW YORK, BY LETITIA
JAMES, ATTORNEY GENERAL OF THE STATE OF NEW
YORK,

**INDEX NO.**     451685/2020

Petitioner,

OPINION AND ORDER

- v -

THE TRUMP ORGANIZATION, INC., DJT HOLDINGS LLC,
DJT HOLDINGS MANAGING MEMBER LLC, SEVEN
SPRINGS LLC, ERIC TRUMP, CHARLES MARTABANO,
MORGAN, LEWIS & BOCKIUS LLP, SHERI DILLON,
DONALD J. TRUMP, IVANKA TRUMP, DONALD TRUMP
JR., and CUSHMAN AND WAKEFIELD, INC.,

Respondents.

--------------------------------------------------------------------------------X

Following a virtual conference held on April 29, 2022, at the request of respondent Donald J.
Trump, this Court hereby denies, without prejudice, Mr. Trump's request to purge his contempt.

On Monday, April 25, 2022, this Court held Mr. Trump in contempt of court for failure to supply
documents, or sufficient affidavits of diligent searches, to petitioner, the Office of the Attorney
General ("OAG"), in response to its subpoena issued to Mr. Trump on December 2, 2021.

On April 27, 2022, Mr. Trump's counsel emailed this Court two affirmations from counsel and
one affidavit from Mr. Trump himself, in an attempt to purge the contempt. NYSCEF Doc. No.
765. On April 29, 2022, OAG submitted a letter response stating that it did not believe Mr.
Trump had sufficiently complied with the subpoena such that his contempt should be purged.
NYSCEF Doc. No. 766. At the request of Mr. Trump, this Court held a virtual conference to
discuss the submissions.

This Court finds that Mr. Trump has not yet purged his contempt. The affirmations submitted by
counsel for Mr. Trump are insufficient in that they fail to specify who searched for each
respective request, at what time, where, and using what search protocols; it is not sufficient
simply to attach a list of people who participated in the searches. Moreover, the affirmations
submitted by counsel also fail to affirm that the subject electronic devices were imaged and
searched and with what search terms.

Furthermore, Mr. Trump's personal affidavit is completely devoid of any useful detail. Notably,
it fails to state where he kept his files, how his files were stored in the regular course of business,
who had access to such files, what, if any, the retention policy was for such files, and,

### OTHER ORDER – NON-MOTION

**ADD35**

**FILED: NEW YORK COUNTY CLERK 04/29/2022 03:02 PM**

NYSCEF DOC. NO. 768

INDEX NO. 451685/2020

RECEIVED NYSCEF: 04/29/2022

importantly, where he believes such files are currently located. It similarly fails to state if he turned over his personal electronic devices for imaging and searching. Thus, this Court now hereby orders Mr. Trump to submit a detailed "Jackson affidavit," swearing to the aforesaid details in order to purge his contempt. See Jackson v City of New York, 185 AD2d 768, 770 (1st Dep't 1992).

Moreover, counsel's claim that her conversations with respondent about the locations of the subpoena are covered by attorney-client privilege is without merit, as the mere identification of responsive documents does not involve "render[ing] legal advice or services to the client." Spectrum Sys. Intl. Corp. v Chemical Bank, 78 NY2d 371, 379 (1991).

Finally, the Court rejects Mr. Trump's assertions that OAG is not suffering any prejudice as a result of Mr. Trump's failure to comply. As this Court has previously noted, each day that passes without compliance further prejudices OAG, as the statutes of limitations continue to run and may result in OAG being unable to pursue certain causes of action that it otherwise would. Furthermore, any delay causes prejudice to "the rights or remedies of the State acting in the public interest." State v Stallings, 183 AD2d 574, 575 (1st Dep't 1992) (affirming motion for contempt brought on behalf of State).

Thus, Mr. Trump's request to purge his contempt is denied, without prejudice.

DATE: **4/29/2022**

ARTHUR ENGORON, JSC

Check One:  ☐ Case Disposed  ☒ Non-Final Disposition

Check if Appropriate:  ☐ Other (Specify _____ )

FILED: APPELLATE DIVISION - 1ST DEPT 05/02/2022 04:07 PM

NYSCEF DOC. NO. 3

2022-01812

RECEIVED NYSCEF: 05/02/2022

## SUMMARY STATEMENT ON APPLICATION FOR EXPEDITED SERVICE AND/OR INTERIM RELIEF

(SUBMITTED BY MOVING PARTY)

Date: 5/2/2022

Case # 2022-01812

Title of Matter: The People of the State of New York, by Letitia James v. The Trump Organization, et al.

Index/Indict/Docket # 451685/2020

Appeal by **Respondent** from

Order ☑
Judgment ☐ of
Decree ☐

Supreme ☑
Surrogate's ☐
Family ☐

County New York

Court entered on April 26, 20 22

Name of Judge Hon. Arthur Engoron, J.S.C.

Notice of Appeal filed on April 27, 20 22

If from administrative determination, state agency _____

Nature of action or proceeding: Article 4 Special Proceeding (Exec. Law 63(12))

Provisions of
☑ order
☐ judgment  appealed from
☐ decree
The appeal is taken from each and every part of the Decision and Order.

This application by
appellant
respondent  is for
The appeal is taken from each and every part of the Decision and Order.

If applying for a stay, state reason why requested a stay of the Decision and Order appealed from, pending appeal, including a stay of the portion of Order imposing a $10,000 daily fine, and an interim stay pending the resolution of the motion to stay.

