# 22-1175-CV

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

DONALD J. TRUMP and TRUMP
ORGANIZATION LLC,

                 Plaintiffs-Appellants,

     v.

LETITIA JAMES, in her official
capacity as Attorney General for the
State of New York,

                 Defendant-Appellee.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

## REPLY BRIEF FOR PLAINTIFFS-APPELLANTS DONALD J. TRUMP
## and TRUMP ORGANIZATION LLC

Alina Habba, Esq.
HABBA MADAIO & ASSOCIATES LLP
1430 U.S. Highway 206, Suite 240
Bedminster, New Jersey 07921
-and-
112 West 34th Street, 17th & 18th Floors
New York, New York 10120
Telephone: (908) 869-1188
Facsimile: (908) 450-1881
E-mail: ahabba@habbalaw.com
*Attorneys for Plaintiffs-Appellants Donald J.*
*Trump and Trump Organization LLC*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................ii, iii, iv

ARGUMENT ................................................................................................................ 1

   I.    PLAINTIFFS-APPELLANTS' FEDERAL CLAIMS ARE NOT PRECLUDED BY THE STATE ACTION ..........................................................................................1

      A. The Federal Action is Not Barred by the Doctrine of Res Judicata ................ 1

      B. Defendant-Appellee's Collateral Estoppel Argument is Not Properly Before This Court And Fails As A Matter of Law ...................................................... 6

   II.   THE BAD FAITH EXCEPTION TO THE *YOUNGER* ABSTENTION DOCTRINE IS APPLICABLE ...................................................................................................7

   III.  PLAINTIFFS-APPELLANTS ARE ENTITLED TO CHALLENGE THE ATTORNEY GENERAL IN A FEDERAL FORUM ...................................................11

CONCLUSION ......................................................................................................... 14

## TABLE OF AUTHORITIES

*303 W. 42nd St. Corp. v. Klein,*
  46 N.Y.2d 686, 693 (1979) ............................................... 4

*Allianz Ins. Co. v. Lerner*,
  416 F.3d 109, 114 ............................................................ 7

*American Dental Coop. v Attorney-General of State of N.Y.,*
  127 A.D.2d 274, 280 (1st Dep't 1987) .......................... 2

*Bower Assoc. v. Town of Pleasant Valley*,
  2 N.Y.3d 617, 631 (2004) ............................................... 4

*Central Hudson Gas & Election Corporation v. Empresa Naviera Santa S.A.*,
  56 F.3d 359, 368 (2d Cir. 1995) .................................... 7

*Clinton v. Jones,*
  520 U.S. 681, 690 (1997) ........................................... 12, 14

*Committee on Ways and Means v. U.S. Department of Treasury*,
  No. 21-5289 at *14 (D.C. Cir. Aug. 9, 2022) ................ 14

*Cullen v. Fliegner,*
  18 F.3d 96, 103-104 (1994) ............................................ 8

*Cunningham v. Nadjari*,
  39 N.Y.2d 314, 318 (1976) ............................................. 2

*Diamond "D" Const. v. McGowan*,
  282 F.3d 191, 200 (2d Cir. 2002) .......................... 8, 9, 10

*Greene v. United States,*
  13 F.3d 577, 586 (2d Cir.1994) ...................................... 7

*Hartman v. Moore,*
  547 U.S. 250, 256 (2006) ............................................... 5

*In re Nwamu,*
    421 F. Supp. 1361, 1366 (S.D.N.Y. 1976) ...................................................... 6

*Kern v. Clark*,
    331 F.3d 9, 12 (2003) ..................................................................................... 9

*Kugler v. Helfant,*
    421 U.S. 117, 124 (1975) ................................................................................ 8

*Leather v. Eyck*,
    180 F.3d 420, 236 (2d Cir. 1999) .................................................................. 7

*Marshall v. Jericho, Inc.*,
    446 U.S. 238, 249-250 (1980) ......................................................................... 5

*McCulloch v. Maryland,*
    4 Wheat. 316, 417, 4 L.Ed. 579 ...................................................................... 13