Has any undertaking been posted No

If "yes", state amount and type _____

Has application been made to court below for this relief No
Has there been any prior application here in this court No

If "yes", state Disposition _____
If "yes", state dates and nature _____

Has adversary been advised of this application Yes

Does he/she consent No

**ADD37**

| Attorney for Movant | Attorney for Opposition |
|---|---|
| Name  Alina Habba, Esq. | Eric Del Pozo, Esq. / Judith Vale, Esq. |
| Address  Habba Madaio & Associates LLP | Office of the Attorney General |
| 1430 U.S. Highway 206, Suite 240 | 28 Liberty Street |
| Bedminster, NJ 07921 | New York, NY 10005 |
| Tel. No.  908-869-1188 | 800-771-7755 |
| Appearing by  Alina Habba, Esq., Michael Madaio, Esq. | judith.vale@ag.ny.gov |
| ahabba@habbalaw.com | eric.delpozo@ag.ny.gov |
| mmadaio@habbalaw.com | |

--------------------------------------------------------
**(Do not write below this line)**

<u>DISPOSITION</u>

Interim application denied and the motion referred to a full Bench for determination.

_Hon. Tanya R. Kennedy_ Justice        May 3, 2022
                                        Date

Motion Date  5/23/22    Opposition  5/17    Reply  5/23  10 am

EXPEDITE _____    PHONE ATTORNEYS _____    DECISION BY _____

ALL PAPERS TO BE SERVED PERSONALLY.        _EW_
                                          Court Attorney

"Revised 10/19"

**ADD38**

INDEX NO. 451685/2020

NYSCEF DOC. NO. 778                                          RECEIVED NYSCEF: 05/11/2022

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:   **HON. ARTHUR ENGORON**                    PART                    **37**

*Justice*

-----------------------------------------------------------------------X

| | |
|---|---|
| THE PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK, | INDEX NO.   451685/2020 |
| | MOTION DATE   04/08/2022 |
| | MOTION SEQ. NO.   009 |

Petitioner,

- v -

THE TRUMP ORGANIZATION, INC., SEVEN SPRINGS LLC, ALLEN WEISSELBERG, ERIC TRUMP, CHARLES MARTABANO, MORGAN, LEWIS & BOCKIUS LLP, SHERI DILLON, DONALD J. TRUMP, IVANKA TRUMP, DONALD TRUMP, JR., CUSHMAN & WAKEFIELD, INC.,

**SUPPLEMENTAL DECISION + ORDER ON MOTION**

Respondents.

-----------------------------------------------------------------------X

The following e-filed documents, listed by NYSCEF document number (Motion 009) 668, 669, 670, 671, 672, 673, 674, 675, 695, 696, 720, 721, 722, 723, 724, 725, 726, 744, 758, 768, 769, 770

were read on this motion for                         CONTEMPT                         .

Following virtual oral argument held on May 11, 2022, this Court hereby conditionally purges the contempt of respondent Donald J. Trump ("respondent") that this Court issued in an order dated April 26, 2022, provided the conditions detailed below are met on or before May 20, 2022:

> (1) Respondent submits affidavits from any person upon whom respondent, or his counsel, relied on in submitting their prior sworn "Jackson affidavits" of May 6, 2022, including, without limitation: Alan Garten, Cynthia Arce, Maria Enriquez, Owen Reidy, Peter W. Gabra, Randee Ingram, Na'syia Drayton, Ronald P. Fischetti, Michael T. Van der Veen, Lawrence Rosen, and Amy Carlin; and

> (2) Respondent submits an affidavit(s) from the executive assistant(s) referenced in respondent's May 6, 2022 affidavit that details the executive assistant(s) retention and preservation practice for respondent's documents; and

> (3) Haystack ID submits its report on respondent's subpoena compliance and certifies that its review is complete and that all responsive documents have been accounted for, located, and turned over to petitioner; and

> (4) Respondent pays the contempt fine currently due and owing, $110,000 (from April 26, 2022 through May 6, 2022), to petitioner, to be held in petitioner's

**ADD39**

INDEX NO. 451685/2020
NYSCEF DOC. NO. 778                                    RECEIVED NYSCEF: 05/11/2022

escrow account pending the final disposition of respondent's appeal of this
Court's contempt order before the Appellate Division, First Department.

Failure to satisfy any of the above conditions shall result in the contempt order being restored
and the fine reinstated retroactively to Saturday, May 7, 2022.

| 5/11/2022 | | | | | |
|---|---|---|---|---|---|
| **DATE** | | | | **ARTHUR ENGORON, J.S.C.** | |

| **CHECK ONE:** | CASE DISPOSED | | X | NON-FINAL DISPOSITION | |
|---|---|---|---|---|---|
| | GRANTED | DENIED | | GRANTED IN PART | X OTHER |
| **APPLICATION:** | SETTLE ORDER | | | SUBMIT ORDER | |
| **CHECK IF APPROPRIATE:** | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | REFERENCE |

**ADD40**

**FILED: APPELLATE DIVISION - 1ST DEPT 05/26/2022 10:39 AM** 2022-00814
NYSCEF DOC. NO. 26 RECEIVED NYSCEF: 05/26/2022

Acosta, P.J., Singh, Moulton, Kennedy, JJ.