*Pervu v. City of Oneonta,,*
    no. 6:19-cv-00861 (N.D.N.Y. Apr. 2, 2020). .............................................. 10

*People v. Trump Organization*,
    Index No. 451685/2020 (NYSCEF Doc. No. 190) .................................... 1, 2

*Ryan v. New York Tel. Co.*,
    62 N.Y.2d 494, 500 (1984) .......................................................................... 6, 7

*Schlagler v. Phillips,*
    166 F.3d 439, 442–43 (2d Cir. 1999) ........................................................ 9, 10

*Sonne v. Board of Trustees of Village of Suffern*,
    67 A.D.3d 192, 203 (2d Dep't 2009) .............................................................. 5

*States v. Fares,*
    978 F.2d 52, 59 (2d Cir. 1992) ....................................................................... 5

*Trump v. Mazars USA, LLP*,
    --- F.4th ---, No. 21-5176, 2022 WL 2586480 (D.C. Cir. July 8, 2022) ..... 12, 13, 14

*Trump v. Vance,*
    140 S. Ct. 2412, 2428 (2020) ..................................................... 5, 11, 12, 13

*United States v. Berrios,*
    051 F.2d 1207, 1211 (2d Cir.1974)................................................................. 5

*United States v. Moon,*
    718 F.2d 1210, 1229 (2d Cir.1983)................................................................. 5

*United States v. Simmonds*,
    641 F. App'x 99, 104 (2d Cir. 2016) ............................................................. 6

*Vance, Nixon v. Fitzgerald*,
    457 U.S. 731, 753 (1982)................................................................................ 11

## ARGUMENT

**I.  PLAINTIFFS-APPELLANTS' FEDERAL CLAIMS ARE NOT PRECLUDED BY THE STATE ACTION**

### A.  The Federal Action is Not Barred by the Doctrine of *Res Judicata*

Defendant-Appellee spends a significant portion of its Appellee's Brief arguing that the Federal Action is precluded by the doctrine of *res judicata*. Yet, in doing so, Defendant-Appellee fails to raise a single viable argument as to why the doctrine is applicable, instead resorting to mischaracterizing the relevant procedural history and cherry-picking quotations from otherwise inapplicable case law.

First, Defendant-Appellee's contention that Plaintiffs-Appellants "plainly could have been raised in the state-court proceedings the constitutional defenses they now raise in federal court," is misplaced and at odds with the law of the case of the State Action. Br. at 22. Indeed, as detailed in Plaintiffs-Appellants' initial brief, the State Action was an Article 4 special proceeding that was extremely limited in both purpose and scope. Indeed, the State Court specifically ruled that the "***special proceeding is fact finding in nature – to gather evidence and compel discovery – it is not about proving the underlying alleged violations or schemes or fraud that respondents are alleged to have engaged in***." *See People v. Trump Organization*, Index No. 451685/2020 (NYSCEF Doc. No. 190) (emphasis added). That Plaintiffs-Appellants were not afforded a full and fair opportunity to present their constitutional claims is further evidenced by the narrow scope of such a special

1

proceeding. In fact, the scope of an Article 4 proceeding is so limited that "the presumption" is that [the Attorney General has acted "in good faith, and [i]s therefore *not required to demonstrate probable cause* or *disclose the details of the pending investigation*." *American Dental Coop. v Attorney-General of State of N.Y.,* 127 A.D.2d 274, 280 (1st Dep't 1987). "[A]ll that the Attorney-General need show in support of his subpoena in the face of a motion to quash is his authority, the relevance of the items sought, and some factual basis for his investigation." *Id.* The State Action was carried out in accordance with these limiting principals, as is clear from the State Court's refusal to consider "ethical questions," [R. at A378], as well as the repeated insistence by counsel for Defendant-Appellee's in the State Action that the "fitness of this investigation" was not at issue, [R. at A379], and that "at no point during the numerous contested rounds of briefing, evidentiary submissions, and hearings here did anyone contend that OAG's investigation was unlawful, pretextual, or lacked a rational basis," *see People v. Trump Organization*, Index No. 451685/2020 at *12 (NYSCEF Doc. No. 644). Therefore, given the narrow scope and nature of the State Action, Plaintiffs-Respondents did not have a full and fair opportunity to litigate the claims that were raised in the Federal Action.