16056      In the Matter of PEOPLE OF THE STATE OF      Index No. 451685/20
NEW YORK, BY LETITIA JAMES, ATTORNEY      Case No. 2022-00814
GENERAL OF THE STATE OF NEW YORK,
Petitioner-Respondent,

-against-

THE TRUMP ORGANIZATION, INC., et al.,
Respondents,

DONALD J. TRUMP et al.,
Respondents-Appellants.

———————————————————————————

Law Offices of Alan S. Futerfas, New York (Alan S. Futerfas of counsel), for appellants.

Letitia James, Attorney General, New York (Judith N. Vale of counsel), for respondent.

———————————————————————————

Order, Supreme Court, New York County (Arthur Engoron, J.), entered February 28, 2022, which, insofar as appealed from as limited by the briefs, denied appellants' motion to quash subpoenas issued by the Office of the Attorney General (OAG) on December 21, 2021 to the extent they seek appellants' depositions, and granted OAG's supplemental verified petition and cross motion to compel appellants' prompt compliance with the subpoenas' deposition and document demands, unanimously affirmed, without costs.

In this special proceeding commenced by OAG under Executive Law § 63(12) and CPLR article 4 in connection with the civil investigation into whether respondents have committed persistent fraud in their financial practices and disclosures, Supreme Court

**ADD41**

properly rejected appellants' arguments that the subpoenas issued by OAG should be quashed.

The existence of a criminal investigation does not preclude civil discovery of related facts, at which a party may exercise the privilege against self-incrimination (*see Stuart v Tomasino*, 148 AD2d 370, 373 [1st Dept 1989]; *Matter of Grandview Dairy v Lefkowitz*, 76 AD2d 776, 777 [1st Dept 1980]; *El-Dehdan v El-Dehdan*, 114 AD3d 4, 19-20 [2d Dept 2013], *affd* 26 NY3d 19 [2015]). Individuals have no constitutional or statutory right to be called to testify before a grand jury under circumstances that would give them immunity from prosecution for any matter about which they testify; although subjects of a grand jury proceeding have a statutory right to appear and testify, this right is conditioned upon the witness waiving the right to immunity and giving up the privilege against self-incrimination (CPL 190.50[5]; *People v Smith*, 87 NY2d 715, 719 [1996]). The political campaign and other public statements made by OAG about appellants do not support the claim that OAG initiated, or is using, the subpoenas in this civil investigation to obtain testimony solely for use in a criminal proceeding or in a manner that would otherwise improperly undermine appellants' privilege against self-incrimination (*see United States v Kordel*, 397 US 1, 11-12 [1970]). Neither does the record suggest that, in the absence of a civil investigation, OAG would be likely to grant immunity to appellants – the primary subjects of the criminal investigation – to secure their grand jury testimony. Thus, the subpoenas did not frustrate any right to testify with immunity.

Furthermore, based on the record evidence, Supreme Court properly declined to require an evidentiary hearing on the scope and degree of OAG's coordination with the New York County District Attorney's office. The civil investigation was initiated in

**ADD42**

March 2019 after testimony before Congress by Michael Cohen, former Trump

Organization senior executive and special counsel, in which Cohen alleged that

respondent The Trump Organization, Inc. had issued fraudulent financial statements.

This sequence of events suggests that the investigation was lawfully initiated at its outset

and well founded, apart from any parallel criminal investigation undertaken by the

District Attorney (*see Anheuser-Busch, Inc. v Abrams*, 71 NY2d 327, 332 [1988]; *United*

*States v Stringer*, 535 F3d 929, 939 [9th Cir 2008], *cert denied* 555 US 1049 [2008]).

To the extent a selective prosecution claim may, in some circumstances, defeat a

subpoena in a civil investigation, the court properly rejected appellants' arguments. A

claim of selective prosecution requires a showing "that the law has been administered

'with an evil eye and an unequal hand'" (*People v Goodman*, 31 NY2d 262, 269 [1972],

quoting *Yick Wo v Hopkins*, 118 US 356, 373-374 [1886]). A party must show that it was

selectively treated, compared with others similarly situated, and that such treatment

was based on impermissible considerations (*see Bower Assoc. v Town of Pleasant Val.*,

2 NY3d 617, 631-632 [2004]). OAG began its investigation after public testimony of a

senior corporate insider and reviewed significant volumes of evidence before issuing the

subpoenas. Appellants have not identified any similarly implicated corporation that was

not investigated or any executives of such a corporation who were not deposed.

Therefore, appellants have failed to demonstrate that they were treated differently from

**ADD43**

any similarly situated persons (*see id.* at 632; *compare Matter of 303 W. 42nd St. Corp. v Klein*, 46 NY2d 686, 696 [1979] [the petitioner established selective prosecution by showing at least 21 similarly situated entities that had been treated more favorably]).

THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.

ENTERED: May 26, 2022

Susanna Molina Rojas
Clerk of the Court

**ADD44**

# *State of New York*
## *Court of Appeals*

***Decided and Entered on the***
***fourteenth day of June, 2022***

**Present**, Hon. Janet DiFiore, *Chief Judge, presiding.*

Mo. No. 2022-464
In the Matter of the People &c., by Letitia
James, &c.,
      Respondent,
    v.
The Trump Organization, Inc. et al.,
      Respondents,
Donald J. Trump, et al.,
      Appellants.

     Appellants having appealed to the Court of Appeals in the above cause and moved

for a stay;

     Upon the papers filed and due deliberation, it is

     ORDERED, on the Court's own motion, that the appeal is dismissed, without

costs, upon the ground that no substantial constitutional question is directly involved;

and it is further

     ORDERED, that the motion for a stay is dismissed as academic.