Second, Defendant-Appellee does not meaningfully dispute that none of the ancillary orders from the State Action—the September 2020 Order, October 2020 Order, and the December 2020 Order—function as a final decision on the merits to

bar the Federal Action by application of *res judicata*. Instead, Defendant-Appellee largely focuses on the February 2022, which it argues has claim-preclusive effect. Yet, Defendant-Appellee fails to recognize that, in the February 2022 Order, the State Court never ruled on the constitutional issues raised in the Federal Action.

For context, in the State Action, Plaintiffs-Appellants raised a single constitutional defense—a selective prosecution claim under the Equal Protection Clause of the Fourteenth Amendment—as a means of objecting to Defendant-Appellee's motion to compel compliance with certain subpoenas. Not a single objection was raised under the First Amendment, the Fourth Amendment, or the Due Process Clause of the Fourteenth Amendment were raised. Meanwhile, in the Federal Action, Plaintiffs-Appellants asserted four distinct causes of action, specifically three constitutional claims arising under the First Amendment, Fourth Amendment, and the Due Process Clause of the Fourteenth Amendment, as well as a common law claim of abuse of process.

With regard to the selective prosecution claim, the February 2022 Order does not contain any final decision on the merits as to any of the issues that are pertinent to the four causes of action raised in the Federal Action. Indeed, the State Court's ruling on the selective prosecution claim was extremely narrow – it found that the defense failed because Plaintiffs-Appellants had "failed to submit any evidence that the law was not applied to others similarly situated, nor ha[d] they submitted any

evidence of discrimination based on race, religion, or any other impermissible or arbitrary classification." [R. at A306-A313]. In other words, the State Court's rejection of the selective prosecution claim was premised upon a finding that Plaintiffs-Appellants had failed to satisfy the "uneven hand" prong of their selective prosecution claim. *See* 303 *W. 42nd St. Corp. v. Klein*, 46 N.Y.2d 686, 693 (1979) (stating that, to establish a selective prosecution claim, the moving party must show "both the 'unequal hand' and the 'evil eye.'").

Notably, with regard to the "evil eye" prong, the State Court's analysis was incomplete. While it did find that Plaintiffs-Appellants had failed to establish "discrimination based on race, religion, or any other impermissible or arbitrary classification," the State Court declined to comment on whether there had been a sufficient showing that AG James had acted with an "*intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.*" *Bower Assoc. v. Town of Pleasant Valley*, 2 N.Y.3d 617, 631 (2004) (emphasis added); *see also Sonne v. Board of Trustees of Village of Suffern*, 67 A.D.3d 192, 203 (2d Dep't 2009); *States v. Fares*, 978 F.2d 52, 59 (2d Cir. 1992) (impermissible considerations include "race, religion, or the *desire to prevent [the] exercise of constitutional rights.*") (emphasis added) (citing *United States v. Moon,* 718 F.2d 1210, 1229 (2d Cir.1983) (quoting *United States v. Berrios,* 501 F.2d 1207, 1211 (2d Cir.1974). In other words, the portion of the 'evil eye' inquiry that is relevant to

4

all four of Plaintiffs-Appellants federal claims—whether Plaintiffs-Appellants were "singled out for an impermissible motive not related to legitimate governmental objectives, which could include personal or political gain, or retaliation for the exercise of constitutional rights" —was not addressed. *Sonne*, 67 A.D.3d at 203-204; *compare to Hartman v. Moore*, 547 U.S. 250, 256 (2006) (noting that the First Amendment "prohibits government officials from subjecting an individual to retaliatory actions . . . for exercising their First Amendment rights."); *Trump v. Vance*, 140 S. Ct. 2412, 2428 (2020) (noting that the Fourth Amendment prohibits "arbitrary fishing expeditions" and "initiating investigations out of malice or an intent to harass."); *Marshall v. Jericho, Inc.*, 446 U.S. 238, 249-250 (1980) (noting that the Fourteenth Amendment prohibits a prosecutor from "injecting a personal interest, financial or otherwise, into the enforcement process."). Therefore, *res judicata* cannot bar Plaintiffs-Appellants federal claims since the central issue of whether AG James acted with impermissible political animus was not "essential" to the State Court's decision aim. See *Ryan v. New York Tel. Co.*, 62 N.Y.2d 494, 500 (1984) (Stating that, for *res judicata* to apply, "the issue must have been material to the first action or proceeding and essential to the decision rendered therein.")