                           Lisa LeCours
                         Clerk of the Court

**ADD45**

FILED: NEW YORK COUNTY CLERK 06/30/2022 08:10 AM    INDEX NO. 451685/2020
NYSCEF DOC. NO. 807                                 RECEIVED NYSCEF: 06/29/2022

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:    **HON. ARTHUR ENGORON**                    PART              37
                                        *Justice*
--------------------------------------------------------------------X

THE PEOPLE OF THE STATE OF NEW YORK, BY
LETITIA JAMES, ATTORNEY GENERAL OF THE STATE
OF NEW YORK,

|  |  |
|---|---|
| INDEX NO. | 451685/2020 |
| MOTION DATE | 04/08/2022 |
| MOTION SEQ. NO. | 009 |

                          Petitioner,

                          - v -

THE TRUMP ORGANIZATION, INC., DJT HOLDINGS, LLC,
DJT HOLDING MANAGING MEMBER, LLC, SEVEN
SPRINGS LLC, ERIC TRUMP, CHARLES MARTABANO,
MORGAN, LEWIS & BOCKIUS, LLC, SHERI DILLON,
DONALD J. TRUMP, IVANKA TRUMP, DONALD TRUMP,
Jr., and CUSHMAN & WAKEFIELD, INC.,

**SUPPLEMENTAL
DECISION + ORDER ON
MOTION**

                          Respondents.

--------------------------------------------------------------------X

The following e-filed documents, listed by NYSCEF document number (Motion 009) 668, 669, 670, 671, 672, 673, 674, 675, 695, 696, 720, 721, 722, 723, 724, 725, 726, 744, 758, 768, 778, 780, 781, 785, 788, 789, 794, 798, 802, 803

were read on this motion for                          CONTEMPT

Upon the foregoing documents, and having reviewed the recent additional submissions of

respondent Donald J. Trump, and the petitioner having agreed that respondent's additional

submissions satisfy the Court's prior orders, it is hereby ordered that the contempt of respondent

Donald J. Trump is purged. The $110,000 that respondent has previously placed in petitioner's

escrow account shall, as per stipulation, remain in escrow pending the final disposition of

respondent's appeal.

| 6/29/2022 | | | ARTHUR ENGORON, J.S.C. |
|---|---|---|---|
| **DATE** | | | |

| CHECK ONE: | | CASE DISPOSED | | X | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|
| | | GRANTED | DENIED | | GRANTED IN PART | X | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | | REFERENCE |

451685/2020  PEOPLE OF THE STATE OF vs. TRUMP ORGANIZATION, INC.                    Page 1 of 1
Motion No. 009

**ADD46**

1

```
 1   SUPREME COURT OF THE STATE OF NEW YORK
     COUNTY OF NEW YORK - CIVIL TERM - PART 37
 2   ----------------------------------------------X

 3     PEOPLE OF THE STATE OF NEW YORK, BY LETITIA    Index No.
       JAMES, ATTORNEY GENERAL OF THE STATE OF NEW    451685/2020
 4     YORK,

 5                               Petitioner,

 6          -against-

 7
       THE TRUMP ORGANIZATION, INC.; DJT HOLDINGS
 8     LLC; DJT HOLDINGS MANAGING MEMBER, LLC;
       SEVEN SPRINGS, LLC; ERICK TRUMP; CHARLES
 9     MARTABANO; MORGAN, LEWIS & BOCKIUS, LLP; AND
       SHERI DILLON,
10

11                               Respondents.

12   ----------------------------------------------X
                                    60 Centre Street
13   PROCEEDINGS                    New York, New York
     (virtual)                      February 17, 2022
14

15     B E F O R E:

16            HONORABLE ARTHUR S. ENGORON,

17                         JUSTICE

18
     A P P E A R A N C E S:
19

20       OFFICE OF THE ATTORNEY GENERAL
         OF THE STATE OF NEW YORK - LETITIA JAMES
21            ATTORNEYS FOR THE PETITIONER
              28 Liberty Street
22            New York, New York 10005
         BY: KEVIN WALLACE, ESQ.
23       BY: COLLEEN K. FAHERTY, ESQ.
         BY: ANDREW AMER, ESQ.
24
                               (Appearances continued..)
25
```

*Lisa DeCrescenzo*

**ADD47**

2

```
 1   A P P E A R A N C E S:

 2

 3        HABBA MADAIO & ASSOCIATES, LLP
          ATTORNEYS FOR THE RESPONDENT, DONALD J. TRUMP
 4             1430 US-206, Suite 240
               Bedminster, New Jersey 07921
 5        BY:  ALINA HABBA, ESQ.

 6

 7        LAW OFFICES OF ALAN S. FUTERFAS
          ATTORNEYS FOR THE RESPONDENTS,
          DONALD J. TRUMP, JR. AND IVANKA TRUMP
 8             565 Fifth Avenue, 7th Floor
               New York, New York 10017
 9        BY: ALAN S. FUTERFAS, ESQ.
          BY: ELLEN RESNICK, ESQ.
10        BY: RICHARD BRUECKNER, ESQ.

11

12        FISCHETTI & MALGIERI, LLP
          ATTORNEYS FOR THE RESPONDENT, DONALD J. TRUMP
               565 Fifth Avenue, 7th Floor
13             New York, New York 10017
          BY: RONALD FISCHETTI, ESQ.
14

15

16

17

18

19

20

21

22

23                         LISA M. DE CRESCENZO,
24                         OFFICIAL COURT REPORTER

25
```

*Lisa DeCrescenzo*

**ADD48**

48

Proceedings

1    basically trying not to do anything different.  He is a

2    citizen.  He's a respondent.