Further, Defendant-Appellee repeatedly alludes to the fact that Plaintiffs-Appellants complied in good faith with the February 2022 Order in support of its argument that it has preclusive effect. This contention is misplaced. Contrary to

Defendant's claim, compliance of this sort does not waive or endanger a party's ability to challenge the constitutionality of state action. Indeed, it is well established under New York law that compliance with the state's investigative authority is compulsory, not consensual, since it is required by law. *See United States v. Simmonds*, 641 F. App'x 99, 104 (2d Cir. 2016) ("[W]here consent is granted only in submission to a claim of lawful authority, the consent is not considered voluntary."); *see also In re Nwamu*, 421 F. Supp. 1361, 1366 (S.D.N.Y. 1976) (finding compliance with a subpoena mere "acquiescence to a claim of lawful authority," not a "voluntary" consent to search.). Thus, since Plaintiffs-Appellants were obligated to comply with Defendant-Appellee's directives by law, there has been no voluntary waiver of any right nor any invocation of *res judicata*.

### B. Defendant-Appellee's Collateral Estoppel Argument Is Not Properly Before This Court And Fails As A Matter of Law

At the outset, Defendant-Appellee's collateral estoppel argument is not properly before this Court because it was never raised in the State Action. As a result, this argument is impermissibly raised for the first time on appeal. *See*, *e.g.*, *Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 114 ("[I]t is a well-established general rule that an appellate court will not consider an issue raised for the first time on appeal.") (citing *Greene v. United States,* 13 F.3d 577, 586 (2d Cir.1994)). On this basis alone, this Court should disregard Defendant-Appellee's collateral estoppel argument.

Notwithstanding, Defendant-Appellee's argument that the Federal Action is barred by collateral estoppel—a "narrower species of res judicata," *Ryan*, 62 N.Y.2d at 500—fails for the same reasons as their *res judicata* argument. Further, collateral estoppel is inapplicable because the issues raised in State Action were not "identical" to those raised in the Federal Action, nor were they "actually litigated" in the State Action. *See Leather v. Eyck*, 180 F.3d 420, 236 (2d Cir. 1999) ("[T[he issues of both proceedings must be identical, (2) the relevant issues [must have been] *actually litigated* and decided in the prior proceeding, (3) there must have been "full and fair opportunity" for the litigation of the issues in the prior proceeding, and (4) the issues [must have been] necessary to support a valid and final judgment on the merits.") (citing *Central Hudson Gas & Election Corporation v. Empresa Naviera Santa S.A.*, 56 F.3d 359, 368 (2d Cir. 1995)). Further, unlike *res judicata*, collateral estoppel is especially irrelevant for the purposes of collateral estoppel whether the claims could have been raised in the State Action; all that matters is that they were not. *Id.* ("[C]ollateral estoppel does not prevent a litigant from raising, in a later proceeding, an issue that he could have, but did not, raise in the first proceeding.").

Therefore, the issue of collateral estoppel is not appropriately before this Court and, even if it were, any such argument is entirely without merit.

## II. THE BAD FAITH EXCEPTION TO THE *YOUNGER* ABSTENTION DOCTRINE IS APPLICABLE

In attempting to argue that the bad faith exception to the *Younger* abstention doctrine is not applicable, Defendant-Appellee is unable muster a single legitimate counter-argument and, instead, resorts to mischaracterizing the relevant legal standard and misdirecting from the substance of Plaintiffs-Appellants claims. Defendant-Appellee's inability to meaningfully grapple with this issue is telling of the fact that his arguments are entirely lacking in merit.