3            Why is the fact, in your view, that he's the

4    former President of the United States, why should I do

5    anything differently?  Why does the law call for

6    anything different?  That's to either Alan or Ron?

7    Alan?

8            MR. FUTERFAS:  Your Honor, we have it in our

9    papers.  I drafted Points One and Two of our initial

10   brief, and I certainly drafted those points of our

11   reply.  We have not relied on Mr. Trump's prior

12   position as President in any way to make our arguments.

13   Our arguments are not dependent on that.

14           I think if Mr. Trump was any John Q. citizen,

15   those arguments would apply, the argument that Letitia

16   James has crossed over to criminal law land and grand

17   jury land and has done so knowingly, intentionally, and

18   publicly and, therefore, John Q. citizen is entitled to

19   the protections of 190.40 and the Constitution.

20           MR. FISCHETTI: I agree with that.

21           THE COURT:  Okay.  Who's next?  Let's do one

22   side then the next and one issue then the next.

23           Alan, do you want to address selective

24   prosecution?

25           MR. FUTERFAS:  I think Ms. Habba was going to

*Lisa DeCrescenzo*

**ADD49**

49

Proceedings

1    address it, if you don't mind.

2              THE COURT:  Go ahead.

3              MS. HABBA:  Hi, your Honor.

4              THE COURT:  Hi.

5              MS. HABBA:  So, elective prosecution is kind

6    of its own beast in this argument.  So, the issue here

7    for me is that, and for all of our clients, is that

8    Letitia James can't run away from her own court, and I

9    am not going to repeat it ad nauseam, but the Office of

10   the Attorney General is engaging in viewpoint

11   discrimination here and they have dug their heels in so

12   deep that, in my opinion, they don't know how to get

13   out.

14              So, they've instead just doubled down and

15   that is what has been going, and this Court has to deny

16   the motion to compel because Letitia James and her

17   office are engaging every day in selective prosecution

18   and prosecutorial misconduct that this country has

19   never seen.

20              You know what, your Honor, your last question

21   goes to my point, your Honor.  The only reason she is

22   doing this is because he was a former President and

23   because he sits on the other side of the fence.  He's a

24   Republican former President and --

25              THE COURT:  Wait.  Wait.  She was doing this

*Lisa DeCrescenzo*

**ADD50**

50

Proceedings

 1    while he was President, not --

 2         MS. HABBA:  One hundred percent and if he was

 3    not who he is, she wouldn't be doing this, your Honor.

 4    That's what my argument is.  Her conduct blatantly

 5    violates the equal protection clauses of Federal and

 6    New York State Constitution and requires that the

 7    subpoenas are quashed and that you have an evidentiary

 8    hearing to basically prove, what I have little doubt in

 9    my mind is, that this entire investigation has been

10    premised on one goal, which is Letitia James's

11    political agenda.

12         She ran a campaign on taking down Trump.  For

13    somebody who has such disdain, such vile disdain for a

14    man, she has used his name to become AG.  She tried to

15    use it to become governor.  Didn't work out so hot for

16    her.  So, then she went back.  For somebody who-- it's

17    just blatantly obvious, your Honor.

18         Look at the exhibits attached to the motion.

19    Prior to coming into office, she effectively promised,

20    promised her constituents, "I'm going after Trump.  I'm

21    going to shine a bright light into every dark corner of

22    his real estate dealings."  She's saying:  "We're

23    definitely going to sue him.  I'm going to be a real

24    pain in the ass," and she's calling him an

25    "illegitimate President."

*Lisa DeCrescenzo*

**ADD51**

Proceedings

1          Judge, you're a lawyer.  I'm a lawyer.  We do

2     not sit in the highest seat in the State of New York.

3     She does as the Attorney General and if you and I

4     behaved the way she behaved -- think about it this way,

5     Judge, if you and I behaved how she behaved, we'd be

6     thrown before the Ethics Committee.  We would be thrown

7     before everything.  We would not have a license, but no

8     one seems to care that she has such disdain for this

9     person because he was President, because he is Donald

10    Trump, and because he probably could win again in '24

11    and if that wasn't the case, if tomorrow he stood up

12    and said I'm out of politics, I want to golf, I'm done

13    with this, she'd leave him alone.

14          Actually, I don't even know how she would

15    because she'd have nothing to run on.  Her behavior

16    demeans the integrity of this office.  She has gotten

17    off the stage singing "I Will Survive" and ad-libbing

18    hatred for Donald Trump.

19          Judge, are you going to allow that to happen

20    and say that's okay?  That's okay.  It's First

21    Amendment rights.  Well, he has First Amendment rights.

22    He is allowed to be a Republican.  He is allowed to

23    have different viewpoints than her, but what she's not

24    allowed to do is to violate the presumption of

25    innocence which is a hallmark of prosecutorial ethics

*Lisa DeCrescenzo*

**ADD52**

Proceedings

1    under NYRPC 3.6.

2            She has disseminated public statements at

3    every opportunity and downright proclaimed that he is

4    guilty of wrongdoing without any proof of the same,

5    and, quite honestly, the fact that they're taking

6    valuations says it all.  It's the most subjective

7    thing.