To start, Defendant-Appellee misstates the applicable test under the *Younger* bad faith exception, claiming that it "applies 'only when the state proceeding is brought with no legitimate purpose.'" Br. at 60 (citing *Diamond "D" Const. v. McGowan*, 282 F.3d 191, 200 (2d Cir. 2002)). While it is true that this is one scenario in which the bad faith exception applies, it is also applicable when a "proceeding has been brought to retaliate for or to deter constitutional protected conduct or . . . is otherwise brought in bad faith or for the purpose to harass." *Cullen v. Fliegner*, 18 F.3d 96, 103-104 (1994) (citing *Kugler v. Helfant*, 421 U.S. 117, 124 (1975)).

Despite Plaintiffs-Appellants' bad faith exception argument being largely premised upon this second prong—including the litany of harassing statements referenced in the Complaint—Defendant-Appellee ignores this issue altogether and declines to mount a single viable counter-argument. As was the case in the underlying district court proceedings, Defendant-Appellee remains loathe to address the substance of practically any of the statements made by AG James. Defendant-

8

Appellee's failure to defend or meaningfully acknowledge the statements at the heart of this case speaks volumes.

Indeed, rather than confront this issue directly, Defendant-Appellee attempts to skirt around it by focusing on the result of the investigation, which, according to Defendant-Appellee, resulted in "favorable outcomes." Br. at 61. Yet, even putting aside the question of whether obtaining compliance with a subpoena is in fact a 'favorable' outcome, this argument misses the mark entirely. With respect to the second prong, whether her investigation was ultimately successful is beside the point. It is the "the subjective bad faith of the prosecuting authority" that is the "the gravamen of the exception to *Younger* abstention." *Kern v. Clark*, 331 F.3d 9, 12 (2003); *see also Diamond "D" Const. Corp.*, 282 F3d at 199 ("The subjective motivation of the state authority in bringing the proceeding is critical to, if not determinative of, this inquiry.") (citing *Schlagler v. Phillips,* 166 F.3d 439, 442–43 (2d Cir. 1999)). To establish subjective bad faith, a plaintiff must show that "the state proceeding was initiated with and is animated by a retaliatory, harassing, or other illegitimate motive," *Diamond "D" Const. Corp.*, 282 F3d at 199 (citing *Schlagler*, 166 F.3d at 442-444), which may be accomplished by, among other things, demonstrating "a pattern of harassment both *before* and *after* institution of the state prosecution," *Pervu v. City of Oneonta*, no. 6:19-cv-00861 (N.D.N.Y. Apr. 2, 2020).

9

Plaintiffs-Appellants easily satisfied this requirement by providing overwhelming proof of AG James' animus towards Mr. Trump, as substantiated by her own words. Examination of the record reveals that the statements and promises made by AG James—and pleaded at length in Plaintiffs-Appellants' underlying Complaint—rise to a level which far exceed any relevant ethical standards. These statements convincingly show that, from the outset, AG James' 'investigation' has been driven purely by self-interested motivations, not in the interest of justice but rather in the pursuit of her own personal and political agenda. *See*, *e.g.*, [R. at A19] ("[W]e're definitely going to sue him. We're going to be a real pain in the ass. He's going to know my name personally"); [R. at A15] (pledging to use the law as a "sword" against Mr. Trump and proclaiming that "no one is above the law, including this illegitimate president…and so I look forward to going into the office of Attorney General every day . . .suing him . . . and then going home!"); [R. at A15] (promising to "use every area of the law to investigate [Trump] and his business transactions" and "anyone in [Trump's] orbit."); [R. at A18] ("I will be shining a bright light into every dark corner of his real estate dealings, and every dealing, demanding truthfulness at every turn."); [R. at A17] ("the Office of Attorney General will continue to follow the money because we believe that he's engaged in a pattern and practice of money laundering, laundering the money from foreign governments here in New York State and particularly related to his real estate holdings. It is important

10

for everyone to understand that the days of Donald Trump are coming to an end."); [R. at A24] ("We need to focus on Donald Trump and his abuses. We need to follow his money. We need to find out where he's laundered money. All of those transactions happened here in New York City."). That AG James' conduct and public statements are demonstrative proof that she harbors subjective, bad faith animus towards Mr. Trump cannot be reasonably disputed.