8            How many people has Letitia James gone after

9    because of how their properties are valued?  I can't

10   even understand this argument.  I looked at their

11   petition.  I was laughing.  It's so incorrect.  Basic

12   knowledge, basic knowledge of accounting, which they

13   clearly lack, shows that this was not a fraud and a

14   big -- this was not that but, you know what, they've

15   got poor Allen Weisselberg in handcuffs for not talking

16   about a car.

17           This is Letitia James and the entire Office

18   of the Attorney General following suit for their

19   political agenda.  It is incorrect.  Courts have long

20   recognized that prosecutors will rarely come out and

21   admit that they harbor a personal bias against the

22   subject of an investigation, and they have analyzed the

23   prosecutors' actions as opposed to their words to infer

24   bias.

25           In this case, we have an extraordinary rare

Lisa DeCrescenzo

**ADD53**

53

Proceedings

1    case where we can prove selective prosecution because

2    she's put her words out there so much and taken every

3    opportunity to voice her vendetta against Donald Trump

4    and his family to take him down.

5          My client is entitled to the protections

6    afforded to him by the Constitution against egregious

7    prosecutorial misconduct.

8          THE COURT:  Let me just say, I'm not the

9    disciplinary committee, so some of the ethical

10    questions are not in front of me.  I tend to say

11    they're not part of this case that I have in front of

12    me.

13          MS. HABBA:  How can you say that?  They are

14    very much a part of this case.  You can't judge someone

15    based on your hatred for them.

16          MS. GREENFIELD: Counselor, when the Judge

17    speaks, you have to stop speaking.

18          MS. HABBA:  I thought he was done.  My

19    apology.

20          THE COURT:  Sometimes I'm a little slow.

21    I'll leave it as I am not the attorney disciplinary

22    committee.  You can do whatever you think is correct

23    there because you're bringing up what I think are

24    issues that are more in terms of yes, the ethics of the

25    participant rather than the legal issues in front of me

*Lisa DeCrescenzo*

**ADD54**

54

Proceedings

1    but what I'm more so wanting to address is you said, I

2    think I have an exact quote here, at least a word or

3    two, this is viewpoint discrimination.

4            There are 600 and some odd documents in this

5    case.  I'm fairly familiar with all of them.  I hadn't

6    read every page of every exhibit.  I don't remember at

7    any point at which Letitia James criticized Donald

8    Trump's viewpoints or said anything about what party

9    she is or what party he is.

10           Am I missing something there?

11           MS. HABBA:  Yes.  With all due respect, you

12   are.  She called him an illegitimate President.  That

13   is his entire party.  That's him sitting as a sitting

14   President in the Republican Party.

15           Are you telling me if Bill Clinton was

16   sitting, she'd be calling him an illegitimate President

17   and putting him through the ringer regarding his

18   personal-- Actually, the Clintons did have finances and

19   it was in an affidavit that was submitted by

20   co-counsel, Mr. Futerfas, where it stated they were

21   getting money from Russia.

22           I didn't see the Attorney General do anything

23   and, quite honestly, your Honor, I want to know --

24   Mr. Wallace, Ms. James, are you going to go after

25   Hillary Clinton for what she is doing to my client?

*Lisa DeCrescenzo*

**ADD55**

Proceedings

1   That she spied at Trump Tower in your state?  Are you

2   going to look into her business dealings?

3         THE COURT: You know--

4         MS. HABBA: That comes from Washington.

5         MS. GREENFIELD: When the Judge is talking,

6   you have to stop.

7         THE COURT:  I get the right to interrupt.

8   You don't get the right to interrupt.  The Clintons are

9   not before me.  So, again, those political

10  considerations, that's not what I'm here to do.

11        The fact she called him, and I'm assuming

12  this is correct, an illegitimate President, that's not

13  partisan.  That's not you're a Republican so I'm

14  against you.  You're for this about taxes.  You're for

15  this about immigration.  You're for this about the

16  military budget.  I don't see that viewpoint

17  discrimination.

18        What viewpoint of Donald Trump do you think

19  Letitia James was using as an excuse to investigate

20  him?

21        MS. HABBA:  Your Honor, I actually just

22  remembered one item I had not mentioned yet which is

23  her campaign which as recent as two weeks ago she's

24  actually been blasting -- and Mr. Wallace, I can see

25  you rolling your eyes and I would be frustrated too if

**ADD56**

Proceedings

1    I worked for her, but she has been campaigning, sending

2    out e-mails which have been provided to the Court.

3    Again, I turn to our exhibits, where she stated she is

4    running on taking down Donald Trump and that they need

5    to elect her again in three months because of Donald

6    Trump.  This is about politics, your Honor.  I'm sorry,

7    but it really is.

8                In her e-mails she discusses January 6th and

9    says it points to him.  Again, irrelevant, but it's a

10   campaign move.  It has no place in this system.

11              THE COURT:  What is-- I have asked you twice

12   and I will ask you one more time.  What is the

13   viewpoint discrimination?  Viewpoint is basically I'm

14   prosecuting or investigating somebody because of

15   something which could violate their free speech rights.

16   What's the viewpoint? I don't see one.  There is no

17   viewpoint.  There's politics maybe.  She's a politician

18   and she was elected.  She is now rerunning for

19   election, I believe.

20              What's the viewpoint discrimination or just

21   say there is none.