Therefore, the District Court erred in declining to find that AG James' conduct falls within the bad faith exception to the *Younger* abstention doctrine.

## III. PLAINTIFFS-APPELLANTS ARE ENTITLED TO CHALLENGE THE ATTORNEY GENERAL IN A FEDERAL FORUM

Defendant-Appellee fails to effectively argue that Supreme Court precedent—which dictates that Mr. Trump, a former President of the United States, is entitled to "the protection of federal courts" in defending himself against the OAG, *Trump v. Vance*, 140 S.Ct. 2412, 2428 (2020)—should not be applied in the instant scenario.

Indeed, in attempting to distinguish the various cases relied upon by Plaintiffs-Appellants, Defendant-Appellee misapprehends the argument being advanced by Plaintiffs-Appellants and, consequently, misses the point entirely. Plaintiffs-Appellants do not contend that any of *Vance*, *Nixon v. Fitzgerald*, 457 U.S. 731, 753 (1982), *Trump v. Mazars USA, LLP*, --- F.4th ---, No. 21-5176, 2022 WL 2586480 (D.C. Cir. July 8, 2022), or *Clinton v. Jones*, 520 U.S. 681, 690 (1997), stand for the proposition that a President—current or former—is absolutely immune

11

from responding to subpoenas. Rather, Plaintiff-Appellant's argument is related solely to which *venue* is proper for constitutional challenges involving a current or former President, particularly when it relates to events which took place while he was in office. Collectively, these cases instruct that, in consideration of the Supremacy Clause and general considerations of comity and federalism, federal court is necessarily the proper forum for such a challenge.

Thus, while Defendant-Appellee (and the District Court) is correct that the Court in *Trump v. Vance* was "set[ting] forth the bad faith exception to *Younger* abstention," it went further than merely passively referencing the doctrine. Indeed, the Court determined that—in accordance with the Supremacy Clause and the principals of comity and federalism—the bad faith exception to the *Younger* abstention doctrine applies with "***special force*** to a President," *Vance*, 140 S.Ct. at 2428. Specifically, the Court instructed that a President is "***not relegated only to the challenges available to private citizens,***" by which it meant that that he was entitled to "raise subpoena-specific constitutional challenges, in ***either*** a state ***or federal forum***." *Vance*, 140 S.Ct. at 2430; *see also id.* at 2433 (Kavanaugh, J., concurring) ("All nine Members of the Court agree, moreover, that a President may raise objections to a state criminal subpoena ***not just in state court but also in federal court***."); *id.* at 2428 ("[I]n the event of such harassment, a President would be entitled to the protection of federal courts."). Apart from the "protections available

to every other citizen," he has the additional ability to "challenge the subpoena as an attempt to influence the performance of his official duties, in violation of the Supremacy Clause." *Id.* The Court explained:

> "[B]ecause the Supremacy Clause prohibits state judges and prosecutors from interfering with a President's official duties, any effort to manipulate a President's policy decisions or to retaliate against a President for official acts through issuance of a subpoena would be an unconstitutional attempt to "influence" a superior sovereign "exempt" from such obstacles, see *McCulloch v. Maryland,* 4 Wheat. 316, 417, 4 L.Ed. 579. ***And federal law allows a President to challenge any such allegedly unconstitutional influence in a federal forum."***

*Id.*

The language in *Vance* is unequivocal and displays the Court's clear intention to draw a hardline rule that a President cannot be subject to the *Younger* abstention doctrine when he is challenging state investigatory and/or enforcement action that has been directed against him. This holds true for any state action that relates back to his time in office, *Trump v. Mazars USA, LLP*, --- F.4th ---, No. 21-5176, 2022 WL 2586480 (D.C. Cir. July 8, 2022) (applying heightened standard of law for subpoena served on plaintiff when he was a sitting president, even though he is no longer in office); *Committee on Ways and Means v. U.S. Department of Treasury*, No. 21-5289 at *14 (D.C. Cir. Aug. 9, 2022) ("[I]t is likely law of the circuit that a Congressional request for a sitting President's personal information is evaluated under the heightened *Mazars* standard regardless of whether the President in question remains in office.") (citing *Mazars*, *supra*); *Clinton v. Jones*, 520 U.S.