22              MS. HABBA:  I think under selective

23   prosecution all I need to show is that he's a protected

24   class and his political speech is protected.

25              THE COURT:  What protective class is he a

Proceedings

1    member of?

2            MS. HABBA:  His political speech.  It's his

3    viewpoint.  He has the right.  Like you stated, she has

4    the right to First Amendment speech.  So does he, and

5    if he was not sitting as a Republican and if he was not

6    a former President who might run again, this would not

7    be happening.  So, she is discriminating against him

8    for that.

9            MS. GREENFIELD:  Counselor, I just have one

10   more question.  Protective class is usually referred to

11   a very, very high scrutiny such as race, religion,

12   ethnicity.  Do you have any case law to support the

13   idea that his viewpoint is a protected class such that

14   it enjoys the highest level of scrutiny?

15           MS. HABBA:  Yes, I do.  You can look at 303

16   West 42nd Street Corp. as well as --

17           MS. GREENFIELD: Okay. We're very familiar

18   with that case.

19           THE COURT:  We're very familiar with that

20   case.

21           MS. HABBA:  Okay.  I'm just answering the

22   question.

23           MS. GREENFIELD: That is your strongest --

24           MS. HABBA:  No.

25           MS. GREENFIELD: -- argument.

*Lisa DeCrescenzo*

**ADD58**

Proceedings

1          MS. HABBA: People v. Abram, dismissing the

2     charges because, "the Court finds in the case that the

3     District Attorney 'avowed' his intent to practice

4     'constitutionally proscribed discrimination' based on

5     an announced policy of his office he outlined in the

6     local newspaper."

7          THE COURT:  The 303 v. Klein case, the bottom

8     line there is that the City is going after the owner of

9     a book store that sold pornography which is entitled to

10    free speech.

11         What is the free speech issue in this case?

12         MS. HABBA:  The illegitimate motive, your

13    Honor.  That's the issue, where government officials

14    were targeting someone.

15         THE COURT:  How do we know that the motive is

16    Donald Trump's speech rather than his financial

17    practices?

18         MS. HABBA:  By her statement before she was

19    AG, while she was AG, and her e-mails last week running

20    for her next campaign based on taking him down.

21         THE COURT: What was--

22         MS. HABBA: Your Honor, Trump--

23         THE COURT:  All right. Those statements speak

24    for themselves and probably most of our listeners have

25    heard those.  So, let's move on.

*Lisa DeCrescenzo*

**ADD59**

Proceedings

1          MS. HABBA:  Okay.

2          MS. GREENFIELD: Anyone on the respondents'

3    side that hasn't spoken that wants to speak before we

4    hear from OAG?

5          MR. FUTERFAS:  Can I jump in one minute on

6    that Point Three?

7          THE COURT:  Sure.

8          MR. FUTERFAS:  I will be very brief but I

9    want to approach it from a little different

10   prospective, if your Honor doesn't mind.  I think the

11   exhibits in the record do speak to animus by Ms. James,

12   both as the candidate and as an elected official, and I

13   think they do speak to animus based on politics.

14         In fact, the e-mail flyer that Ms. Habba was

15   referring to is dated January 9th of 2022.  So, as an

16   elected official, an e-mail flyer goes out from her

17   political campaign.  We have attached it to the reply

18   brief.  I don't remember what exhibit it is but it's

19   dated January 9th, and it basically says, click here if

20   do you not like Donald Trump or do you hate Donald

21   Trump or do you hate his policies, whichever the click

22   was, and that is just a few weeks ago.  I think that's

23   eyebrow raising, at the very, very least, and that is

24   just a few weeks ago.

25         So, I think, and I understand your Honor's

*Lisa DeCrescenzo*

**ADD60**

60

Proceedings

1    question, but I think that, taken as a whole, you do
2    have animus and you do have enough animus suggested by
3    political views.
4           My take on this is slightly different, your
5    Honor, and that is this:  I look at it almost in a
6    conflict situation and there are conflict cases.
7    People v. Adams comes to mind out of the Court of
8    Appeals where a lawyer is conflicted because of their
9    animus or whether it's political animus or hatred or
10   whatever it is and here, you do have animus.
11          I think you even have loathing based on the
12   statements that are not denied and that are in the
13   record but so you have someone who is clearly
14   conflicted because of this personal hatred or this
15   personal animus based on political conduct by former
16   President Trump or political views by former President
17   Trump but then in a typical context, typical recusal
18   context or a conflict context, you know, someone would
19   say you shouldn't be the lawyer for this person or you
20   should be recused or you should disqualify yourself
21   because you have this conflict because of this animus.
22          The problem, I think, that's here is the
23   person with this conflict is now in charge of the
24   investigation, is now the highest law enforcement
25   officer in the land in the New York State.  Yes, New

**ADD61**

Proceedings

1       York State, and is directing and has the power to

2       direct the agency that she oversees.

3              So, I don't know if that addresses everything

4       your Honor wanted to address but I at least wanted to

5       give your Honor a sightly different perspective than

6       maybe we made clear in Point Three.

7              Thank you.

8              THE COURT:  We all went to law school and

9       read the cases about protected classes.  So, Alan,

10      Alina, isn't Allison correct-- A, A, A and I'm Arthur,

11      so we have four A's going here-- that the traditional

12      protected classes are race, religion, et cetera?