13

681, 690 (1997) (noting that it was "not necessary to consider or decide whether a comparable claim might succeed in a state tribunal" for claims asserted against a President related to acts taken before entering office since the action was "asserted in federal court and relies heavily on the doctrine of separation of power.").

Based on the foregoing, the *Younger* abstention doctrine cannot be applied to Mr. Trump and he is entitled to have his challenge to the OAG heard in a federal forum.

## **CONCLUSION**

For the foregoing reasons, this Court should reverse the District Court's dismissal of the Federal Action or, in the alternative, vacate and remand to hold an evidentiary hearing on the question of the application of the bad faith exception to the *Younger* abstention doctrine.

Dated:  October 4, 2022
      New York, New York

Respectfully submitted,

*s/Alina Habba*
Alina Habba, Esq.
HABBA MADAIO & ASSOCIATES LLP
1430 U.S. Highway 206, Suite 240
Bedminster, New Jersey 07921
-and-
112 West 34th Street, 17th & 18th Floors
New York, New York 10120
Telephone: (908) 869-1188
Facsimile: (908) 450-1881
E-mail: ahabba@habbalaw.com

*Attorneys for Plaintiffs-Appellants*
*Donald J. Trump and Trump*
*Organization LLC*

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Second Circuit Local Rule 32.1(a)(4) because this brief contains 3,297 words, uses a monospaced typeface and contains 269 lines of text, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Times New Roman font.

Dated:  October 4, 2022
        New York, New York

*s/Alina Habba*
Alina Habba, Esq.
HABBA MADAIO & ASSOCIATES LLP
1430 U.S. Highway 206, Suite 240
Bedminster, New Jersey 07921
-and-
112 West 34th Street, 17th & 18th Floors
New York, New York 10120
Telephone: (908) 869-1188
Facsimile: (908) 450-1881
E-mail: ahabba@habbalaw.com
*Attorneys for Plaintiffs-Appellants*
*Donald J. Trump and Trump*
*Organization LLC*

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

| | |
|---|---|
| DONALD J. TRUMP and TRUMP ORGANIZATION LLC, | **22-1175-CV** |
| Plaintiffs-Appellants, | |
| | **CERTIFICATE OF SERVICE** |
| v. | |
| LETITIA JAMES, in her official capacity as Attorney General for the State of New York, | |
| Defendant-Appellee. | |

I, Alina Habba, hereby certify under penalty of perjury that on October 4, 2022, I served a copy of Plaintiffs-Appellants' Brief by e-mail on:

Eric Del Pozo, Esq.
28 Liberty Street, 23rd Floor
New York, New York 10005
Eric.DelPozo1@ag.ny.gov
*Appellate Counsel for Defendant-Appellee*

Judith Vale, Esq.
28 Liberty Street, 23rd Floor
New York, New York 10005
Judith.Vale@ag.ny.gov
*Appellate Counsel for Defendant-Appellee*

Dated:  October 4, 2022
         New York, New York

*s/Alina Habba*
Alina Habba, Esq.

HABBA MADAIO & ASSOCIATES
LLP
1430 U.S. Highway 206, Suite 240
Bedminster, New Jersey 07921
-and-
112 West 34th Street, 17th & 18th
Floors
New York, New York 10120
Telephone: (908) 869-1188
Facsimile: (908) 450-1881
E-mail: ahabba@habbalaw.com
*Attorneys for Plaintiffs-Appellants
Donald J. Trump and Trump
Organization LLC*