13      Donald Trump doesn't fit that kind of mold or model.

14             He's not being discriminated against based on

15      race, is he?  Or religion, is he?  He is not a

16      protective class.  If Ms. James has a thing against

17      him, okay, that's not, in my understanding, unlawful

18      discrimination.  He is just a bad guy she should go

19      after as the Chief Law Enforcement Officer of New York

20      State.

21             MR. FUTERFAS:  I am not going to answer for

22      Ms. Habba.  I'll let her answer that question but my

23      own view is, and I'm not aware-- I didn't study for

24      Point Three.  So, I'm not aware of this constitutional

25      issue but I can say that if the record establishes that

*Lisa DeCrescenzo*

Proceedings

1    someone is targeted for their political speech or their

2    political views or their political conduct, and what I

3    mean by political conduct, is decisions made while they

4    are in office.  I don't like his stance on this issue.

5    I don't like that he picked this person for Supreme

6    Court Justice.  I don't like his stance as a President

7    with the Environmental Protection Agency.  Whatever the

8    issue is, if you target someone because of that

9    political speech and that political conduct, I think

10   that raises-- I think that is a problem.  That is an

11   issue.

12            I'll turn it over to Ms. Habba to answer your

13   Honor's direct question.

14            THE COURT:  I'll ask a new or maybe the same

15   question.  What evidence is there that the Attorney

16   General is going after this individual citizen because

17   of his political affiliations or his speech rather than

18   just she thinks or she's questioning his financial

19   practices?

20            Alina?

21            MS. HABBA:  I think if you look at the

22   timeline, your Honor, of when this began, and I'm happy

23   to go through it but it's outlined in our brief.  Her

24   comments started before she was Attorney General.  She

25   made a campaign based on it.  Then she goes and does it

*Lisa DeCrescenzo*

**ADD63**

Proceedings

1    when she is Attorney General and an investigation

2    commenced for unconstitutional reasons like viewpoint

3    discrimination and also courts have held fishing

4    expeditions, which is what this is, is per se invalid.

5         So, I appreciate your Honor trying to look

6    for that answer but I think under selective

7    prosecution, it's per se invalid, and it doesn't matter

8    if they end up finding all kinds of incriminating

9    evidence.  That is irrelevant here.  It's irrelevant

10   because, in short, government action that is

11   discriminatory is prima facie per se invalid.

12        THE COURT:  Wasn't the particular start of

13   her investigation congressional testimony by Michael

14   Cohen?

15        MS. HABBA:  Yes.  That's even better.  She

16   actually said Trump should be worried about three

17   people -- this is a quote-- "Robert Mueller, Michael

18   Cohen, and Tish James."  Michael Cohen, your Honor, I'm

19   glad you brought him up.  Michael Cohen is a person

20   that this woman relied on at the same time the US

21   Attorney's Office stated that it had substantial

22   concerns about Michael Cohen's credibility as a witness

23   and that he lied to law enforcement on numerous

24   occasions in connection with his supposed cooperation.

25             "He is motivated," and this is a quote, "by

*Lisa DeCrescenzo*

**ADD64**

Proceedings

1    personal greed and ambition."  This is the person Ms.

2    James stated -- she stated based her investigation on,

3    someone who's been discredited who uses Trump's name to

4    be a public persona because he is trying to be relevant

5    still.  You're right.  Thank you for bringing that up.

6    She based this on Michael Cohen.

7         THE COURT:  But Michael Cohen got in trouble

8    and he has paid quite a penalty, I'll say.  Was the

9    perjury charges against him, were they based on him

10    saying that the Trump Organization is playing fast and

11    loose with the numbers?

12         MS. HABBA:  No.  I'm not here to discuss

13    Michael Cohen's underlying action but I can tell you

14    Letitia James relied on Michael Cohen and that's

15    ridiculous, what he has been held by a court in this

16    state you sit, to be a liar, unconstitutional.  That is

17    what the court said.  There are concerns about whether

18    he's a man who knowingly sought to undermine core

19    institutions of our democracy.  That was the decision

20    from the Court.  This is who Ms. James is relying on.

21         THE COURT:  Has--

22         MS. GREENFIELD: You have to stop speaking

23    when he speaks.

24         MS. HABBA: I didn't hear.

25         THE COURT: Has Michael Cohen prosecuted or

*Lisa DeCrescenzo*

**ADD65**

Proceedings

1    stating that the Trump Organization is playing fast and

2    loose with its numbers?

3         MS. HABBA:  I don't know.  I was not the

4    attorney on his case.

5         THE COURT:  I'm pretty sure no.  There were

6    other things he said that got him into big trouble but

7    anyway.  Okay, where are we now?  OAG?  Unless anybody

8    for the respondents want to go ahead and I've given

9    them quite a bit of time. I'm very glad I heard all of

10   this.

11        Kevin, are you ready?

12        MR. WALLACE: Yes.  We have been going for

13   over an hour, hour and a half now.  So, I don't think I

14   can address everything that has been said.  I will say

15   the last portion of the conversation did remind me of

16   the quote from Robert Morgenthau when he was the United

17   States Attorney for the Southern District and twice

18   brought actions against Roy Cohn and twice failed and

19   was accused of having a vendetta against Roy Cohn, and

20   Mr. Morgenthau responded:  "A man is not immune from

21   prosecution just because the United States Attorney

22   happens not to like him."

23        That's not controlling authority but the

24   impetus behind that but the point is that what matters

25   is the substance of the investigation, substance of

*Lisa DeCrescenzo*

**ADD66**